1  Robert V. Prongay (SBN 270796)
Kara M. Wolke (SBN 241521)
2  Alexa Mullarky (SBN 307932)
**GLANCY PRONGAY & MURRAY LLP**
3  1925 Century Park East, Suite 2100
Los Angeles, California 90067
4  Telephone: (310) 201-9150
E-mail: kwolke@glancylaw.com
5
Jennifer Pafiti (SBN 282790)
6  **POMERANTZ LLP**
468 North Camden Drive
7  Beverly Hills, CA 90210
Telephone:  (818) 532-6449
8  E-mail: jpafiti@pomlaw.com

9  [Additional Counsel on Signature Page]
*Attorneys for Lead Plaintiffs*
10

11  **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

12  | SUNIL SUDUNAGUNTA, | No. 2:16-cv-01947-MWF-JEM |
13  Individually and on Behalf of All
Others Similarly Situated,

14

15                                Plaintiff,

16                 v.

17  NANTKWEST, INC., PATRICK
SOON-SHIONG, RICHARD
18  GOMBERG, BARRY J. SIMON,
STEVE GORLIN, MICHAEL D.
19  BLASZYK, HENRY JI, RICHARD
KUSSEROW, JOHN T. POTTS, JR.,
20  ROBERT ROSEN, JOHN C.
THOMAS JR., MERRILL LYNCH,
21  PIERCE, FENNER & SMITH, INC.,
CITIGROUP GLOBAL MARKETS
22  INC., JEFFERIES LLC, PIPER
JAFFRAY & CO., and MLV & CO.,
23  LLC,

24

25                                Defendants.

No. 2:16-cv-01947-MWF-JEM

**CLASS ACTION**

Hon. Michael W. Fitzgerald

**CONSOLIDATED AMENDED
CLASS ACTION COMPLAINT
FOR VIOLATIONS OF THE
FEDERAL SECURITIES
LAWS**

**DEMAND FOR JURY TRIAL**

26

27

28

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

# **TABLE OF CONTENTS**

NATURE OF THE ACTION ............................................................. 1

JURISDICTION AND VENUE ......................................................... 8

PARTIES ......................................................................................... 9

SUBSTANTIVE ALLEGATIONS .................................................. 13

BACKGROUND ............................................................................ 13

    SEC and GAAP Mandated Disclosure of the Related-Party Lease .............. 20

    Defendants Use Material Misstatements and Omissions In the Registration Statement to Sell NantKwest Shares to Public Investors .............................. 23

    Additional Allegations Applicable Only to Exchange Act Claims .............. 28

PLAINTIFFs' CLASS ACTION ALLEGATIONS ............................... 38

COUNT I ....................................................................................... 41

COUNT II ...................................................................................... 43

COUNT III ..................................................................................... 44

COUNT IV ..................................................................................... 48

PRAYER FOR RELIEF .................................................................. 49

DEMAND FOR TRIAL BY JURY .................................................. 50

Lead Plaintiffs Donald Hu and Brayton Li ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their Complaint against Defendants (defined below), allege the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the Defendants' public documents, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by, and regarding, NantKwest, Inc. ("NantKwest" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a class action on behalf of persons or entities who: (1) purchased or otherwise acquired NantKwest common stock pursuant and/or traceable to NantKwest's Registration Statement issued in connection with its July 28, 2015 initial public offering ("IPO"), seeking to pursue remedies under §§ 11 and 15 of the Securities Act of 1933 ("Securities Act"); and/or (2) purchased or otherwise acquired NantKwest common stock between July 28, 2015 and March 29, 2016, both dates inclusive, seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

2.     Defendant NantKwest has operated as a development-stage immunotherapy company since at least 2007, when it was known as Conkwest, Inc. ("Conkwest").   Like several other cancer immunotherapy companies,

NantKwest focuses on attempting to harness "natural killer" cells generated by the human immune system to treat cancer, infectious diseases and inflammatory diseases.   According to the Company, natural killer cells are "the body's first line of defense due to their innate ability to rapidly seek and destroy abnormal cells, such as cancer or virally-infected cells, without prior exposure or activation by other support molecules required to activate adaptive immune cells such as T-cells." *See* Form S-1/A filed with the SEC on July 16, 2015 at 1.[1]

3.     Patrick Soon-Shiong ("Soon-Shiong") is the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of NantKwest.  In 2011, Soon-Shiong formed NantWorks LLC ("NantWorks") and a series of subsidiary companies operating in various areas of pharmaceutical development and healthcare-related information technology.

4.     At the end of 2014 and early 2015, Soon-Shiong undertook a series of transactions to gain control of NantKwest (then Conkwest), and to enmesh it within his web of related-party companies.  Specifically, as the Registration Statement acknowledges:

(a)     In December 2014, NantKwest agreed to jointly develop therapies with Sorrento Therapeutics, Inc. ("Sorrento"), a company in which Soon-Shiong was the largest shareholder and his affiliate, Defendant Henry Ji ("Ji"), was CEO and President.

---

[1]   The Form S-1/A filed on July 16, 2015 is identified as Amendment No. 4 to NantKwest's registration statement, and is the last full version of the registration statement filed with the SEC before NantKwest's IPO.   As used herein, the capitalized term "Registration Statement" refers to the July 16, 2015 S-1/A as subsequently modified by the partial amendments filed on July 27, 2015.

(b)   On December 16 and 18, 2014, Soon-Shiong caused Sorrento to purchase 4,557,537 shares of NantKwest Class A common stock pursuant to a subscription and investment agreement at $1.76 per share.[2]   The Sorrento agreement allowed Sorrento to designate a Director to serve on NantKwest's Board of Directors, so long as Sorrento retained at least 462,875 shares (slightly more than 10% of its initial purchase).

(c)   On December 23, 2014, Sorrento purchased an additional 1,060,789 shares of NantKwest Class A common stock at $1.89 per share.

(d)   On December 23, 2014, Soon-Shiong caused Cambridge Equities, LP ("Cambridge"), an investment vehicle he owns and controls, to purchase 25,191,473 shares of NantKwest Class A common stock at $1.89 per share.

(e)   As a result of these transactions, in December 2014, Soon-Shiong was named Co-Chairman of NantKwest's Board of Directors and Defendant Ji was named a Director.

(f)   In January 2015, Soon-Shiong was named Chief Medical Officer of NantKwest.

(g)   Only two months later, in March 2015, Soon-Shiong was promoted to CEO of NantKwest.   He also became the sole Chairman of NantKwest's Board of Directors at that time.

---

[2]   In June 2015, the Class A shares were recapitalized, on a 1:1 basis, into unclassified common stock.   On July 10, 2015, prior to the IPO, the unclassified common stock was split 1.8515:1.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

3

(h)     On March 24, 2015, NantKwest granted Soon-Shiong a warrant to purchase up to 17,589,250 shares of the Company's common stock to vest as follows: (i) 7,406,000 shares will vest monthly over a period of 40 months beginning April 1, 2015; and (ii) up to 10,183,250 shares will vest based upon achievement of certain strategic, manufacturing, clinical development and regulatory milestones.   NantKwest also granted Soon-Shiong a lesser number of options to purchase additional shares following the IPO and at other times.

(i)     On March 30, 2015, NantKwest exchanged $6.5 million in cash and millions of warrants for Inex Bio, Inc., a pharmaceutical company jointly owned by Soon-Shiong and Defendant Ji through a holding company.   As a result of exercising the warrant, Soon-Shiong and Ji gained beneficial ownership over another 2,609,520 shares of NantKwest Class A common stock.

(j)     In June 2015, NantKwest named a Soon-Shiong affiliate, NantOmics LLC, as its provider of genomic sequencing and proteomic analysis services, as well as related data management and bioinformatics services.

(k)     In June 2015, NantKwest licensed technologies from another Soon-Shiong affiliate, NanoCav LLC.

(l)     In June 2015, NantKwest also entered into a supply agreement with another Soon-Shiong affiliate, NantCell LLC.

(m)     On June 18, 2015, the Company granted Cambridge the right to nominate a Director to NantKwest's Board of Directors.

5.      On June 19, 2015, the Company filed a registration statement with the SEC on Form S-1.  By the time this was amended by a July 13, 2015 filing on Form S-1/A, the Company had officially changed its name from Conkwest to NantKwest to align branding with Soon-Shiong's other companies.

6.      On July 16, 2015, as subsequently amended, NantKwest filed with the SEC its final full Registration Statement.  Pursuant to this Registration Statement, on July 28, 2015, the Company sold 9,531,200 shares of common stock in its IPO at $25 per share for proceeds of approximately $225,486,000 after underwriters' discounts and commissions, but before offering expenses of approximately $3,000,000.

7.      The Registration Statement that Defendants used to sell shares in NantKwest's IPO was materially false and misleading in four important respects: (a) it failed to disclose that on May 8, 2015, more than a month before the first S-1 was filed, Soon-Shiong and NantKwest had agreed to modify the milestones that governed the vesting of the majority of Soon-Shiong's warrants; (b) it failed to disclose that, as a result of these modifications, a performance-based milestone was achieved, causing a substantial portion of the warrants to vest and thereby causing NantKwest to incur massive executive compensation expenses; (c) it failed to disclose that effective May 2015, NantKwest had engaged in a related-party facilities lease agreement ("Related-Party Lease") with NantWorks, pursuant to which it had already incurred millions of dollars of liability at the time of the IPO; and (d) it understated material weaknesses in the Company's internal controls.

8.      On September 9, 2015, after the market closed, NantKwest filed with the SEC on Form 10-Q its quarterly report for the second quarter of 2015.  That

report identified for the first time that prior to the IPO, 8,887,200 warrant shares had already vested.  However, the September 9, 2015 Form 10-Q did not disclose: (a) the full executive compensation expense incurred as a result of that vesting, (b) the millions of dollars of liability associated with the Related-Party Lease, or (c) the full extent of NantKwest's material weaknesses in the Company's internal controls.  On September 10, 2015, NantKwest shares closed at $17.98, a decline of $0.43 from the prior day close of $18.39.

9.     On November 10, 2015, NantKwest filed with the SEC on Form 10-Q its quarterly report for the third quarter of 2015, in which Soon-Shiong and NantKwest repeated the misrepresentations and omissions made in the September 9, 2015 Form 10-Q, and further misrepresented the Company's stock-based compensation and overall operating expenses for the third quarter of 2015.

10.     Before the market opened on November 27, 2015, the Company disclosed that two of its Directors would resign effective at year end.   On November 27, 2015, NantKwest shares closed at $16.30, a decline of $0.32 from the prior day close of $16.62.

11.     After the market closed on January 25, 2016, NantKwest announced that Angela Wilson, the Chief Financial Officer ("CFO") it had hired less than three months earlier, had resigned on January 19, 2016.  The following day, on January 26, 2016, NantKwest shares closed at $11.99, down $0.25 from the prior day close of $12.24.

12.     Next, on March 11, 2016, before the market opened, NantKwest announced that the Company's financial statements for the second and third quarters of 2015 should no longer be relied upon due to material errors with regard

to performance-based executive compensation and build-to-suit leasing.   The Company also revealed that the compensation errors related to modification of performance-based vesting criteria.  On March 11, 2016, NantKwest shares closed at $8.17, down $0.28 from the prior day close of $8.45.

13.     Finally, on March 30, 2016, during trading hours, NantKwest filed its Form 10-K with the SEC disclosing for the first time that its compensation expense had been understated by $46.3 million for the quarter ending June 30, 2015 and by an additional $2.9 million for the quarter ending September 30, 2015, due principally to the triggering of a vesting event prior to the IPO, which was not disclosed in the Registration Statement.  The Form 10-K also disclosed, for the first time, that the Company's build-to-suit lease liability was understated by $2.7 million as of June 30, 2015 as a result of its failure to properly account for structural improvements made under the Related-Party Lease prior to the IPO.  On March 30, 2016, NantKwest shares closed at $8.21, a decline of $0.29 from the prior day close of $8.50.

14.     In total, NantKwest's stock price has plummeted over 74% since the IPO, making it the second worst performing biotechnology or pharmaceutical company that went public in 2015.[3]   Soon-Shiong has not shared the pain felt by NantKwest's shareholders.  Despite NantKwest's poor performance, Soon-Shiong received the highest amount of compensation among all executives tracked by Bloomberg in 2015, dwarfing the compensation packages even of CEOs of the

---

[3]  Max Nisen, <u>Soon-Shiong's Latest Offering Is Risky</u>, Bloomberg Gadfly (June 2, 2016, 2:32 PM CDT), http://www.bloomberg.com/gadfly/articles/2016-06-02/nanthealth-ipo-patrick-soon-shiong-s-risky-bet.

largest, most successful technology companies like Sundar Pichai of Google, Mark McLaughlin of Palo Alto Networks, and Elon Musk of Tesla.[4]



**Leader of the Pack**

Stock options granted before NantKwest's IPO made its CEO the most highly paid of the executives tracked by Bloomberg last year. By more than $150 million.

Source: Bloomberg

With his wealth padded by the exorbitant compensation package awarded to him by NantKwest, Soon-Shiong is widely considered to be one of the richest individuals in Los Angeles, California. *See, e.g.*, "Wealthiest Angelinos: 1, Patrick Soon-Shiong," *Los Angeles Business Journal*, May 13, 2016.

## JURISDICTION AND VENUE

15.    The claims asserted herein arise under Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l, and 77o) and under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)), and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

16.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 27 of the Exchange Act (15

---

[4]   *Id.*

U.S.C. § 78aa), and Section 22 of the Securities Act (15 U.S.C. § 77v).

17.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa), Section 22 of the Securities Act (15 U.S.C. § 77v), and 28 U.S.C. § 1391(b), given that a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.  The Related-Party Lease involved a property within this District in Culver City, California, and Defendant Soon-Shiong resides in or around Los Angeles, California.   According to NantKwest's annual report on Form 10-K, the Company continues to maintain an office at 9920 Jefferson Boulevard, Culver City, California, 90232.

18.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of a national securities exchange.

## **PARTIES**

19.     Plaintiff Donald Hu ("Hu"), as set forth in his previously-filed Certification (Doc. No. 25-2), purchased NantKwest securities pursuant and/or traceable to the Company's materially untrue and misleading Registration Statement, and suffered damages as a result of the federal securities laws violations alleged herein.

20.     Plaintiff Brayton Li ("Li"), as set forth in his previously-filed Certification (Doc. No. 25-2), purchased NantKwest securities pursuant and/or traceable to the Company's materially untrue and misleading Registration Statement, and suffered damages as a result of the federal securities laws violations

1  alleged herein.

2      21.    Defendant NantKwest is a Delaware corporation formerly known as

3  Conkwest.  At the time of its IPO, NantKwest's principal executive offices were

4  located at 533 South Coast Highway 101, Suite 210, Cardiff-by-the-Sea, California

5  92007.  Currently, its principal executive offices are located at 3530 John Hopkins

6  Court, San Diego, California 92121.  NantKwest's shares trade on the NASDAQ

7  national market system under the ticker symbol "NK."

8      22.    Defendant Soon-Shiong is, and was at the time of the IPO,

9  NantKwest's CEO and Chairman of its Board of Directors.   Directly and through

10  his various investment vehicles, Soon-Shiong owns the majority of NantKwest

11  shares.   According to a Schedule 13D filed with the SEC on July 11, 2016, Soon-

12  Shiong is the beneficial owner of 63.2% of NantKwest shares.   According to a

13  Proxy Statement Sorrento filed on May 13, 2016, Soon-Shiong is Sorrento's largest

14  shareholder.   He also owns and controls NantWorks, NantHealth, NantOmics,

15  NanoCav, NantCell, and other affiliated companies.   Soon-Shiong signed the

16  Registration Statement, signed NantKwest's quarterly reports on Form 10-Q for the

17  second and third quarters of 2015, and signed the certifications attached to those

18  reports pursuant to the Sarbanes-Oxley Act of 2002.

19      23.    Defendant Richard Gomberg ("Gomberg") was the Company's CFO

20  between January 2010 and November 10, 2015.  Gomberg signed the Registration

21  Statement and signed the certifications pursuant to the Sarbanes-Oxley Act of 2002

22  attached to NantKwest's quarterly reports on Form 10-Q for the second and third

23  quarters of 2015.  On November 13, 2015, Angela Wilson replaced Gomberg as

24  CFO, and she served in that capacity until she abruptly resigned on January 19,

2016.

24.     Defendant Barry J. Simon ("Simon") is, and was at the time of the IPO, a Director of NantKwest.  Simon has also served as the Company's President and Chief Operating Officer ("COO") since March 2015.  Between 2007 and 2014, Simon served as NantKwest's President and CEO.  When NantKwest gained control of Inex Bio, Simon served as a member of Inex Bio's Board of Directors. Simon signed the Registration Statement.

25.     Defendant Steve Gorlin ("Gorlin") is, and was at the time of the IPO, a Director of NantKwest, and the Vice Chairman of the Board of Directors.  Gorlin signed the Registration Statement.

26.     Defendant Michael D. Blaszyk ("Blaszyk") is, and was at the time of the IPO, a Director of NantKwest.  Blaszyk is a member of the Audit and Compensation Committees of the Board of Directors.  At the time of the IPO, Blaszyk was a member of the Audit Committee.  Blaszyk signed the Registration Statement.

27.     Defendant Ji was a Director of NantKwest at the time of the IPO and remained so through his resignation announced on November 27, 2015, which was effective December 31, 2015.  Ji had a 50% interest in the holding company that owned the majority of Inex Bio at the time it was acquired by NantKwest.   Ji signed the Registration Statement.

28.     Defendant Richard Kusserow ("Kusserow") is, and was at the time of the IPO, a Director of NantKwest.  Kusserow is, and was at the time of the IPO, a member of the Audit and Compensation Committees of the Board.  Kusserow signed the Registration Statement.

29.    Defendant John T. Potts, Jr. ("Potts") is, and was at the time of the IPO, a Director of NantKwest.  Potts is, and was at the time of the IPO, a member of the Compensation Committee of the Board.  Potts signed the Registration Statement.

30.    Defendant Robert Rosen ("Rosen") was a Director of NantKwest, and a member of the Compensation Committee, at the time of the IPO.  On November 27, 2015, NantKwest announced that Rosen would resign from the Board of Directors effective December 31, 2015.  Rosen signed the Registration Statement.

31.    Defendant John C. Thomas, Jr. ("Thomas") is, and was at the time of the IPO, a Director of NantKwest.  Thomas is, and was at the time of the IPO, a member of the Audit Committee of the Board.

32.    Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") was identified in the Registration Statement as an underwriter and a Joint-Book-Running manager of the IPO.  Merrill Lynch maintains several offices in this District, including an office at 350 S. Grand Avenue, Los Angeles, CA 90071.

33.    Defendant Citigroup Global Markets, Inc. ("Citigroup") was identified in the Registration Statement as an underwriter and a Joint-Book-Running manager of the IPO.  Citigroup maintains several offices in this District, including an office at 444 S. Flower Street,  Suite 3600, Los Angeles, California 90071.

34.    Defendant Jefferies LLC ("Jefferies") was identified in the Registration Statement as an underwriter and a Joint-Book-Running manager of the IPO.  Jefferies maintains an office at 11100 Santa Monica Boulevard, Los Angeles, California 90025.

35.     Defendant Piper Jaffray & Co. ("Piper Jaffray") was identified in the Registration Statement as an underwriter and a Joint-Book-Running manager of the IPO.  Piper Jaffray maintains an office at 444 S. Flower Street, Suite 1675, Los Angeles, California 90071.

36.     Defendant MLV & Co., LLC ("MLV") served as an underwriter and Co-Manager of the IPO.  MLV has since been acquired by FBR & Co., an investment bank that is headquartered in Arlington, Virginia.

37.     Defendants Soon-Shiong, Gomberg, Simon, Gorlin, Blaszyk, Ji, Kusserow, Potts, Rosen, and Thomas are sometimes referred to herein, collectively, as the "Individual Defendants."

38.     Defendants Merrill Lynch, Citigroup, Jefferies, Piper Jaffray, and MLV are sometimes referred to herein, collectively, as the "Underwriter Defendants."

39.     All of the defendants referenced above are referred to collectively herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

## BACKGROUND

40.     Defendant NantKwest, formerly known as Conkwest, is a clinical-stage immunotherapy company focusing on the use of "natural killer cells" to treat cancer, infectious diseases and inflammatory diseases.  NantKwest claims that "natural killer cells" can identify and destroy cancer and virally-infected cells.  The Company describes its "natural killer cells" platform as an "off-the-shelf" therapy that does not rely on a patient's immune system.  While NantKwest has successfully completed a Phase I clinical trial, and seeks to initiate Phase II and III

trials for some of its products, the Company does not currently market any FDA approved drugs to the public.

41.   Defendant Soon-Shiong is the richest physician in the world. According to Forbes magazine, Soon-Shiong's current net worth is $11.7 billion.[5]

42.   In 2011, Soon-Shiong founded NantWorks, an amalgamation of startups involved in healthcare information technology and pharmaceutical development.   Soon-Shiong's web of "Nant"-branded companies, including NantWorks, NantHealth and NantKwest, claim to be revolutionary but have "delivered little so far but big losses and outsize executive pay."[6]

43.   Soon-Shiong took over NantKwest via a series of transactions using his related entities, beginning with a joint development and investment agreement between NantKwest and Sorrento, a pharmaceutical company in which Soon-Shiong is, and was at the time of the IPO, the largest shareholder.   On December 16, 18 and 23, 2014, Soon-Shiong caused Sorrento to purchase a total of 5,618,326 shares of NantKwest Class A common stock in exchange for an investment of $10 million.   Pursuant to the purchase agreement, Sorrento had the right to designate a director to NantKwest's Board, so long as it retained more than 462,875 NantKwest shares.   Sorrento was the second-largest shareholder of NantKwest at the time of the IPO, and remained so until June 30, 2016, when it transferred

---

[5]   The World's Billionaires, Forbes Magazine (Real Time Net Worth As Of August 3, 2016), http://www.forbes.com/profile/patrick-soon-shiong/.

[6]   Max Nisen, Soon-Shiong's Latest Offering Is Risky, BloombergGadfly (June 2, 2016,   2:32   PM   CDT),   http://www.bloomberg.com/gadfly/articles/2016-06-02/nanthealth-ipo-patrick-soon-shiong-s-risky-bet.

5,618,326 NantKwest shares to a foundation controlled by Soon-Shiong, along with more than $15 million in cash, in exchange for the foundation's shares in Sorrento and the forfeiture of rights by Soon-Shiong's investment vehicle Cambridge to acquire 500,000 shares of Sorrento. *See* Schedule 13D/A filed on July 11, 2016.

44.   In December 2014, Sorrento exercised its designation right to name Defendant Ji as a Director.

45.   On December 23, 2014, Soon-Shiong arranged for his investment vehicle, Cambridge, to purchase an aggregate of 25,191,473 Class A shares at $1.89 per share for a total investment of approximately $47.5 million. Soon-Shiong personally negotiated this transaction as the sole member of MP 13 Ventures, the general partner of Cambridge. As a result of this investment and his role in the Sorrento transactions, Soon-Shiong was named a Director and Co-Chairman of NantKwest in December 2014.

46.   Soon-Shiong consolidated his control over NantKwest in the months that followed. In January 2015, Soon-Shiong was appointed NantKwest's Chief Medical Officer. In March 2015, Soon-Shiong was appointed as NantKwest's CEO and sole Chairman.

47.   Also in March 2015, Soon-Shiong negotiated a series of related-party transactions to flip interests in an unprofitable development-stage pharmaceutical company called Inex Bio to NantKwest at a massive profit. In February and March 2015, Soon-Shiong and Ji formed a holding company called InexBio Holdings LLC that acquired a controlling stake in Inex Bio from third party stockholders for $1.1 million. In March 2015, Soon-Shiong and Ji sold the same

stake for which they had paid $1.1 million to NantKwest for $6.5 million in cash and warrants to purchase 2,609,520 shares of NantKwest Class A common stock for only $2 per share. Soon-Shiong and Ji promptly exercised these warrants. Soon-Shiong and Ji have not explained why it was necessary or appropriate for them to derive a personal benefit from these transactions, or how these transactions were consistent with the fiduciary duties that each owed NantKwest as a Director. Inex Bio has not completed any clinical trials and derives no sales from any products. In its 2015 Form 10-K, NantKwest absorbed losses associated with Inex Bio on its consolidated balance sheet.

48.     On or about March 22, 2015, NantKwest entered into an employment agreement with Soon-Shiong. The employment agreement granted Soon-Shiong both options and warrants as follows:

(a) On March 24, 2015 (the "Grant Date"), in consideration of Executive's appointment as Chief Executive Officer, the Board of Directors granted Executive a non-qualified stock option (the "Option") to purchase 1,000,000 shares of the Company's common stock with an exercise price equal to 110% of the fair market value of such shares as of the Grant Date (the "Option Award"). The Option Award vests in equal monthly installments over a period of four (4) years from the Grant Date. The terms and conditions of the Option Award are as set forth in an award agreement delivered to Executive, which award agreement provides that (x) upon any termination of Executive's employment by the Company (other than a termination by the Company without Cause or by Executive for Good Reason), all unvested Options pursuant to the Option Award Shall be forfeited and (y) upon the consummation of a Change in Control (as defined below), all unvested Options subject to the Option Award will become immediately vested.

(b) On the Grant Date, in consideration of Executive's appointment as Chief Executive Officer, the Board of Directors awarded Executive a warrant (the "Warrant") to purchase up to 9,500,000

shares of the Company's common stock (the "Warrant Shares"). The Warrant has a term of four (4) years and is exercisable for up to all of the Warrant Shares upon the Company's achievement of certain milestones, as set forth in the Warrant Agreement entered into by the Company and Executive effective March 24, 2015.

*See* Exhibit 10.5 to Form S-1 filed with the SEC June 19, 2015 (quoted verbatim without adjustment to reflect pre-IPO stock split). [7]

49.   The Common Stock Purchase Warrant dated March 24, 2015 governing the warrant compensation provided to Soon-Shiong under the March 24, 2015 employment agreement, before modification, described the warrant vesting criteria as follows:

i.   100,000 Warrant Shares per month for a period of 40 months beginning April 1, 2015 (for a total of 4,000,000 Warrant Shares).

ii.   4,500,000 Warrant Shares upon the closing of transaction between the Company and an internationally recognized pharmaceutical, specialty pharmaceutical or biotechnology company with annual sales of at least $5 billion (a "Strategic Partner"), during the term of the Holder's service as CEO or Chairman of the Company, in which a Strategic Partner invests at least US$20 million in shares of Company capital stock at or above a pre-money valuation of $1.5 billion.

iii.   700,000 Warrant Shares upon qualification of a cGMP manufacturing facility capable of cell production for the Company's aNK, haNK or tank product candidates.

---

[7]   Later references to the options and warrant grants refer to options to purchase 1,8515,000 shares and warrants to purchase up to 17,589,250.  Plaintiffs understand these changes to reflect NantKwest's 1.8515:1 forward split of common stock prior to the IPO.

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

17

iv.    100,000 Warrant Shares upon the submission by the Company after the Issue Date of an investigational new drug (IND) application to the FDA for any of the Company's aNK, haNK or taNK product candidates.

v.    100,000 Warrant Shares upon the submission by the Company after the Issue Date of a protocol for a Phase II clinical trial to the FDA for any of the Company's aNK, haNK or taNK product candidates, excluding the Company's currently contemplated MCC phase II clinical trial (Merkel cell).

vi.    100,000 Warrant Shares upon execution of a partnership, collaboration or other strategic agreement with a pharmaceutical, specialty pharmaceutical or biotechnology company with respect to any of the Company's aNK, haNK or taNK product candidates, excluding the equity financing transaction contemplated in clause ii above.

*See* Exhibit 10.16 to Form S-1 filed with the SEC on June 19, 2015 (quoted verbatim without adjustment to reflect pre-IPO stock split).

50.    On May 8, 2015, NantKwest and Soon-Shiong negotiated by mutual consent an agreement to modify the performance-based criteria for the vesting of Soon-Shiong's warrant shares. The fact of this modification was not disclosed until the end of the Class Period, and the actual modifications have not been disclosed to this day.

51.    Also in May 2015, Soon-Shiong caused NantKwest to enter into the Related-Party Lease agreement with NantWorks to lease approximately 9,500 square feet of space in the Culver City, California facility that is also headquarters to Cambridge, NantWorks, NantHealth, and other Soon-Shiong entities. The Related-Party Lease was not documented until November 2015, but the documentation conceded it was effective in May 2015. Pursuant to the Related-Party Lease, in May and June 2015, NantKwest incurred millions of dollars of

liability from making structural changes to convert the office space to laboratory use.  NantKwest was responsible for these build-out costs under the Related-Party Lease agreement.   Again, neither the Related-Party Lease nor the millions of dollars of liability to NantKwest that the lease carried with it were disclosed at the time of the IPO or during the Class Period herein.

52.   In June 2015, Soon-Shiong caused NantKwest to enter into related-party agreements with three other of his entities: NantOmics, NantCell and NanoCav.

53.   On June 18, 2015, NantKwest granted Soon-Shiong's investment entity, Cambridge, the formal right to nominate a director to the Board, so long as Cambridge directly owned more than 20% of NantKwest's common stock.  Soon-Shiong designated himself under this provision.

54.   In June 2015, NantKwest also used entities formed by Soon-Shiong to facilitate spin-outs of noncore businesses.  NantKwest spun out its businesses that relate to its testing and diagnostic products and services and veterinary oncology, and transferred all of its existing revenue-earning license agreements to Brink Biologics, Inc. ("Brink Biologics") and Coneksis, Inc. ("Coneksis"), respectively. Soon-Shiong had a controlling interest in both Brink Biologics and Coneksis at the time these transactions were consummated.

55.   On July 10, 2015, the Company changed its name from Conkwest to NantKwest to align its branding with that used by NantWorks and its umbrella of subsidiaries.

56.   On July 13, 2015, the Company entered into an amended executive employment agreement with Soon-Shiong.  The amended executive employment

agreement did not mention the modification of warrant vesting terms to which Soon-Shiong and the Company had mutually agreed on May 8, 2015. *See* Exhibit 10.5 to Form S-1/A filed on July 15, 2015.

57.    On July 16, 2015, the Company filed the final full Registration Statement with the SEC on Form S-1/A.

58.    On or about July 23, 2015, the Company sent a letter to the SEC requesting that the SEC accelerate the effectiveness of its Registration Statement.[8] The letter, which was signed by Defendant Simon and copied Defendant Soon-Shiong, expressly acknowledged the Company's "full responsibility for the adequacy and accuracy of the disclosure in the Registration Statement."

59.    On July 27, 2015, NantKwest filed a Form S-1MEF with the SEC to increase the number of shares offered in its IPO by 1,481,200 shares, including 193,200 shares issuable on the exercise of an option granted to the underwriters to purchase additional shares.

**SEC and GAAP Mandated Disclosure of the Related-Party Lease**

60.    Generally Accepted Accounting Principles ("GAAP") are the standards recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practices at a particular time.

61.    SEC rules and regulations require that publicly traded companies include financial statements that comply with GAAP in their annual and quarterly filings with the SEC. *See* § 13 of the Exchange Act (15 U.S.C. §78m); Rule 10-01(d) of Regulation S-X (17 C.F.R. § 210.10-01(d)). SEC Rule 4-01(a) of

---

[8]  The letter itself is dated July 23, 2015.  The SEC's EDGAR system dates the letter as July 24, 2015.  The disparity is not relevant to this litigation.

Regulation S-X states that "[f]inancial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate."  17 C.F.R. § 210.4-01(a)(1).

62.    Accounting Standards Codification ("ASC") No. 850 provides that a public company's "[f]inancial statements shall include disclosures of material related party transactions."  ASC 850-10-50-1.  "Related party transactions" include those between "an enterprise and its principal owners, management, or members of their immediate families" and those between a company and its "affiliates."  ASC 850-10-05-3.  "Affiliate" includes any company that is under common control or management with the public company.  ASC 850-10-20.  Management is defined as "[p]ersons who are responsible for achieving the objectives of the enterprise and who have the authority to establish policies and make decisions by which those objectives are to be pursued.  Management normally includes members of the board of directors, the chief executive officer, chief operating officer, vice presidents in charge of principal business functions (such as sales, administration, or finance), and other persons who perform similar policymaking functions.  Persons without formal titles also may be members of management."  ASC 850-10-20.

63.    According to GAAP, disclosures of related-party transactions must include: (a) the nature of the relationship involved, (b) a description of the transactions for each period for which income statements are presented and such other information necessary to an understanding of the effects of the transactions on the financial statements, (c) the dollar amount of transactions for each of the

periods for which income statements are presented, and (d) amounts due from or to related parties as of the date of each balance sheet presented and, if not otherwise apparent, the terms and manner of settlement.  ASC 850-10-50-1.

64.     SEC Regulation S-K ("Reg. S-K"), together with the General Rules and Regulations under the Securities Act and Exchange Act and the Forms under these Acts, states the requirements applicable to the content of the non-financial statement portions of registration statements on Form F-3 and quarterly reports. *See* 17 C.F.R. § 229.10.  Item 404 of Reg. S-K ("Item 404") requires the disclosure of detailed information concerning related-party transactions in which the amount[9] involved exceeds $120,000, including the names of the "related person" or entity participating in the transaction, the related person's interest in the transaction, including related person's position, relationship or ownership in the other entity that is a party to the transaction, and the amount involved in the transaction.  *See* 17 C.F.R. § 229.404(a).  A "related person" under Item 404 is defined to include any director or executive officer of the company, any nominee for director, any immediate family member of a director or executive officer of the registrant, or of any nominee for director, or any person who is known to the registrant to be the beneficial owner of more than five percent of any class of the registrant's voting securities (*i.e.*, a 5% or greater shareholder), or the immediate family member of such beneficial owner.  *See* instruction 1 to 17 C.F.R. § 229.404(a); 17 CFR 229.403(a).

---

[9]  The term "amount," when used in regard to securities, means the principal amount if relating to evidences of indebtedness, the number of shares if relating to shares, and the number of units if relating to any other kind of security.  *See* 17 CFR § 270.8b-2(a).

65.     Finally, Section 210.4-08(k) of Regulation S-X ("Reg. S-X") also mandates that "[r]elated party transactions should be identified and the amounts stated on the face of the balance sheet, income statement, or statement of cash flows[,]" in documents prepared pursuant to the Securities Act, including prospectuses and registration statements.  Reg. S-X explicitly adopts the FASB's definition of related parties.  *See* 17 CFR § 210.1-02.

**Defendants Use Material Misstatements and Omissions In the Registration Statement to Sell NantKwest Shares to Public Investors**

66.     On July 28, 2015, Defendants sold 9,531,200 shares of common stock in an IPO pursuant to the Registration Statement.  The Registration Statement contained untrue statements of material facts and omitted to state other facts necessary to make the statements made not misleading under the circumstances in which they were made.

67.     With respect to the warrants granted to Soon-Shiong, the Registration Statement stated:

> Dr. Soon-Shiong's employment agreement provides that, in consideration of Dr. Soon-Shiong's appointment as Chief Executive Officer, on March 24, 2015 we granted or will grant to Dr. Soon-Shiong the following equity awards:
>
> *     *     *
>
> •     A warrant to purchase up to 17,589,250 shares of the Company's common stock at an exercise price of $2.00 was issued to Dr. Soon-Shiong on March 24, 2015. The warrant will vest as follows: (i) 7,406,000 shares will vest monthly over a period of 40 months beginning April 1, 2015; and (ii) up to 10,183,250 shares will vest based upon achievement of certain strategic, manufacturing, clinical development and regulatory milestones.

68.   The statements identified in Paragraph 67 above were materially false and misleading when made because they omitted the following material information necessary to make them not misleading under the circumstances in which they were made: (a) Soon-Shiong and NantKwest had mutually agreed to modify the warrant vesting terms on May 8, 2015; and (b) pursuant to the modified warrant vesting terms, millions of the warrant shares had already vested.

69.   The Registration Statement also stated with respect to Soon-Shiong's equity compensation:

> [T]he options, warrant, and restricted stock units to purchase or receive common stock held by our Chairman and Chief Executive Officer may entitle him to acquire up to an aggregate of 20.9 million shares of our common stock (including equity awards for 1.5 million shares that will be granted and begin vesting effective upon the closing of this offering).

70.   The statements identified in Paragraph 69 above were materially false and misleading when made because they omitted the following material information necessary to make them not misleading under the circumstances in which they were made: (a) Soon-Shiong and NantKwest had mutually agreed to modify the warrant vesting terms on May 8, 2015; and (b) pursuant to the modified warrant vesting terms, millions of the warrant shares had already vested.

71.   The Registration Statement expressly encouraged investors to look at "the exhibits filed as a part of the registration statement" for further information, but those exhibits were also materially misleading and incomplete.  In particular, with respect to Soon-Shiong's warrant compensation, Defendants attached as Exhibit 10.5 to the Registration Statement the employment agreement, as amended,

between Soon-Shiong and NantKwest, and attached as Exhibit 10.16 the Common Stock Purchase Warrant dated March 24, 2015.

72.     The aforementioned exhibits contained materially false and misleading statements because they omitted the following material information necessary to make them not misleading under the circumstances in which they were made: (a) the warrant agreement attached as Exhibit 10.5 and summarized in Exhibit 10.16 did not accurately describe the terms thereof, which had been modified by mutual agreement of Soon-Shiong and NantKwest on May 8, 2015, more than two months before the IPO; and (b) pursuant to the modified warrant vesting terms, millions of the warrant shares had already vested.

73.     The Registration Statement described the Company as having "certain operations in Culver City, California."  This statement was materially misleading when made because it omitted the following facts necessary to make this statement not misleading under the circumstances in which it was made: (a)  the Company had engaged in a Related-Party Lease beginning in May 2015 so that it could operate out of the same facility that was headquarters to Cambridge, NantWorks, NantHealth, and other Soon-Shiong companies; and (b) NantKwest had already incurred millions of dollars of liability to make structural changes to transform the leased space to laboratory use.

74.     The Registration Statement described the Company's "Facilities" and their associated expenses as follows:

> We lease a total of approximately 2,550 square feet of office space at 2533 South Coast Highway 101, Cardiff-by-the-Sea, California 92007, for general office use, pursuant to an operating lease. The term of the amended lease is from September 1, 2013 to August 31,

2016. Our total monthly lease payment is currently $11,904 per month, subject to a 3.5% annual increase.

We entered into a Lease Agreement dated June 19, 2015 with ARE-John Hopkins Court, LLC for an approximately 44,681 rentable square foot building located at 3530 John Hopkins Court, San Diego, California 92121. The permitted use is research and development laboratory, related office and other related uses. The term of the lease extends for seven years commencing on August 1, 2016 and requires us to pay base monthly rent in the amount of $178,724 per month, with three percent (3%) annual increases on each anniversary of the lease commencement date. The lease is conditioned upon the satisfaction of the following conditions precedent prior to July 31, 2015: (i) the execution and delivery of a sublease for our use of the building during the period prior to the lease commencement date and a consent to that sublease among the landlord, current tenant and us and (ii) the execution and delivery of an amendment to the current tenant's lease providing for the early termination of that lease.

75.     The statements identified in Paragraph 74 above were materially misleading when made because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) the Company had engaged in a Related-Party Lease beginning in May 2015 so that it could operate out of the same facility that was headquarters to Cambridge, NantWorks, NantHealth, and other Soon-Shiong companies; and (b) NantKwest had already incurred millions of dollars of liability as a result of making structural changes to transform the leased space to laboratory use.

76.     The "Subsequent Events" section of the Registration Statement stated that the Company "evaluated subsequent events through May 14, 2015," *i.e.* after the May 8, 2015 warrant modification, ***and again*** "updated its evaluation of subsequent events through July 15, 2015."     The Registration Statement

affirmatively represented that "***There are no additional significant events that require disclosure,***" except as otherwise provided in that section.

77.     The statements identified in Paragraph 76 above were materially false and misleading when made because the Company had not, in fact, updated its evaluation of subsequent events to incorporate all significant events through July 15, 2015, and because they omitted the following material facts necessary to make the statements not misleading under the circumstances in which they were made: (a) Soon-Shiong and the Company had, by mutual agreement, modified the vesting terms covering millions of warrant shares on May 8, 2015; (b) approximately 8,331,750 warrant shares had already vested when one of the modified performance milestones was achieved; (c) in May 2015, NantKwest began to lease space from its related party, NantWorks; and (d) NantKwest incurred millions of dollars in liability as a result of making structural modifications to the facility subject to the Related-Party lease, rendering it the owner of that space for accounting purposes.

78.     The Registration Statement further stated that the financial statements contained therein were "prepared in accordance with accounting principles generally accepted in the United States."  This statement was materially false and misleading when made because the "Subsequent Events" note to the financial statements, which the Registration Statement expressly acknowledged was "an integral part" of the financial statements, was not prepared in accordance with GAAP in that it failed to properly disclose the Related-Party Lease and the full measure of related-party compensation as GAAP requires.

79.     The Registration Statement stated the following with respect to NantKwest's internal controls:

> In connection with the preparation of our financial statements for the three months ended March 31, 2015, we concluded that there were material weaknesses in our internal control over financial reporting. A material weakness is a significant deficiency, or a combination of significant deficiencies, in internal control over financial reporting such that it is reasonably possible that a material misstatement of the annual or interim financial statements will not be prevented or detected on a timely basis. The material weaknesses that we identified related to (1) our chief financial officer having almost complete responsibility for the processing of financial information and (2) our finance department not having adequate staff to process in a timely manner complex, non-routine transactions, including accounting for our investment in and asset purchase of Inex Bio.

80.    The statements identified in Paragraph 79 above were materially misleading when made because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) NantKwest's material weaknesses extended beyond the ability to timely process "complex, non-routine transactions"; and (b) NantKwest's material weaknesses had already caused the Company to improperly account for Soon-Shiong's equity compensation, a highly routine accounting measure addressed by nearly every public company (and to improperly account for build-to-suit lease liability).

81.    As a result of this materially false and misleading Registration Statement, NantKwest was able to raise over $225 million in its public offering.

**Additional Allegations Applicable Only to Exchange Act Claims**

82.    Plaintiffs make the additional allegations contained in Paragraphs 83 to 93 below with respect to their claims under Sections 10(b) and 20(a) of the Exchange Act only.  Plaintiffs disclaim any reliance upon these allegations or incorporation of these allegations in their Securities Act claims.

83.     NantKwest and the Individual Defendants are makers of the statements contained in the Registration Statement because NantKwest is the Issuer of the statements and each of the Individual Defendants signed his name to those statements, indicating that he was a maker thereof.

84.     Additional aspects of Defendants' conduct indicate that they made at least the most significant misrepresentations and omissions contained in the Registration Statement – those pertaining to the warrant modification and vesting – with either deliberate recklessness or with fraudulent intent:

- Soon-Shiong and NantKwest had actual knowledge of the modifications of warrant milestones because each negotiated and consented to the modifications.

- Soon-Shiong and NantKwest had actual knowledge that the warrant agreement attached as Exhibit 10.16 to the Registration Statement did not accurately state the performance milestones of the warrant agreement because they had each negotiated and consented to amendments modifying those milestones.

- Rosen, Potts and Kusserow had actual knowledge of the modifications of warrant milestones because they were on the Compensation Committee of the Board of Directors at the time, and would have had to approve the modifications to Soon-Shiong's warrant (if not approved by the entire Board).

- NantKwest and all of the Individual Defendants had actual knowledge of the facts giving rise to the vesting of warrant shares prior to the IPO because each knew of the pre-IPO "financing transaction with a

strategic partner" that the Company stated in its March 30, 2016 Form 10-K "triggered" the vesting.

- NantKwest and all of the Individual Defendants had actual knowledge that warrant expenses were material to financial results and that failure to properly account for warrants could overstate results by tens of millions of dollars. For example, on July 2, 2015, less than two weeks before the IPO, the Individual Defendants each signed a Form S-1/A restating the financial statements filed weeks earlier in the initial Form S-1 due to understatement by more than $22 million of expenses related to warrants issued in the Inex Bio acquisition.

85.    In an attempt to engineer a soft landing, Defendants dribbled out the truth in a series of partial disclosures, often buffered by further misrepresentations or omissions to avoid the more serious price decline that would be associated with a fulsome disclosure.

86.    On September 9, 2015, NantKwest filed its quarterly report for the period that ended on June 30, 2015 with the SEC on Form 10-Q, which Soon-Shiong signed. In the September 9, 2015 Form 10-Q, the Company conceded that in the second quarter of 2015, "a performance milestone [was] achieved which triggered the vesting of 8,331,750 warrant shares for our Chief Executive Officer."

87.    However, Defendants NantKwest and Soon-Shiong buffered the impact of this disclosure by materially understating the expense associated with this vesting. According to Note 9 to the financial statements contained in the September 9, 2015 Form 10-Q, the Company only recorded $75.9 million in stock-based compensation expenses associated with the massive warrant package

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

30

granted to Soon-Shiong in March 2015. The understatement of stock-based compensation expenses, and consequently of operating losses and net losses that incorporated that line item, was materially false and misleading when made because the actual stock-based compensation expense associated with the Soon-Shiong warrants for the second quarter of 2015 was $46.3 million higher than reported.

88. In the September 9, 2015 Form 10-Q, Defendants NantKwest and Soon-Shiong further stated: "We continually evaluate our estimates and judgments, the most critical of which are those related to income taxes and stock-based compensation." This statement was materially false and misleading when made because the Company did not "continually evaluate" its estimates and judgments related to stock-based compensation, as evidenced by: (a) "inadequate staffing levels" to properly review, on a periodic basis, its estimates and judgments related to stock-based compensation; and (b) spending "insufficient time . . . on review" of these critical judgments. Significantly, the decision of the Company and Soon-Shiong to devote inadequate staff and time to this matter, despite their actual knowledge that stock-based compensation was one of the two "most critical" estimates and judgments underpinning NantKwest's financial statements, is reflective of their scienter.

89. With respect to the Company's leases, the September 9, 2015 Form 10-Q stated:

> **Operating Lease**
> The Company leases office space in Cardiff-by-the-Sea, California under a non-cancelable operating lease that expires in August 2016 and leases a research facility in Boston, Massachusetts on a month-to-month basis.

Rent expense for the three months ended June 30, 2014 and 2015 was $51 and $87, respectively. Rent expense for the six months ended June 30, 2014 and 2015 was $99 and $158, respectively.

In June 2015, the Company entered into a lease agreement for approximately 44,681 square foot facility in San Diego, California for research and development laboratory, related office and other related uses. The term of the lease extends for seven years commencing on August 1, 2016. The base rent is $179 per month with 3% annual increase each anniversary date. In July 2015 the Company entered into a sublease for the building with the current lessee for a term of one year commencing August 1, 2015. There is no fixed rent or operating expenses during the sublease term other than utilities.

90.    The statements identified in Paragraph 89 above were materially misleading when made because they omitted the following facts necessary to make the statements not misleading under the circumstances in which they were made: (a) the Company had engaged in a Related-Party Lease beginning in May 2015 so that it could operate out of the same facility that was headquarters to Cambridge, NantWorks, NantHealth, and other Soon-Shiong companies; and (b) NantKwest had already incurred $2.7 million in liability during the second quarter of 2015 as a result of making structural changes to transform the leased space to laboratory use.

91.    The September 9, 2015 Form 10-Q further misrepresented that NantKwest's "consolidated financial statements . . . are prepared in accordance with GAAP." This statement was materially false and misleading when made because: (a) NantKwest's financial statements were not prepared in accordance with and did not conform to GAAP; (b) Defendants failed to disclose the Related-Party Lease as required by GAAP and SEC rules; (c) the consolidated financial

statement entries for second quarter 2015 stock-related compensation expense, operating loss, and net loss due were understated by $46.3 million due to the failure to report warrant expense in accordance with GAAP; and (d) the consolidated financial statement entries for property, plant and equipment and build-to-suit liability were understated by $2.7 million due to the failure to account in accordance with GAAP for the structural construction the Company had undertaken in the second quarter on the Culver City, California facility pursuant to its Related-Party Lease with NantWorks.

92.   On November 10, 2015, NantKwest filed with the SEC on Form 10-Q its quarterly report for the third quarter of 2015, which was signed by Soon-Shiong.   In it, NantKwest understated three- and nine-month stock-based compensation expenses related to the modification of Soon-Shiong's warrant by $2.9 million and $49.2 million, respectively, and understated third quarter 2015 total operating expenses by $3.67 million.  The November 10, 2015 Form 10-Q also continued to understate property, plant and equipment and build-to-suit liability by $2.7 million by continuing to fail to properly account for the structural improvements the Company had undertaken in the second quarter on the Culver City, California facility pursuant to its Related-Party Lease with NantWorks.

93.   In addition, the November 10, 2015 Form 10-Q made the same misrepresentations and omissions regarding GAAP compliance and regarding evaluation of accounting judgments identified in Paragraphs 87 through 91, which were false and misleading for the reasons identified in those Paragraphs.

94.   Before the market opened on November 27, 2015, the Friday after Thanksgiving, NantKwest announced that Defendants Ji and Rosen would resign

from the Board on December 31, 2015.  This was a strategic release of negative news to take advantage of reduced investor interest during a holiday period.[10]  The partial disclosure was unexpected by investors and signaled governance and compensation problems, in particular because Ji was a long-time partner of Soon-Shiong's and Rosen served on the Compensation Committee of NantKwest's Board of Directors.  As a result of this partial disclosure, NantKwest's stock fell $0.32, or 1.86%, to close at $16.30 on November 27, 2015.

95.    On January 25, 2016, after the market closed, NantKwest announced that its CFO, Angela Wilson, had resigned five days earlier after less than three months on the job.  Ms. Wilson's exodus came while the Company was preparing its year-end financial statements, which she would have had to certify if she remained.  Thus, Wilson's prompt and unexpected resignation suggested that she did not want to sign NantKwest's upcoming Form 10-K or certify its financial statements pursuant to the Sarbanes-Oxley Act of 2002, signaling problems to investors.  Reacting to this disclosure, NantKwest's stock fell $0.25, or 2.04%, to close at $11.99 on January 26, 2016.

96.    On March 11, 2016, before the market opened, NantKwest filed with the SEC an updated report on Form 8-K admitting that its financial statements for the quarters ended June 30, 2015 and September 30, 2015 were unreliable because of "financial statement errors primarily attributable to certain stock-based awards

---

[10]   *See, e.g.,* Niessner, M., "Strategic Disclosure Timing and Insider Trading," January 9, 2013, available at https://fisher.osu.edu/supplements/10/12707/Marina_Niessner_JMP.pdf ("EDGAR is open on Fridays after Thanksgiving, but most people have that day off, making it a target for disclosing negative information.").

to the Company's Chief Executive Officer and Executive Chairman and build-to-suit lease accounting related to the [Related-Party Lease with NantWorks]." NantKwest further conceded that there was a material weakness in its internal controls due to a severely understaffed finance department that did not spend the time to properly review and prepare NantKwest's financial statements. NantKwest announced that it would restate its financial results for the second and third quarters of 2015 in the Company's upcoming annual report. As a result, NantKwest shares fell $0.28 per share, or 3.31%, to close at $8.17 on March 11, 2016.

97. On March 30, 2016, NantKwest filed its annual report for 2015 on Form 10-K, in which it disclosed the following with respect to the misrepresentations it made earlier about Soon-Shiong's stock-based compensation:

*Modification of Stock-based Awards to an Officer*—On March 24, 2015, the Company granted a non-qualified stock option and a warrant to purchase 1,851,500 shares and 17,589,250 shares of the Company's common stock, respectively, to an officer of the Company. The non-qualified stock option (the Option) had an exercise price of $2.00 per share, a ten-year term and vests monthly over 40 months from the grant date. The warrant (the Warrant) had an exercise price of $2.00 per share, a three-year term and included performance based vesting conditions.

Subsequent to the original grant date, the Company modified the terms and conditions of the Option and the Warrant, and on May 8, 2015, the Company and the officer reached a mutual agreement on the revised terms of the Option and the Warrant. By mutual agreement, the Company increased the exercise price of the Option from $2.00 per share to $2.20 per share and reduced the term of the Option from ten to four years. The Warrant's vesting conditions changed from performance based to a combination of performance based for 10,183,250 shares, including modified performance milestones from the original grant, and service based for 7,406,000 shares. In addition,

the Company revised the term of the Warrant from three to four years. The Company treated these changes to the Option and the Warrant as modifications of the terms and conditions of an equity award. The change in the term and exercise price of the Option did not result in incremental stock compensation expense as the higher exercise price and shorter term reduced the overall value of the modified Option.

The Company will record incremental compensation expense of $91.5 million upon the vesting of the warrant shares, of which $53.0 million is associated with the achievement of performance milestones and $38.5 million would be recognized over the service period. As a result of the modification, the Company recorded incremental stock compensation expense of $43.4 million associated with the achievement of a performance milestone in the second quarter of 2015 (Note 12). The Company also recognized additional compensation expense of $2.9 million for the second and third quarters of 2015, respectively, for the shares with service vesting requirements. For further information regarding the restatement associated with this modification, see Note 1. At December 31, 2015, a total of 9,998,100 shares were vested.

98.     The Company further disclosed the following facts regarding its omissions related to the Related-Party Lease with NantWorks:

In November 2015, the Company entered into a facility license agreement with NantWorks (Note 9) for approximately 9,500 square feet of office space in Culver City, California, which is to be converted to a research and development laboratory and a Good Manufacturing Practices (GMP) laboratory. The license was effective in May 2015 and extends through December 2020. The Company has the option to extend the license through December 2023. The monthly license fee is $47,000 with annual increases of 3% beginning in January 2017. Additional terms for the license shall be determined at fair market value. For the year ended December 31, 2015, the Company recorded rent expense of $0.2 million, included in research and development.

The Company is responsible for costs to build out the laboratory and has incurred costs of approximately $2.0 million as of December 31, 2015 which is reflected in construction in progress on the consolidated balance sheet.  Additionally, in order for the facility to meet the Company's research and development and GMP laboratory

CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

specifications, the Company made structural changes as part of the conversion from office to laboratory space, and as a result, the Company has concluded that it was the "deemed owner" of the building (for accounting purposes only) during the construction period. Accordingly, the Company recorded a non-cash build-to-suit lease asset of $2.7 million, representing its estimate of the fair market value of the building, and a corresponding construction build-to-suit lease liability, recorded as a component of other current and non-current liabilities on the consolidated balance sheet as of December 31, 2015.

99.    In the March 30, 2016 Form 10-K, NantKwest conceded that its failure to disclose Soon-Shiong's stock-based compensation and the build-to-suit lease increased the Company's net loss by $46.3 million for the second quarter of 2015 and by $2.9 million for the third quarter of 2015.

100.    The Company admitted the following material weaknesses in its internal controls:

As disclosed in our Registration Statement on Form S-1 in connection with our initial public offering, we concluded that there were material weaknesses in our internal control over financial reporting. Additionally, we disclosed on our Form 8-K filed on March 10, 2016 that our quarterly reports on Form 10-Q for the quarters ended June 30, 2015 and September 30, 2015 should no longer be relied upon due to the combined effect of financial statement errors primarily attributable to certain stock-based awards granted to the Company's Chairman and Chief Executive Officer and build-to-suit lease accounting related to one of its research and development and Good Manufacturing Practices or GMP facilities. A material weakness is a significant deficiency, or a combination of significant deficiencies, in internal control over financial reporting such that it is reasonably possible that a material misstatement of the annual or interim consolidated financial statements will not be prevented or detected on a timely basis. The material weaknesses that we identified relate to (1) our chief financial officer having almost complete responsibility for the processing of financial information; (2) our finance department not having adequate staff to process in a timely manner complex, non-routine transactions, including accounting for our investment in and asset purchase of Inex Bio, as well as transactions such as stock-based awards and build-to-

suit leases; and (3) a lack of adequate staffing levels, resulting in insufficient time spent on review and approval of certain information used to prepare our consolidated financial statements and the maintenance of effective controls to adequately monitor and review significant transactions for financial statement completeness and accuracy. These control deficiencies, although varying in severity, contributed to the material weaknesses in the control environment. If one or more material weaknesses persist or if we fail to establish and maintain effective internal control over financial reporting, our ability to accurately report our financial results could be adversely affected.

101.  Despite the self-serving attempt to characterize this weakness as "previously disclosed," the Company had never previously disclosed that it was unable to timely or accurately account for "stock-based awards and build-to-suit leases," and had never disclosed that it had failed to account for these crucial items as GAAP required.

102.  As a result of these final partial disclosures, shares of NantKwest fell $0.29 per share from a close of $8.50 on March 29, 2016, to close at $8.21 on March 30, 2016.

## PLAINTIFFs' CLASS ACTION ALLEGATIONS

103.  Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of all persons or entities that: (1) purchased or otherwise acquired NantKwest common stock pursuant and/or traceable to NantKwest's Registration Statement issued in connection with its July 28, 2015 IPO, seeking to pursue remedies under §§ 11 and 15 of the Securities Act; and/or (2) purchased or otherwise acquired NantKwest common stock between July 28, 2015 and March 29, 2016, both dates inclusive, seeking to pursue remedies under §§10(b) and 20(a) of the Exchange Act. Excluded are Defendants herein, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

104.   Class members are so numerous that joinder of all members is impracticable.   Throughout the Class Period, NantKwest common stock was actively traded on the NASDAQ Global Select Market.  According to NantKwest's Form 10-K filed on March 30, 2016, it had 83 holders of record.  Because the overwhelming majority of owners hold shares in street name, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Potential Class members may be identified from records maintained by NantKwest, their transfer agents, and brokers and banks that hold shares beneficially for investors in street name, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

105.   Plaintiffs' claims are typical of the claims of those of the Class, as all Class members were similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

106.   Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and securities litigation.

107.   Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members.  Among the questions of law and fact common to the Class are:

- whether the Registration Statement contained any material misrepresentations or omissions;

- whether the Individual Defendants or Underwriter Defendants have a viable good faith defense to the strict liability otherwise imposed by Section 11 of the Securities Act;

- whether Defendants can establish negative causation as a defense to or as a reduction of the strict liability otherwise imposed by Section 11 of the Securities Act;

- whether Soon-Shiong was a control person of NantKwest for purposes of Section 15 of the Securities Act and Section 20(a) of the Exchange Act;

- whether the Form 10-Qs filed by NantKwest on September 9, 2015 and November 10, 2015 contained any material misrepresentations or omissions;

- whether misrepresentations or omissions were made with scienter;

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether the prices of NantKwest's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the Classes have sustained damages with respect to their Exchange Act claims and, if so, what is the proper measure of damages.

108.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

109.   With respect to Exchange Act claims, Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- NantKwest's securities are traded in efficient markets;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ, and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and Class members purchased and/or otherwise acquired NantKwest common stock between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

110.   Based upon the foregoing, Plaintiffs and other Class members are entitled to a presumption of reliance upon the integrity of the market.

111.   Alternatively, Plaintiffs and Class members are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Against NantKwest, the Individual Defendants and the Underwriter Defendants for Violation of Section 11 of the Securities Act)**

112.   Plaintiffs repeat and reallege allegations of Paragraphs 1 through 81 and 103 through 111 as if fully set forth herein.   The allegations contained in

Paragraphs 83 through 102 are expressly excluded from this claim, which does not allege fraud, recklessness or intentional misconduct.

113.   This claim is asserted by Plaintiffs against all Defendants on behalf of all persons who purchased shares of the Company's common stock pursuant to and/or traceable to the Company's IPO, in which the shares registered under the Registration Statement were sold.

114.   The Individual Defendants are strictly liable under the Securities Act as signatories of the Registration Statement for the misrepresentations and omissions contained therein, as identified in Paragraphs 66 to 81 above.

115.   NantKwest is strictly liable as the Issuer under the Securities Act for the misrepresentations and omissions it made in the Registration Statement, as identified in Paragraphs 66 to 81.

116.   The Underwriter Defendants are strictly liable under the Securities Act as named underwriters for the misrepresentations and omissions made in the Registration Statement, as identified in Paragraphs 66 to 81.

117.   None of the Defendants named herein conducted a reasonable investigation or possessed a reasonable basis for the belief that the statements contained in the Registration Statement and identified in Paragraphs 66 to 81 above were true, were without omissions of material fact or were otherwise not misleading.

118.   By reason of the conduct alleged herein, each of the Defendants has violated Section 11 of the Securities Act.

119.   Plaintiffs and the Class have sustained damages because the value of their NantKwest common stock has declined.  This decline is attributable by law to

Defendants in the absence of proof that it was caused by other factors, which proof has not been established.

120.   At the time of their purchases, Plaintiffs and the Class were without knowledge of the wrongful conduct alleged herein, and could not have reasonably discovered those facts more than one year prior to the filing of the initial complaint in this action.   The initial complaint was filed within three years of the time that NantKwest offered the shares covered by the Registration Statement to the investing public.

121.   By virtue of the foregoing, Plaintiffs and the other Class members are entitled to damages under Section 11 as measured by the provisions of Section 11(e), from the Defendants and each of them, jointly and severally.

## <u>COUNT II</u>

### (Against Soon-Shiong and Gomberg for Violation of Section 15 of the Securities Act)

122.   Plaintiffs repeat and reallege allegations of Paragraphs 1 through 81 and 103 through 111 as if fully set forth herein.   The allegations contained in Paragraphs 83 through 102 are expressly excluded from this claim, which does not allege fraud, recklessness or intentional misconduct.

123.   Soon-Shiong, by virtue of his office, directorship, controlling interest in NantKwest, relationship with other directors and executives (in particular Ji and Simon, as set forth above), related-party transactions, controlling interest in companies providing vital services to NantKwest, and proven ability to shape the structure and operations of NantKwest is a controlling person of NantKwest within the meaning of Section 15 of the Securities Act.

124.   Gomberg, as the Chief Financial Officer at the time of the IPO, exercised "almost complete responsibility for the processing of financial information" according to the Registration Statement.   Consequently, he was a controlling person of NantKwest within the meaning of Section 15 of the Securities Act.

125.   By virtue of the conduct alleged herein, Defendants Soon-Shiong and Gomberg are liable as control persons for the primary violations of Section 11 by NantKwest, as alleged in Count I.

126.   Soon-Shiong and Gomberg did not conduct a reasonable investigation or possess a reasonable basis for the belief that the statements contained in the Registration Statement and identified in Paragraphs 66 to 81 above were true, were without omissions of material fact, and were not misleading.

127.   Each of these Defendants is liable to the Plaintiffs and the Class for damages suffered as a result of the primary Securities Act violations of NantKwest.

## COUNT III

### (Against NantKwest and the Individual Defendants for Violations of Section 10(b) and Rule 10b-5)

128.   Plaintiffs repeat and reallege the allegations contained in Paragraphs 1 to 111 above as if fully set forth herein.

129.   This Count is asserted against NantKwest and each of the Individual Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

130.   At the time of the Registration Statement and during the Class Period, these Defendants engaged in a plan, scheme, conspiracy and course of conduct,

pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.   Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of NantKwest securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire NantKwest securities and options at artificially inflated prices.

131.   Specifically, NantKwest issued a Registration Statement, which each of the Individual Defendants signed as a maker of the representations contained therein, which was materially false and misleading as particularized in Paragraphs 66 to 81.

132.   NantKwest also issued, and Soon-Shiong signed, quarterly reports on Form 10-Q on September 9, 2015 and November 10, 2015, which were materially false and misleading as particularized in Paragraphs 86 to 93 above.   The primary violations alleged under this Count related to misrepresentations and omissions in these Form 10-Qs are brought only against Defendants NantKwest and Soon-Shiong.

133.   By virtue of their positions at NantKwest, Individual Defendants had actual knowledge of the materially false and misleading statements and material

omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to NantKwest and Defendants.  In addition to the facts alleged herein demonstrating a strong inference of scienter, certain information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within these Defendants' knowledge and control.  As the senior managers and/or directors of NantKwest, these Defendants had knowledge of the details of NantKwest's internal affairs.

134.   As officers and/or directors of a publicly-held company, Defendants had a duty to disseminate timely, accurate, and truthful information regarding NantKwest's business, operations, and financial controls.   As a result of the dissemination of the aforementioned false and misleading reports and filings, the market price of NantKwest securities was artificially inflated throughout the Class Period.

135.   In ignorance of the adverse facts concerning NantKwest's operations and financial controls which were concealed by the misrepresentations and omissions alleged herein, Plaintiffs and the other members of the Class purchased or otherwise acquired NantKwest securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby upon the disclosure of NantKwest's and the Individual Defendants' material misrepresentations and omissions.

136.   During the Class Period, NantKwest securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, directly relying on the materially false and misleading statements described herein,  and/or relying upon the integrity of the market, purchased or otherwise acquired shares of NantKwest securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of NantKwest securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of NantKwest securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

137.   By reason of the conduct alleged herein, NantKwest and Individual Defendants knowingly or recklessly violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

138.   As a direct and proximate result of disclosure of NantKwest's and the Individual Defendants' material misrepresentations and omissions, Plaintiffs and the other Class members suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period.  NantKwest and Individual Defendants are liable for damages in connection with these losses under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT IV

**(Against Defendants Soon-Shiong and Gomberg for Violations
of Section 20(a) of the Exchange Act)**

139.   Plaintiffs repeat and reallege allegations contained in Paragraphs 1 to 113 and 128 to 138 above, as if fully set forth herein.

140. During the Class Period, Defendants Soon-Shiong and Gomberg participated in the operation and management of NantKwest, and conducted and participated, directly and indirectly, in the conduct of NantKwest's business affairs. Because of their senior positions and/or directorships, they knew the adverse non-public information about NantKwest's finances and internal controls.

141.   As officers and/or directors of a publicly owned company, these Defendants had a duty to disseminate accurate and truthful information with respect to NantKwest's reports and filings and to correct promptly any public statements issued by NantKwest which had become materially false or misleading.

142.   Soon-Shiong, by virtue of his office, directorship, controlling interest in NantKwest, relationship with other directors and executives (in particular Ji and Simon, as set forth above), related-party transactions, controlling interest in companies providing vital services to NantKwest, and proved ability to shape the structure and operations of NantKwest is a controlling person of NantKwest within the meaning of Section 20(a) of the Exchange Act.

143.   Gomberg, as the Chief Financial Officer at the time the materially false and misleading Registration Statement and Form 10-Q's were filed, exercised "almost complete responsibility for the processing of financial information"

according to the Registration Statement.   Consequently, he was a controlling person of NantKwest within the meaning of Section 20(a) of the Exchange Act.

144.   Because of their positions of control and authority as senior officers and/or directors, these Defendants were able to, and did, control the contents of the reports and public filings that NantKwest disseminated in the marketplace during the Class Period concerning its financial results and internal controls.   Throughout the Class Period, these Defendants exercised their power and authority to cause NantKwest to engage in the wrongful acts complained of herein.

145.   As control persons, Soon-Shiong and Gomberg are liable pursuant to Section 20(a) of the Exchange Act for the primary violations of the Exchange Act committed by NantKwest as set forth in Count III.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.   Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## __DEMAND FOR TRIAL BY JURY__

Plaintiffs hereby demand a trial by jury.

Dated: August 4, 2016

**GLANCY PRONGAY &**
    **MURRAY LLP**


By:  _s/ Kara M. Wolke_
Robert V. Prongay
Kara M. Wolke
Alexa Mullarky
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
      kwolke@glancylaw.com
      amullarky@glancylaw.com

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

Patrick V. Dahlstrom
Joshua B. Silverman
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail: pdahlstrom@pomlaw.com
      jbsilverman@pomlaw.com
      ojafri@pomlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com

**BRAGAR EAGEL & SQUIRE P.C.**
J. Brandon Walker
Todd H. Henderson
885 Third Avenue, Suite 3040
New York, New York 10022
Telephone: (212) 308-5858
Email: walker@bespc.com
         henderson@bespc.com

***Attorneys for Plaintiffs***

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO
CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES
AND ECF GENERAL ORDER NO. 10-07**

I, the undersigned, say:

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

On August 4, 2016, I caused to be served the following document:

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the parties as listed on the Court's ECF Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on August 4, 2016, at Los Angeles, California.

*s/ Kara M. Wolke*
Kara M. Wolke

# Mailing Information for a Case 2:16-cv-01947-MWF-JEM Sunil Sudunagunta v. Nantkwest, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Cynthia Ann Dy**
  cdy@wsgr.com

- **Boris Feldman**
  boris.feldman@wsgr.com

- **Michael M Goldberg**
  michael@goldberglawpc.com,dmacdiarmid@glancylaw.com,info@glancylaw.com,brian@goldberglawpc.com

- **Todd H Henderson**
  henderson@bespc.com

- **J Alexander Hood**
  ahood@pomlaw.com

- **Omar Jafri**
  ojafri@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Alexa Mullarky**
  amullarky@glancylaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Michael R Petrocelli**
  mpetrocelli@wsgr.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,echang@glancylaw.com,bmurray@glancylaw.com

- **Kevin F Ruf**
  kruf@glancylaw.com,info@glancylaw.com,kevinruf@gmail.com

- **Cali D Tran**
  ctran@wsgr.com,aduff@wsgr.com

- **John Brandon Walker**
  walker@bespc.com,taylor@bespc.com,wong@bespc.com

- **Kara M Wolke**
  kwolke@glancylaw.com,info@glancylaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual

noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Brian            Schall**
Goldberg Law PC
13650 Marina Pointe Drive Suite 1404
Marina Del Rey, CA 90292