Robert V. Prongay (SBN 270796)
Kara M. Wolke (SBN 241521)
Alexa Mullarky (SBN 307932)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: kwolke@glancylaw.com

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

[Additional Counsel on Signature Page]
*Attorneys for Lead Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SUDUNAGUNTA, Individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>        v.<br><br>NANTKWEST, INC., PATRICK SOON-SHIONG, RICHARD GOMBERG, BARRY J. SIMON, STEVE GORLIN, MICHAEL D. BLASZYK, HENRY JI, RICHARD KUSSEROW, JOHN T. POTTS, JR., ROBERT ROSEN, JOHN C. THOMAS JR., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., JEFFERIES LLC, PIPER JAFFRAY & CO., and MLV & CO., LLC,<br><br>          Defendants. | Case No. 16-cv-01947-MWF-JEM<br><br>Consolidated with 2:16-cv-3438-MWF-JFM<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:      July 30, 2018<br>Time:     10:00 a.m.<br>Before:   Hon. Michael Fitzgerald<br>Courtroom: 5A |

# TABLE OF CONTENTS

I.      ISSUES TO BE DECIDED ................................................................................1

II.     PRELIMINARY STATEMENT ....................................................................1

III.    FACTUAL SUMMARY ................................................................................4

IV.     ARGUMENT...................................................................................... 6

        A.      The Proposed Class Meets the Requirements of Rule 23(a)................... 7

                1.      Numerosity ...................................................... 8

                2.      Commonality ......................................................9

                3.      Typicality ......................................................9

                4.      Adequacy ...................................................... 10

        B.      The Proposed Class Satisfies Rule 23(b)(3) ........................................10

                1.      Common Questions of Law and Fact Predominate over
                        Individual Questions ...................................................11

                2.      A Class Action Is Superior to Other Methods for Resolving
                        This Controversy ...................................................12

V.      CONCLUSION........................................................................ 13

1

# TABLE OF AUTHORITIES

2

**Cases** **Pages**

3

4

*Amchem Prods. V. Windsor,*
  521 U.S. 591 (1997) ..................................................................11

5

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S. Ct. 1184 (2013) ...............................................................1, 7

6

7

*Basic Inc. v. Levinson,*
  485 U.S. 224 (1988) ...................................................................2

8

*Blackie v. Barrack,*
  524 F.2d 891 (9th Cir. 1975) ...................................................... 2, 6, 11

9

10

*Brown v. China Integrated Energy, Inc.,*
  No. CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 19177 (C.D. Cal. Feb.
  17, 2015) .................................................................................. 9

11

*Connecticut Retirement Plans & Trust Funds v. Amgen,*
  2009 U.S. Dist. LEXIS 71653 (C.D. Cal. Aug. 12, 2009) .......................9

12

13

*Dean v. China Agritech,*
  2012 U.S. Dist. LEXIS 70683 (C.D. Cal. May 3, 2012)........................8

14

*Epstein v. MCA, Inc.,*
  50 F.3d 644 (9th Cir. 1995) ........................................................ 3

15

16

*Ernst & Ernst v. Hochfelder,*
  425 U.S. 185 (1976) ...................................................................2

17

*Freedman v. Louisiana-Pacific Corp.,*
  922 F. Supp. 377 (D. Or. 1996) ...................................................11

18

19

*Gable v. Land Rover N. Am., Inc.,*
  2011 U.S. Dist. LEXIS 90774 (C.D. Cal. July 25, 2011)........................ 6

20

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ..................................................... 7, 9, 11

21

22

*Hanon v. Dataproducts Corp.,*
  976 F.2d 497 (9th Cir. 1992) .......................................................9

23

*Harris v. Palm Springs Alpine Estates, Inc.,*
  329 F.2d 909 (9th Cir. 1964) ....................................................... 8

24

25

*Herman & MacLean v. Huddleston,*
  459 U.S. 375 (1983) ...................................................................1, 2

26

27

*Hodges v. Akeena Solar, Inc.,*
  274 F.R.D. 259 (N.D. Cal. 2011) ..................................................7

28

*In re Alco Intern. Group, Inc., Sec. Litig.*,
   158 F.R.D. 152 (S.D. Cal. 1994) ................................................................. 11

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2015 U.S. Dist. LEXIS 5137 (S.D. Cal. Jan. 15, 2015) ........................................6

*In re Celera Corp. Sec. Litig.*,
   2014 U.S. Dist. LEXIS 25098 (N.D. Cal. Feb. 25, 2014) .................................... 7

*In re Cooper Companies Inc. Securities Litigation*,
   254 F.R.D. 628 (C.D. Cal. 2009) ......................................................... 3, 8, 9, 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
   273 F.R.D. 586 (C.D. Cal. 2009) ................................................................. 12

*In re Emulex Corp. Sec. Litig.*,
   210 F.R.D. 717 (C.D. Cal. 2002) ................................................................10

*In re HealthSouth Corp. Sec. Litig.*,
   257 F.R.D. 260 (N.D. Ala. 2009) ................................................................. 12

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ................................................................13

*In re LendingClub Sec. Litig.*,
   2017 U.S. Dist. LEXIS 174208 (N.D. Cal. Oct. 20, 2017) ................................ 9

*In re Magma Design Automation, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 62641 (N.D. Cal. Aug. 16, 2007) ....................................3

*In re Memorex Sec. Cases*,
   61 F.R.D. 88 (N.D. Cal. 1973) ................................................................11

*In re Portal Software, Inc. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 51794 (N.D. Cal. June 30, 2007) ....................................7

*In re THQ, Inc. Sec. Litig.*,
   2002 U.S. Dist. LEXIS 7753(C.D. Cal. Mar. 22, 2002).................................... 6, 8

*In re VeriSign, Inc. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ................................8, 11

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ................................................................. 10

*Schneider v. Traweek*,
   1990 U.S. Dist. LEXIS 15596 (C.D. Cal. July 31, 1990)................................... 2, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)................................................................................ 2

*Vaquero v. Ashley Furniture Indus.*,
   824 F.3d 1150 (9th Cir. 2016) ................................................................12

*Vinh Nguyen v. Radient Pharmaceuticals Corp.*,
   287 F.R.D. 563 (C.D. Cal. 2012).......................................................... 7, 9

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...............................................................................7

**<u>Rules</u>**

Fed. R. Civ. P. 23(a)............................................................... 8, 9, 10

Fed. R. Civ. P.  23(b)(3)...........................................................10, 12

# I.   ISSUES TO BE DECIDED

1.      Whether this action should be certified as a class action on behalf of those persons or entities that purchased or otherwise acquired the publicly traded common stock of NantKwest, Inc. ("NantKwest" or the "Company") in or traceable to NantKwest's July 27, 2015 initial public offering ("IPO").[1]

2.      Whether Lead Plaintiffs Donald Hu and Brayton Li ("Plaintiffs") should be appointed as class representatives and whether their counsel of choice, Pomerantz LLP ("Pomerantz") and Bragar Eagel & Squire, P.C. ("Bragar") should be appointed as Co-Class Counsel, and Glancy Prongay & Murray LLP ("Glancy") should be appointed as Liaison Counsel.

# II.   PRELIMINARY STATEMENT

Plaintiffs seek class certification of claims against NantKwest, certain of its officers and directors, and the underwriters of the Company's July 27, 2015 IPO, brought under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). As set forth in Plaintiffs' motion to strike, filed herewith, Plaintiffs do not seek certification of claims under the Securities Exchange Act of 1934 ("Exchange Act"), which were asserted in the Third Amended Complaint ("TAC"), and do not intend to further pursue those claims because Plaintiffs have concluded that they will be unable to demonstrate that NantKwest stock traded in an efficient market. Without market efficiency, the fraud-on-the-market presumption is not available and individual proof of reliance would prevent classwide adjudication of Exchange Act claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1199, 185 L. Ed. 2d 308 (2013). Reliance is not an element of the Securities Act claims. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382

---

[1] Excluded from the Class are defendants in this litigation, the present and former officers and directors of NantKwest or any subsidiary thereof, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any defendant (or combination of defendants) have or had a controlling interest.

(1983).   Thus, an inefficient market for NantKwest stock does not impact class certification of Plaintiffs' Securities Act claims.

Indeed, Plaintiffs' Securities Act claims are ideally suited for class treatment.   They arise entirely from common misrepresentations and omissions made to all investors in NantKwest's IPO Registration Statement.   In particular, the Registration Statement failed to disclose:   (i) that NantKwest had incurred over $114 million in executive compensation expense prior to its IPO due to "performance" warrants granted to NantKwest's CEO, Patrick Soon-Shiong ("Soon-Shiong"); (ii) millions of dollars of additional liability incurred prior to the IPO from a related-party lease arrangement; and (iii) material weaknesses in NantKwest's internal controls.   On September 20, 2017, the Court sustained Plaintiffs' TAC in its entirety.   *See* ECF No. 121.   That order lifted the discovery stay imposed by the Private Securities Litigation Reform Act ("PSLRA"), and discovery is ongoing.   On December 18, 2017, the Court entered its Order Re Jury Trial, with trial set to begin on August 6, 2019.   ECF No. 134.   Now, Plaintiffs move for certification of a class of investors damaged by Defendants' fraud.

The Supreme Court has repeatedly recognized the importance of class actions in redressing violations of the federal securities laws.   *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . ."); *Basic Inc. v. Levinson*, 485 U.S. 224, 229-30, 249-50 (1988); *Huddleston*, 459 U.S. at 380 n.10; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 196 (1976).   Similarly, "[t]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."   *Schneider v. Traweek*, No. CV 88-0905 RG (Kx), 1990 U.S. Dist. LEXIS 15596, at *16 (C.D. Cal. July 31, 1990) (citing *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976)).

In this case, as "in almost all lawsuits by shareholders of public companies, the investors . . . easily satisfy the requirements of Rule 23." *In re Magma Design Automation, Inc. Sec. Litig.*, No. C 05-2394, 2007 U.S. Dist. LEXIS 62641, at *2 (N.D. Cal. Aug. 16, 2007).

- ***First***, numerosity is satisfied because the Class consists of hundreds, if not thousands, of investors that purchased NantKwest's stock in or traceable to its IPO;
- ***Second***, there are numerous legal and factual questions that are common to all Class members, including whether Defendants' statements and omissions in the Registration Statement were materially false and misleading;
- ***Third***, Plaintiffs' claims are not only typical of, but identical to, those of the Class, as all Class members purchased pursuant to the same material misrepresentations and omissions; and
- ***Fourth***, Plaintiffs are committed to overseeing and managing this litigation to fairly and adequately protect the interests of the Class.

Additionally, common questions predominate over minimal individual issues, such as mechanical tabulation of statutory damages, and a class action is superior to a multitude of individual actions. By contrast, individual litigation of each Class member's claims would be inefficient and impracticable. *See In re Cooper Companies Inc. Securities Litigation*, 254 F.R.D. 628, 632, (C.D. Cal. 2009) ("[A]djudicating this matter as a class action is a superior method to resolve the parties' controversy because it avoids not only the dangers of duplicate discovery and trials, but also the unfairness of inconsistent findings and judgments."). As the Ninth Circuit has explained, securities fraud cases fit Rule 23 "like a glove." *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367 (1996). The Court should grant Plaintiffs' motion for class certification.

## III.   FACTUAL SUMMARY

Over the eight months leading to its IPO, Soon-Shiong engineered a takeover of NantKwest and shifted the Company's focus from pursuing science to personally enriching himself.  In December 2014, an investment vehicle owned by Soon-Shiong bought a majority stake in NantKwest.  ¶55.[2]  At the same time, another pharmaceutical company Soon-Shiong controlled bought additional shares.  ¶53.  With his new influence, Soon-Shiong caused NantKwest to appoint him as its Director, Co-Chairman, and Chief Medical Officer, and to make his business partner, defendant Henry Ji ("Ji"), a Director.  ¶¶54-56.

Soon-Shiong quickly began to use his dominance over NantKwest to line his own pockets, and those of his partner, Ji.  In March 2015, Soon-Shiong and Ji negotiated a deal whereby they personally would buy all of the shares in a company called InexBio not already owned by NantKwest for $1.1 million, and then flip them to NantKwest for $6.5 million in cash and 2,609,520 in warrants to purchase NantKwest shares at far less than fair value.  ¶57.  Soon-Shiong and Ji promptly exercised those warrants for a massive profit.  *Id.*  Soon-Shiong also caused NantKwest to rebrand itself to align with other Soon-Shiong companies, and to enter into numerous lucrative contracts with Soon-Shiong's other companies.  ¶4.

On March 24, 2015, NantKwest's Board appointed Soon-Shiong CEO.  At the same time, it passed a resolution authorizing the Company to issue Soon-Shiong options to purchase 1,851,500 shares at $2 per share (split-adjusted) and warrants to purchase 17,589,250 shares for $2 per share (split-adjusted).  The Company has conceded that the warrant terms were modified and new terms agreed to on May 8, 2015.  ¶60.  Under the modified terms, warrants for 8,331,750 shares would vest when a large pharmaceutical or biotech company (a

---

[2] All paragraph references are to the TAC filed on July 10, 2017 and unless otherwise stated, all defined terms shall have the same meaning ascribed to them in the TAC.

"Strategic Partner") invested at least $20 million in NantKwest at a minimum valuation of $1.5 billion (the "Strategic Partner Trigger").  *Id.*  At the time they agreed to this condition, Soon-Shiong and the other NantKwest defendants knew that biotech giant Celgene, in which Soon-Shiong was the largest individual investor and which already had made several large investments in Soon-Shiong's entities, was likely to make a Strategic Partner investment in NantKwest that would satisfy the Strategic Partner trigger.  ¶¶46-51.

Because the warrant terms were agreed upon on May 8, 2015, that date is considered the "grant date" under Generally Accepted Accounting Principles ("GAAP").  ¶59, n.12.  Crucially, the value of a warrant grant depends upon the share price on the grant date, which is determined pursuant to a Black-Scholes or similar pricing model.  *Id.*  Plaintiffs will prove that the fair value of NantKwest's common stock on the May 8, 2015 grant date was at least $15.31, more than seven times the strike price of $2.00, and each warrant share was worth at least $13.75 under the Black-Scholes model.

These 8,331,750 warrant shares valued at $13.75 each constituted compensation to Soon-Shiong of $114,561,562, which NantKwest has since admitted.  ¶¶9,15.  This equity compensation made Soon-Shiong the highest compensated executive in the United States for 2015.

Here, the Strategic Partner warrant condition was probable as of the grant date due to Soon-Shiong's influence over Celgene as its largest individual shareholder, Celgene's stated desire to invest in his entities, and Celgene's history of investing in his entities.  ¶¶46-51.  Because the Strategic Partner vesting condition was already "probable" as of the grant date, NantKwest incurred that amount in compensation expense on the grant date and, pursuant to GAAP, was required to accrue that compensation expense.  ¶59.

As a result, NantKwest incurred and was required to record $114,561,562 in executive compensation expense in the second quarter of 2015.  Yet,

Defendants' Registration Statement made no mention of this massive payout, even in the sections that purported to describe executive compensation, related-party transactions, and material events between March 30, 2015 and July 15, 2015.  ¶¶83-98.

Defendants' Registration Statement also omitted any mention of a related-party lease arrangement between NantKwest and NantWorks, another Soon-Shiong entity, for which NantKwest had assumed millions of dollars of liability prior to the IPO.  ¶65.  Consistent with NantKwest's post-Class Period admission that the liability was a second quarter 2015 expense, two confidential witnesses cited in the TAC both corroborated that construction at the facility was underway prior to the IPO.  ¶64.  Likewise, when NantKwest and NantWorks documented the lease arrangement, they conceded it was effective as of May 22, 2015, prior to the IPO.  ¶65.  Finally, Defendants' Registration Statement also misrepresented the extent of material weaknesses in NantKwest's internal controls.  ¶¶95-97.

By omitting this material information, on July 27, 2015, Defendants were able to successfully execute one of the largest biotech IPOs of the year, raising over $225 million.  ¶98.

## IV.    ARGUMENT

"The law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws."  *Schneider*, 1990 U.S. Dist. LEXIS 15596, at *16 (citing *Blackie*, 524 F.2d at 902; *In re THQ, Inc. Sec. Litig.*, No. CV 00-1783 AHM (Ex), 2002 U.S. Dist. LEXIS 7753, at *8 (C.D. Cal. Mar. 22, 2002).  Any doubt as to the propriety of certification should be resolved in favor of certifying the class.  *Gable v. Land Rover N. Am., Inc.*, No. SAVC 07-0376 AG (RNBx), 2011 U.S. Dist. LEXIS 90774, at *8 (C.D. Cal. July 25, 2011).  Consequently, courts throughout the Ninth Circuit regularly grant class certification in securities fraud cases.  *See, e.g., In re Bridgepoint Educ., Inc. Sec. Litig.*, No. 12-cv-1737

JM (JLB), 2015 U.S. Dist. LEXIS 5137, at *2 (S.D. Cal. Jan. 15, 2015); *In re Celera Corp. Sec. Litig.*, No. 5: 10-CV-02604-EJD, 2014 U.S. Dist. LEXIS 25098 (N.D. Cal. Feb. 25, 2014); *Vinh Nguyen v. Radient Pharmaceuticals Corp.*, 287 F.R.D. 563, at 575, (C.D. Cal. 2012); *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 259 (N.D. Cal. 2011).

"A Rule 23 determination is wholly procedural and has nothing to do with whether a plaintiff will ultimately prevail on the substantive merits of its claim." *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *6-7 (N.D. Cal. June 30, 2007). While courts must conduct a "rigorous analysis" to determine whether the elements of Rule 23 have been satisfied, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), Rule 23 is not a "license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013). "Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. In particular, materiality is considered to be a merits issue not appropriately addressed at the class certification stage. *Id.*

## A.     The Proposed Class Meets the Requirements of Rule 23(a)

The class certification analysis involves two steps. *First*, the proposed class must satisfy Rule 23(a)'s four prerequisites:  (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical; and (iv) the class representatives and their counsel will fairly and adequately protect the interests of the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). *Second*, the proposed class must satisfy Rule 23(b):  (i) questions of law or fact common to class members must predominate over individualized ones; and (ii) a class action must be superior to other available

methods for efficiently resolving the controversy.  *Id.* at 1022.  Each of these requirements is satisfied here.

### 1.   Numerosity

The numerosity requirement is met "where the class is so numerous that joinder of all members is impracticable."  *Cooper*, 254 F.R.D. at 633.  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *Cooper*, 254 F.R.D. at 634.  In securities cases, numerosity is presumed when millions of shares are traded during the period in question.  *Id.*  "'[F]ederal trial courts are quite willing to accept common sense assumptions in order to support a finding of numerosity, often looking at the number of shares traded or transactions completed rather than seeking to determine directly the number of potential class members involved.'"  *In re VeriSign, Inc. Sec. Litig.*, No. C 02-02270 JW, 2005 U.S. Dist. LEXIS 10438, at *13 (N.D. Cal. Jan. 13, 2005) ("[i]n cases involving securities traded on national stock exchanges, numerosity is practically a given."); *THQ*, 2002 U.S. Dist. LEXIS 7753, at *9 ("given the number of shares of THQ traded during the Class Period . . . common sense dictates that the proposed class is surely sufficiently large to make joinder impracticable").

Here, NantKwest sold over 9.5 million shares in its IPO, and traded regularly and actively following the IPO.  *See* Silverman Decl., Ex. A., NantKwest trading data for six months following IPO.  In all weeks observed, NantKwest traded more than a million shares, and sometimes several million.  *Id.*  Accordingly, it is apparent that hundreds, if not thousands, of investors purchased NantKwest's stock in or traceable to the IPO, and that numerosity is therefore satisfied.  *See Dean v. China Agritech*, CV 11-01331-RGK (PJWx), 2012 U.S. Dist. LEXIS 70683, at *10 (C.D. Cal. May 3, 2012) (classes of more than forty investors satisfies numerosity in a securities class action).

### 2. Commonality

Commonality is a prerequisite to class certification that securities fraud plaintiffs "satisfy very easily." *Brown v. China Integrated Energy, Inc.*, No. CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 19177, at *45 (C.D. Cal. Feb. 17, 2015). Allegations such as those here, "that investors were defrauded by the same misleading registration statement over the same period of time, and suffered similar losses as a result are sufficient to fulfill FRCP 23(a)'s commonality requirement." *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2017 U.S. Dist. LEXIS 174208, at *16 (N.D. Cal. Oct. 20, 2017). Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019. Instead, because commonality is "construed permissively," the "existence of shared legal issues with divergent factual predicates is sufficient." *Id.*

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Cooper*, 254 F.R.D. at 633. "The purpose of the typicality requirement 'is to assure that the interest of the named representative aligns with the interests of the class.'" *Radient*, 287 F.R.D. at 569-70 (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Connecticut Retirement Plans & Trust Funds v. Amgen*, No. CV 07-2536 PSG (PLAx), 2009 U.S. Dist. LEXIS 71653, at *14 (C.D. Cal. Aug. 12, 2009) (quoting *Hanon*, 976 F.2d at 508). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Plaintiffs' claims here are unquestionably typical of the claims of absent class members. All purchased shares pursuant to or traceable to NantKwest's IPO, and therefore have the exact same legal claims under Sections 11 and 15 of

the Securities Act, and the exact same interest in demonstrating that the Registration Statement contained material misrepresentations and omissions.

### 4. Adequacy

The adequacy element of Rule 23(a)(4) is intended to ensure that a class representative will "fairly and adequately protect the interests of the class." *Cooper*, 254 F.R.D. at 636; Fed. R. Civ. P. 23(a)(4). Two criteria determine adequacy. "First, the named representative must appear able to prosecute the action vigorously through qualified counsel, and second, the representative must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) (citations omitted).

Plaintiffs easily satisfy these criteria. Plaintiffs have engaged qualified, experienced, and capable attorneys. Proposed Class Co-Counsel, as well as Liaison Counsel, are highly experienced in securities fraud class action litigation, and have demonstrated the ability and willingness to prosecute this action vigorously. *See* Silverman Decl., Ex. B-D, firm resumes. Moreover, the record in this case demonstrates that the interests of Plaintiffs are precisely aligned with those of absent Class members. All were impacted by the same Registration Statement misrepresentations and omissions, and all have the same interest in demonstrating the materiality and falsity of those statements. Plaintiffs have vigorously prosecuted this action on behalf of the Class for approximately two years, and will continue to do so. Accordingly, Plaintiffs have demonstrated that they "will fairly and adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a)(4).

### B. The Proposed Class Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to the class 'predominate' over questions affecting the individual members and, on balance, a class action is superior to other methods available for adjudicating the controversy." *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal.

2002); *see also Freedman v. Louisiana-Pacific Corp*., 922 F. Supp. 377, 399-400 (D. Or. 1996). The primary purpose behind Rule 23(b)(3) is to aggregate small claims to make the cost and effort of the litigation economically feasible. *See Amchem Prods. V. Windsor*, 521 U.S. 591, 617 (1997). "Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants." *VeriSign*, 2005 U.S. Dist. LEXIS 10438, at *31-32.

### 1.   Common Questions of Law and Fact Predominate Over Individual Questions

Where, as here, plaintiffs allege a "common course of conduct" consisting of misrepresentations and omissions that affect all members of the class in the same manner, common questions predominate. *Blackie*, 524 F.2d at 905-08; *In re Alco Intern. Group, Inc., Sec. Litig*., 158 F.R.D. 152, 154 (S.D. Cal. 1994). Consideration of predominance focuses on the issue of liability. *Blackie*, 524 F.2d at 902; *In re Memorex Sec. Cases*, 61 F.R.D. 88, 103 (N.D. Cal. 1973). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Trial in this case will focus almost exclusively on common questions of law and fact related to Defendants' liability for Registration Statement misrepresentations and omissions. In particular, Plaintiffs' Securities Act claims revolve around the following questions common to the Class:

- Whether the Registration Statement omitted material information about NantKwest's executive compensation expense to Soon-Shiong;

- Whether the Registration Statement omitted material information about liability for a related-party lease between NantKwest and another company owned and controlled by Soon-Shiong; and

- Whether the Registration Statement materially misrepresented the extent of material weaknesses in NantKwest's internal controls.

By contrast, there are no significant individual issues, let alone individual issues that predominate over the substantial common issues to be litigated. As NantKwest's counsel conceded, damage calculations in this case will be mechanical pursuant to the formula set forth in the Securities Act. *See* Transcript, Oral Argument on September 11, 2017 (ECF No. 122) at 20:15-20 ("Section 11 damages are very finite and statutory. Number of shares offered in the offering times the delta between the share price and the date the lawsuit was filed and the date at which the shares sold in the offering. That is very finite and clear."). At any rate, in the Ninth Circuit, "the need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1155 (9th Cir. 2016).

### 2. A Class Action is Superior to Other Methods for Resolving This Controversy

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Courts have recognized that "class action treatment presents a superior method for the fair and efficient resolution of securities fraud cases." *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 284 (N.D. Ala. 2009); *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, at 623-24 (C.D. Cal. 2009). In determining the issue of superiority, Rule 23(b)(3) enumerates the following factors to consider:

> (1) the class members' interests in individually controlling the prosecution . . . of separate actions, (2) the extent and nature of any litigation concerning the controversy already begun by . . . class members, (3) the desirability . . . of concentrating the litigation of the claims in the particular forum, and (4) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Each factor is satisfied here. The Class members are too numerous and the typical claim is too small for each Class member to maintain a separate action.

Further, this Court is an appropriate forum because a substantial part of the alleged misconduct occurred in this district.   Moreover, the geographical dispersion of Class members, arising from NantKwest's nationwide IPO and subsequent trading on a national exchange, makes it desirable that litigation of the claims involved be concentrated in this forum.   *See In re Juniper Networks, Inc. Sec. Litig.*, 264 F.R.D. 584, 592 (N.D. Cal. 2009) ("[I]t is almost certain that there will be thousands of class members.   Where thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single forum . . . .").   Finally, Plaintiffs and their counsel foresee no management difficulties that would preclude this action from being maintained as a class action, as securities fraud cases usually proceed.

# V.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request entry of an order certifying this action as a class action, appointing Donald Hu and Brayton Li as Class Representatives, appointing Pomerantz and Bragar as Co-Class Counsel, and Glancy as Liaison Counsel.

Dated: April 2, 2018                    GLANCY PRONGAY & MURRAY LLP

By:  *s/ Kara M. Wolke*
Robert V. Prongay
Kara M. Wolke
Alexa Mullarky
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com
          kwolke@glancylaw.com
          amullarky@glancylaw.com

*Liaison Counsel for Lead Plaintiffs and proposed plaintiff classes*

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail:  jpafiti@pomlaw.com

Patrick V. Dahlstrom
Joshua B. Silverman
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
E-mail:  pdahlstrom@pomlaw.com
            jbsilverman@pomlaw.com
            ojafri@pomlaw.com

BRAGAR EAGEL & SQUIRE P.C.
David J. Stone (SBN 208961)
Todd H. Henderson
Melissa A. Fortunato
885 Third Avenue, Suite 3040
New York, New York 10022
Telephone:  (212) 308-5858
Email: stone@bespc.com
            henderson@bespc.com
            fortunato@bespc.com

*Co-Lead Counsel for Lead Plaintiffs and the proposed plaintiff classes*

MEMORANDUM OF LAW IN SUPPORT OF LEAD
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
NO. 16-CV-01947-MWF-JEM

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On April 2, 2018, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 2, 2018, at Los Angeles, California.

*s/ Kara M. Wolke*
Kara M. Wolke

# Mailing Information for a Case 2:16-cv-01947-MWF-JEM Sunil Sudunagunta v. Nantkwest, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Patrice L Bishop**
  service@ssbla.com,ssblaservice@gmail.com,pbishop@ssbla.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com

- **Cynthia Ann Dy**
  cdy@wsgr.com

- **Boris Feldman**
  boris.feldman@wsgr.com,abenjamin@wsgr.com,lwahlberg@wsgr.com,lcardenas@wsgr.com

- **Melissa A Fortunato**
  fortunato@bespc.com,ecf@bespc.com

- **Michael M Goldberg**
  michael@goldberglawpc.com,dmacdiarmid@glancylaw.com,info@glancylaw.com,brian@goldberglawpc.com

- **Todd H Henderson**
  henderson@bespc.com,ecf@bespc.com

- **J Alexander Hood , III**
  ahood@pomlaw.com,abarbosa@pomlaw.com

- **James I Jaconette**
  jamesj@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Omar Jafri**
  ojafri@pomlaw.com

- **Jeremy A Lieberman**
  jalieberman@pomlaw.com,disaacson@pomlaw.com

- **Alexa Mullarky**
  amullarky@glancylaw.com

- **Jennifer Pafiti**
  jpafiti@pomlaw.com,ahood@pomlaw.com,kmsaletto@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Michael R Petrocelli**
  mpetrocelli@wsgr.com

- **Robert Vincent Prongay**
  rprongay@glancylaw.com,CLinehan@glancylaw.com,info@glancylaw.com,robert-prongay-
  0232@ecf.pacerpro.com,bmurray@glancylaw.com

- **Kevin F Ruf**
  kruf@glancylaw.com,info@glancylaw.com,kevinruf@gmail.com

- **James C Rutten**
  james.rutten@mto.com,erin.cox@mto.com

- **Joshua B Silverman**
  jbsilverman@pomlaw.com

- **Cali D Tran**
  ctran@wsgr.com,aduff@wsgr.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Brian              Schall
Goldberg Law PC
1999 Avenue of the Stars  Suite 1100
Los Angeles, CA 90067
```