Robert V. Prongay (SBN 270796)
Kara M. Wolke (SBN 241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: kwolke@glancylaw.com

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

[Additional Counsel on Signature Page]

*Attorneys for Class Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SUDUNAGUNTA, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NANTKWEST, INC., PATRICK SOON-SHIONG, RICHARD GOMBERG, BARRY J. SIMON, STEVE GORLIN, MICHAEL D. BLASZYK, HENRY JI, RICHARD KUSSEROW, JOHN T. POTTS, JR., ROBERT ROSEN, JOHN C. THOMAS JR., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., JEFFERIES LLC, PIPER JAFFRAY & CO., and MLV & CO., LLC, <br><br> Defendants. | Case No. 16-cv-01947-MWF (JEMx) <br><br> Consolidated with 2:16-cv-3438-MWF-JFM <br><br> <u>CLASS ACTION</u> <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** <br><br> Date:     April 29, 2019 <br> Time:    10:00 a.m. <br> Before:  Hon. Michael Fitzgerald <br> Courtroom: 5A |

# **TABLE OF CONTENTS**

I.    SUMMARY OF THE LITIGATION ..................................................................2

II.   THE SETTLEMENT .......................................................................................5

III.  PRELIMINARY APPROVAL AND DISSEMINATION OF NOTICE ...........6

IV.   THE NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE .............7

V.    THE SETTLEMENT WARRANTS FINAL APPROVAL ................................9

   A.   Standard ...................................................................................................9

   B.   The Settlement Meets the Ninth Circuit Standards for Approval and the
        Factors Enumerated in Rule 23(e)(2) ....................................................11

      1.   The Settlement Process Was Procedurally Fair ...........................11

         a. Adequate Representation of the Class ......................................11

         b. Arm's-Length Negotiations .....................................................12

      2.   The Settlement Is Substantively Fair ...........................................13

         a. Strength of Class Plaintiffs' Case and the Risks and Costs of Continuing
            Litigation.................................................................................13

         b. The Risks of Maintaining a Class Action Through Trial ...........15

         c. The Amount Offered in the Settlement.....................................16

         d. The Extent of Discovery Completed and the Stage of the Proceedings......17

         e. The Experience and Views of Counsel .....................................18

         f. The Reaction of Class Members ...............................................19

      3.   The Relief Provided for the Class is Adequate and Treats Class Members
           Equitably ....................................................................................20

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE .................21

VII.  CONCLUSION...........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007)...........................................................................15

*Beaver v Tarsadia Hotels*,
  11-cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214,
  (S.D. Cal. Sept. 28, 2017).....................................................................................15

*Brown v. China Integrated Energy Inc.*,
  CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 186792,
  (C.D. Cal. Aug. 19, 2015).....................................................................................14

*Carson v. Am. Brands*,
  450 U.S. 79 (1981)..................................................................................................9

*Celera Corp. Sec. Litig.*,
  No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408,
  (N.D. Cal. Nov. 20, 2015).....................................................................................15

*Churchill Vill., L.L.C. v. GE*,
  361 F.3d 566 (9th Cir. 2004) ..................................................................................7

*City of San Diego v. Nat'l Steel & Shipbuilding Co.*,
  No. 09cv2275 WQH (BGS), 2015 U.S. Dist. LEXIS 53078,
  (S.D. Cal. Apr. 21, 2015)......................................................................................12

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..............................................................................21

*First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
  No. 901, 1992 U.S. Dist. LEXIS 14337, (C.D. Cal. June 10, 1992)......................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d  (9th Cir. 1998) ............................................................................9, 10, 19

*Hefler v. Wells Fargo & Co.*,
  No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292,
  (N.D. Cal. Sept. 4, 2018) ................................................................................10, 21

*In re Am. Apparel,*
  *No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548* ..................... 8, 18

 *In re Biolase, Inc. Sec, Litig.,*
  No. SACV 13-1300-JLS (FFMx), 2015 U.S. Dist. LEXIS 189232,
  (C.D. Cal. June 5, 2015) ................................................................... 17

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ............................................................ 17

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ................................................ 9, 12, 13, 16

*In re NetSol Techs.,*
  CV 14-5787 PA (PJWx), 2016 U.S. Dist. LEXIS 193924,
  (C.D. Cal. Jul. 1, 2016) ........................................................... 8, 10, 14

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................... 18, 21, 22

*In re Online DVD-Rental Antitrust Litig.,*
  779 F.3d 934 (9th Cir. 2015) ........................................................... 20

*In re Oracle Sec. Litig.,*
  No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994)..................... 21

*In re Symbol Techs., Inc. Sec. Litig.,*
  *05-CV-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756,*
  *(E.D.N.Y. June 25, 2015)* ............................................................... 12

*In re Synacor ERISA Litig.,*
  516 F.3d 1095 (9th Cir. 2008) ........................................................... 9

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.,*
  295 F.RD. 438 (C.D. Cal. 2014)..................................................... 16, 17

*In re Warner Comm. Sec. Litig.,*
  *187 F.R.D. 465 (S.D.N.Y. 1985)* ....................................................... 15

MPA ISO PLANTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION    Case No. 16-cv-01947-MWF (JEMx)          iii

*Klee v. Nissan N. Am., Inc.*,
NO. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88720,
(C.D. Cal. Jul. 7, 2015) .............................................................7, 9, 17

*Linney v. Cellular Alaska Partnership*,
151 F.3d 1234 (9th Cir. 1998) ..............................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)................................................................................7

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
221 F.R.D 523 (C.D. Cal. 2004).....................................................18, 19

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................9, 10, 11, 16

*Pacific Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ..................................................................19

*Rannis v. Recchia*,
380 Fed. App'x 646 (9th Cir. 2010) ........................................................7

*Roberti v. OSI Sys., Inc.*,
CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312,
(C.D. Cal. Dec. 8, 2015) .......................................................................13

*Salazar v. Midwest Servicing Grp., Inc.*,
CV 17-0137 PSG (KSx), 2018 U.S. Dist. LEXIS 172934,
(C.D. Cal. Oct. 2, 2018)...................................................................13, 18

*Schaffer v. Litton Loan Servicing, LP*,
No. CV 05-07673 MMM (JCx), 2012 U.S. Dist. LEXIS 189830,
(C.D. Cal. Nov. 13, 2012)......................................................................14

*Skilled Healthcare Group, Inc.*,
No. 09-5416, 2011 U.S. Dist. LEXIS 10139,
(C.D. Cal. Jan. 26, 2011) .......................................................................20

*Thomas v. MagnaChip Semiconductor Corp.*,
No. 14-civ-01160, 2017 U.S. Dist. LEXIS 174353,
(N.D. Cal. Oct. 20, 2017)......................................................................21

*Todd v. STARR Surgical Co.*,
    No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183,
    (C.D. Cal. Oct. 24, 2017) ............................................................................. 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ..................................................................... 7, 8

*Wireless Facilities, Inc. Secs. Litig. II*,
    07-cv-482 NLS, 2008 U.S. Dist. LEXIS 128674,
    (S.D. Cal. Dec. 19, 2008) ......................................................................... 14

*Young v. Polo Retail, LLC*,
    No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269,
    (N.D. Cal. Mar. 28, 2007) ........................................................................ 18

**RULES**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Court-appointed Class Plaintiffs Brayton Li and Donald Hu respectfully submit this memorandum of points and authorities in support of their Motion, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for final approval of the proposed Settlement, and approval of the proposed Plan of Allocation of the Net Settlement Fund to the Class.[1]

The proposed Settlement provides for a $12 million cash payment to the Class in consideration for resolving all claims alleged in this Action against all Defendants. The $12 million Settlement is an extraordinary result in light of the significant risks in the Action. After evaluating the facts, applicable law, and risks and expense of continuing litigation, and the factors discussed herein, Class Plaintiffs and Class Counsel believe this Settlement provides a favorable recovery and is in the best interests of the Class. The Settlement was reached after an extensive investigation by Class Counsel; full briefing on motions to dismiss the Consolidated Amended Class Action Complaint and the Third Consolidated Amended Class Action Complaint; comprehensive discovery, including review and analysis of over 140,000 pages of documents and seven depositions, including the depositions of the Class Plaintiffs; contentious class certification motion practice and briefing, including the briefing of Defendants' Petition for Permission to Appeal Class Certification under Federal Rule of Civil Procedure 23(f); consultation with experts; and, months of extensive arm's-length settlement negotiations between highly experienced counsel and an in-person mediation before Robert Meyer, Esq., an experienced mediator.

Moreover, as of April 2, 2019, Class Plaintiffs have not received any objections to the proposed Settlement, and no putative class members have requested

---

[1] Unless otherwise noted, all capitalized terms defined herein shall have the same meanings ascribed to them in the Stipulation (ECF No. 173-1) or the Joint Declaration, filed herewith. Citations to "¶" herein refer to paragraphs in the Joint Declaration.

to be excluded from the proposed Settlement, strongly demonstrating that the Class believes the Settlement is fair, reasonable, and adequate.

For the reasons discussed below, Class Plaintiffs and Class Counsel believe that the proposed Settlement is in the best interests of the Class and is fair, reasonable, and adequate. It satisfies the requirements under Rule 23 of the Federal Rules of Civil Procedure and provides a significant recovery for the Class. Accordingly, Class Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Class Plaintiffs also request that the Court approve the proposed Plan of Allocation of Net Settlement Fund, as set forth in the Notice distributed to the Class in accordance with this Court's Preliminary Approval Order (ECF No. 177). The Plan of Allocation governs how Class Members' claims will be calculated and, ultimately, how money will be distributed to valid claimants. The Plan of Allocation fairly distributes the Net Settlement Fund in accordance with the remaining claims in this litigation, providing each Class Member who files a valid claim a *pro rata* share based upon his or her recognized loss. It is substantively similar to plans that have been approved and used to allocate recoveries in other securities class actions. The Plan of Allocation is fair, reasonable, and adequate and should be approved.

# I.      SUMMARY OF THE LITIGATION

This is a federal securities class action for violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") against Defendants NantKwest, Inc., Patrick Soon-Shiong ("Soon-Shiong"), Richard Gomberg, Barry J. Simon, Steve Gorlin, Michael D. Blaszyck, Henry Ji, Richard Kusserow, John T. John T. Potts, Jr., Robert Rosen, and John C. Thomas Jr., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc., Jefferies LLC, Piper Jaffray & Co., and MLV & Co., LLC (collectively, "Defendants"). ¶¶ 3, 24. Class Plaintiffs allege that Defendants failed to disclose material information in NantKwest's Registration

Statement in connection with its initial public offering of stock, rendering that Registration Statement materially false and misleading.  ¶¶ 24-26.  Specifically, the Registration Statement failed to disclose: (1) that on May 8, 2015 NantKwest had funneled more than $100 million in additional compensation to Soon-Shiong by modifying warrant terms to include a massive so-called "performance milestone" that was already virtually certain to be achieved, and, therefore, NantKwest incurred a similar amount of compensation expense at that time; (2) that effective May 2015 NantKwest had engaged in a related-party facilities lease arrangement ("Related-Party Lease") with NantWorks LLC, a company owned by Soon-Shiong, pursuant to which NantKwest had incurred millions of dollars of liability prior to the time of the IPO; and (3) the full extent of material weaknesses in the Company's internal controls.  ¶ 26.  By omitting this material information, on July 28, 2015, Defendants were able to successfully raise over $225 million in net proceeds in the IPO.  *Id.*

Beginning on March 22, 2016, two actions were filed in the United States District Court for the Central District of California alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"): (1) *Sundunagunta v. NantKwest, Inc.*, No. 16-cv-01947-MWF-JEM; and (2) *Forsythe v. NantKwest, Inc.*, No. 16-cv-03448-MWF-JEM.  ¶ 27.  Four additional actions were filed in California state court and removed to the United States District Court for the Central District of California (the "Removed Actions"): (1) *Wagner v. NantKwest, Inc.*, No. 16-cv-06703-MWF-JEM; (2) *Hare v. NantKwest, Inc.*, No. 16-cv-06697-MWF-JEM; (3) *Wiencek v. NantKwest, Inc.*, No. 16-cv-06705-MWF-JEM; and, (4) *Frye v. NantKwest, Inc.*, 16-cv -06700-MWF-JEM.  ¶ 29.  On June 3, 2016, the Court ordered the two federal actions consolidated, appointing Class Plaintiffs as Lead Plaintiffs, the law firms of Pomerantz LLP and Bragar Eagel & Squire, P.C. as Co-Lead Counsel, and Glancy, Prongay, & Murray LLP as Liaison Counsel.  ¶ 27.

On October 11, 2016, the Court consolidated the four Removed Actions into this Action. ¶ 29.

On August 4, 2016, Class Plaintiffs filed a Consolidated Amended Class Action Complaint based on extensive investigation and analysis of Class Counsel which included, *inter alia*, a review of Defendants' public documents, filings with the U.S. Securities and Exchange Commission ("SEC"), wire and press releases published by, and regarding, NantKwest, and analysts' reports and advisories about the Company. ¶ 30.

Defendants moved to dismiss the Consolidated Amended Class Action Complaint on October 6, 2016, which Class Plaintiffs opposed. ¶ 31. The Court issued an order on May 16, 2017 granting in part and denying in part Defendants' motion to dismiss. *Id.* Class Plaintiffs filed the Second Consolidated Amended Class Action Complaint on June 5, 2017, followed by the Third Consolidated Amended Class Action Complaint on July 10, 2017. ¶¶ 32, 33. On July 31, 2017, Defendants moved to dismiss the Third Consolidated Amended Class Action Complaint, which Class Plaintiffs opposed. ¶ 33. The Court denied Defendants' motion to dismiss in its entirety on September 20, 2017. *Id.*

Following the Court's September 20, 2017 order, the parties engaged in extensive discovery, which included: issuance of interrogatories and requests for production to Defendants and third-parties; responses to interrogatories and requests of production from Defendants; review and analysis of over 140,000 pages of documents from Defendants and third-parties; and the depositions of: (a) NantKwest executive Charles Kim, who played a major role in the Celgene negotiations; (b) John Thomas, Jr., a NantKwest board member and audit committee member; (c) Sean Clayton of Cooley LLP, who led much of the due diligence that the underwriter defendants conducted for the NantKwest IPO; (d) two senior members of the audit

1  team from NantKwest's auditor, Mayer Hoffman McCann, P.C., Jacqueline Dale and

2  Steve Fanuchi; and (e) both Class Plaintiffs.  ¶¶ 34-36.

3         On April 2, 2018, Class Plaintiffs moved to withdraw from the Third

4  Consolidated Amended Class Action Complaint claims brought under the Exchange

5  Act for lack of sufficient evidence of market efficiency necessary to support

6  certification of those claims, and moved for class certification with respect to the

7  remaining claims brought under the Securities Act.  ¶ 37.  On August 13, 2018, the

8  Court entered an Order permitting Class Plaintiffs to withdraw claims brought under

9  the Exchange Act, granting leave to file a fourth amended complaint consisting solely

10  of the remaining Securities Act claims, granting certification of the Class, and

11  appointing Lead Plaintiffs to serve as Class Plaintiffs and their counsel of record to

12  serve as Class Counsel.   ¶ 38.   Class Plaintiffs filed the Fourth Consolidated

13  Amended Class Action Complaint on August 24, 2018.  ¶ 39.

14         On August 27, 2018, Defendants filed with the United States Court of Appeals

15  for the Ninth Circuit a petition for permission to appeal the Court's August 13, 2018

16  Order granting class certification.  *Id.*  The Underwriter Defendants joined in that

17  petition.  *Id.*  Class Plaintiffs filed an Opposition to Defendants petition on September

18  6, 2018.  *Id.*

19  **II.    THE SETTLEMENT**

20         The Parties entered into good faith, arm's-length negotiation after the Court

21  sustained the Third Consolidated Amended Class Action Complaint, and following

22  substantial discovery.  ¶ 40.  On March 14, 2018, the Parties participated in an in-

23  person mediation before Robert Meyer, Esq., an experienced mediator specializing in

24  complex litigation.  ¶ 41.  Counsel for all parties were present at the mediation, as

25  well as counsel for insurers.  *Id.*  The Parties did not reach agreement at this

26  mediation session, but continued to negotiate with Mr. Meyer's assistance.  After

27  several additional rounds of negotiation, Mr. Meyer made a mediator's proposal to all

28

1 Parties on September 7, 2018 recommending the settlement of the Action for $12
2 million.  ¶¶ 41-42.  The Parties accepted the mediator's proposal on September 14,
3 2018, and filed the Joint Notice of Settlement on September 24, 2018.  ECF No. 169.
4 The next day, on September 25, 2018, the Parties executed a binding Memorandum
5 of Understanding ("MOU").  ¶ 42.

6       Subsequently, the Parties negotiated a Stipulation more fully documenting the
7 Settlement, and prepared class notice, summary notice, claim form, and proposed
8 orders for preliminary approval and final approval and entering final judgment.  *Id.*
9 The Parties finalized and executed the Stipulation on October 31, 2018.  ECF No.
10 173-1.

11 **III.    PRELIMINARY APPROVAL AND DISSEMINATION OF NOTICE**

12       On January 9, 2019, the Court issued an Order granting preliminary approval
13 of the proposed Settlement and directing dissemination of notice to Class Members
14 (the "Preliminary Approval Order").  ECF No. 177.  Since the Preliminary Approval
15 Order, the settlement administrator, JND Legal Administration ("JND" or the
16 "Settlement Administrator"), has published notice and disseminated 25,375  copies of
17 the Notice and the Proof of Claim and Release (the "Notice Packet").  *See*,
18 Declaration of Luiggy Segura (the "Segura Decl.") ¶ 11 (attached as Exhibit 1 to the
19 Joint Declaration).   In addition, since January 28, 2019 and January 29, 2019,
20 respectively, the Settlement Administrator has been operating a settlement website as
21 well as a toll-free telephone number with a live operator during regular business
22 hours dedicated to fielding calls and questions from NantKwest shareholders.  Segura
23 Decl. at ¶¶ 13, 14.  The website provides potential Class Members with the pertinent
24 deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object,
25 and submit claims) as well as all pertinent settlement documents (*i.e.*, the Preliminary
26 Approval Order, Notice Packet, and Summary Notice).  *Id.* at ¶ 14.

27

28

1     As of April 2, 2019, JND has not received a single request for exclusion from

2 the Settlement.  Segura Decl. at ¶ 16.

3 **IV.    THE NOTICE TO THE SETTLEMENT CLASS WAS ADEQUATE**

4     The Notice of the proposed Settlement to the Class Members satisfied the

5 requirements of Rules 23(c)(2) and 23(e), as well as requirements under the Private

6 Securities Litigation Reform Act ("PSLRA"), and the Due Process Clause of the

7 United States Constitution.  Due process and Rule 23(c)(2) direct that the notice be

8 "the best notice that is practicable under the circumstances" (Fed. R. Civ. P.

9 23(c)(2)(B)), and Rule 23(e) directs "notice in a reasonable manner" (Fed. R. Civ. P.

10 23(e)(1)).  "[D]ue process requires a reasonable effort to inform affected class

11 members through individual notice, not receipt of individual notice."  *Rannis v.*

12 *Recchia*, 380 Fed. App'x 646, 650 (9th Cir. 2010).  Notice must be "reasonably

13 calculated, under the circumstances, to apprise interested parties of the pendency of

14 the action and afford them an opportunity to present their objections."  *Klee v. Nissan*

15 *N. Am., Inc.*, NO. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88720, at *15-

16 16 (C.D. Cal. Jul. 7, 2015) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

17 U.S. 306, 314 (1950)); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir.

18 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in

19 sufficient detail to alert those with adverse viewpoints to investigate and to come

20 forward and be heard.'") (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d

21 96, 113 (2d Cir. 2005)).

22     Here, the Notice provides the required information as it includes, *inter alia*:

23 (1) the reasons for and material terms of the Settlement; (2) informs Class Members

24 that they may appear through counsel; (3) the time and manner for requesting an

25 exclusion; (4) a statement of recovery; (5) the date, time, and place of the Settlement

26 Hearing; (6) information about the proposed attorneys' fees and costs; and (7) the

27 identity and contact information of the representatives of Class Counsel and

28

1  procedures for making inquiries.  Segura Decl. at Ex. A.  The Notice also includes the

2  proposed Plan of Action and information on how to submit a Proof of Claim.  *Id.*

3       In accordance with the Court's Preliminary Approval Order, as noted above,

4  the Court-approved Settlement Administrator, JND, mailed 4,322 copies of the

5  Notice Packet on January 29, 2019.  Segura Decl. at ¶ 7.  The names and addresses of

6  Class Members were obtained from listings provided to JND by American Stock

7  Transfer, the transfer agent for NantKwest; research of NantKwest filings with the

8  SEC on Form 13-F; JND's proprietary database of names of the most common banks,

9  brokerage firms, nominees, and known third-party filers.  *Id.* at ¶¶ 4-6.  Additional

10  Notice Packets were mailed after JND received notice of potential Class Members

11  from nominees, brokers, and telephone and/or email requests.  *Id.* at ¶¶ 8-11.  As of

12  April 2, 2019, JND has mailed a total of 25,375 Notice Packets to potential Class

13  Members, brokers, and nominees.  *Id.* at ¶ 11.  JND also arranged for the Summary

14  Notice to be published in *PRNewswire* on February 8, 2019 and February 15, 2019.

15  *Id.* at ¶ 12.   In addition, JND established and continues to maintain a toll-free

16  telephone number for Class Members to call and obtain information, as well as a

17  website, www.NantKwestSecuritiesLitigation.com, providing, among other things,

18  copies of the Stipulation and related documents and the date for the Court's

19  Settlement Hearing.  *Id.* at ¶¶ 13, 14.   Similar notice content and dissemination

20  methods have been consistently held to be adequate in the Ninth Circuit.  *See, e.g.,*

21  *Todd v. STARR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS

22  176183, at *4 (C.D. Cal. Oct. 24, 2017) (similar notice dissemination methods); *In re*

23  *NetSol Techs., Inc. Sec. Litig.*, CV 14-5787 PA (PJWx), 2016 U.S. Dist. LEXIS

24  193924, at *29 (C.D. Cal. Jul. 1, 2016) (approving notice as adequate with similar

25  content); *In re Am. Apparel S'holder Litig.*, NO. CV 10-06352 MMM (JCGx), 2014

26  U.S. Dist. LEXIS 184548, at *19-21 (C.D. Cal. Jul. 28, 2014) (similar notice

27  dissemination methods).

28

## V.   THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.   Standard

Under Federal Rule of Civil Procedure 23(e), "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses." As noted by both the Supreme Court and the Ninth Circuit, in determining the fairness of a settlement, courts should "not decide the final merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (the settlement hearing "is not to be turned into a trial or rehearsal for trial on the merits" and the court need not "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in ligation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Synacor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice*, 688 F.2d at 625 ("voluntary conciliation and settlement are the preferred means of dispute resolution"); *Nissan*, 2015 U.S. Dist. LEXIS 88720, at *17-18 (same).

Rule 23(e) of the Federal Rules of Civil Procedure allows courts to approve a proposed class action settlement only if it is fair, reasonable, and adequate.  The Ninth Circuit has directed courts to consider the following factors in making fairness determinations: " the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining a class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; . . . and the reaction of the class members to the proposed settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (quoting *Hanlon v. Chrysler*

1  *Corp.*, 150 F.3d 1101, 1026 (9th Cir. 1998)); *see also In re NetSol Techs.*, 2016 U.S.

2  Dist. LEXIS 193924, at *24.

3       A recent amendment to Rule 23, effective December 1, 2018, added four

4  factors for a court to consider in determining fairness.  These factors include whether:

5  "(A) the class representatives and class counsel have adequately represented the

6  class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the

7  class was adequate, taking into account: (i) the cost, risks, and delay of trial and

8  appeal; (ii) the effectiveness of any proposed method of distributing relief to the

9  class, including the method of processing class-member claims; (iii) the terms of any

10  proposed award of attorney's fees, including timing of payment; and (iv) any

11  agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats

12  class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  Most of

13  these factors are already covered under the Ninth Circuit factors.  *See Hefler v. Wells*

14  *Fargo & Co.*, 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *13-14 (N.D. Cal.

15  Dec. 18, 2018) (applying new factors under Rule 23(e) "while continuing to draw

16  guidance from the Ninth Circuit's factors and relevant precedent").  As noted by the

17  *Hefler* court, "[t]he Court bears in mind . . . the Advisory Committee's instruction not

18  to let '[t]he sheer number of factors . . . distract both the court and the parties from

19  the central concerns that bear on review under Rule 23(e)(2).'"  *Id.* at *14 (quoting

20  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

21       "It is the settlement taken as a whole, rather than the individual component

22  parts, that must be examined for overall fairness. . . .  The settlement must stand or

23  fall in its entirety."  *Hanlon*, 150 F.3d at 1026 (citing *Officers for Justice*, 688 F.2d at

24  628, 630).  "[T]he court's intrusion upon what is otherwise a private consensual

25  agreement negotiated between the parties to a lawsuit must be limited to the extent

26  necessary to reach a reasoned judgment that the agreement is not the product of fraud

27  or overreaching by, or collusion between, the negotiating parties, and that the

28

1  settlement, taken as a whole, is fair, reasonable and adequate to all concerned."
2  *Officers of Justice*, 688 F.2d at 625.

3      In light of the considerations discussed herein, Class Plaintiffs and Class
4  Counsel submit that the Settlement is fair, reasonable, and adequate, satisfies the
5  standards of Rule 23, and provides a significant recovery for the Class.   Class
6  Plaintiffs accordingly respectfully request that the Court grant final approval of the
7  Settlement and deem the Plan of Allocation, set forth in the mailed Notice, to be a fair
8  and reasonable method for distributing the Net Settlement Fund to eligible Class
9  Members.

10  **B.      The Settlement Meets the Ninth Circuit Standards for Approval and**
11           **the Factors Enumerated in Rule 23(e)(2)**

12           **1.      The Settlement Process Was Procedurally Fair**

13                    **a.      Adequate Representation of the Class**

14      Class Plaintiffs and Class Counsel have already been determined to be
15  adequate representatives of the Class.   *See* ECF No. 160 at 12-13.   They have
16  zealously pursued the Class's interest throughout this litigation.   Prior to settlement
17  negotiations, Class Plaintiffs and Class Counsel conducted an extensive review of all
18  relevant public filings and other publicly-available information for NantKwest;
19  prepared the Consolidated Amended Class Action Complaint, the Second
20  Consolidated Amended Class Action Complaint, and the Third Consolidated
21  Amended Class Action Complaint; briefed Defendants' motions to dismiss the
22  Consolidated Amended Class Action Complaint and the Third Consolidated
23  Amended Class Action Complaint; consulted with experts; and conducted substantial
24  discovery, including reviewing documents produced by Defendants and third parties,
25  and taking or defending depositions.   *See* Section I.; *see also* ¶¶ 5, 30-42.   Thus, Class
26  Plaintiffs and Class Counsel were sufficiently informed of the case's strengths and
27  weaknesses, enabling them to appropriately evaluate the proposed Settlement's

28

fairness, reasonableness, and adequacy. *See In re Mego Fin. Corp.*, 213 F. 3d at 459 (noting that even though "extensive formal discovery" was not completed, counsel had "sufficient information to make an informed decision").

Furthermore, the interests of the Class Plaintiffs are not in conflict with those of the Class. Class Plaintiffs and the Class Members all purchased shares of NantKwest securities based on the same materially false and misleading statements or omissions made by Defendants, were damaged as a result, and have an interest in obtaining the largest recovery possible. *See In re Symbol Techs., Inc. Sec. Litig.*, 05-CV-3923 (DRH) (AKT), 2015 U.S. Dist. LEXIS 82756, at *19 (E.D.N.Y. June 25, 2015) ("where, as here, the alleged frauds 'are brought under the same causes of action' and 'where [the] frauds resulted from misinformation disseminated in financial statements, the Court does not find a class conflict'") (citation omitted).

### b.    Arm's-Length Negotiations

The Settlement is the result of vigorously-disputed arm's-length negotiations that took place over several months between parties knowledgeable about the facts and risks of this litigation. The negotiations began with a mediation before an experienced mediator, Robert Meyer, Esq., which included an exchange of detailed mediation statements. ¶¶ 5, 40. After an in-person mediation session was not successful, the Parties engaged in several rounds of additional telephonic and written discussions with the assistance of the mediator. ¶¶ 40-41. Following the acceptance of the mediator's proposal, the Parties negotiated an MOU, then ultimately, the Stipulation.

Courts in the Ninth Circuit recognize that settlements reached after arm's-length negotiations between experienced counsel, with the help of an experienced mediator, are afforded a presumption of fairness. *See City of San Diego v. Nat'l Steel & Shipbuilding Co.*, NO. 09cv2275 WQH (BGS), 2015 U.S. Dist. LEXIS 53078, at *35 (S.D. Cal. Apr. 21, 2015) ("a presumption of fairness arises where" a settlement

1    involves experienced counsel, was reached through arm's length negotiations, and

2    "investigation and discovery are sufficient") (citation omitted); *Roberti v. OSI Sys.,*

3    *Inc.*, CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312, at *9 (C.D. Cal.

4    Dec. 8, 2015) ("The involvement of experienced class action counsel and the fact

5    that the settlement agreement was reached in arm's length negotiations, after relevant

6    discovery had taken place create a presumption that the agreement is fair.")

7    (quotation omitted).  Here, Class Counsel are nationally-recognized law firms

8    experienced in securities litigation and class actions.  *See* Section V.B.2.e.; ¶¶ 58-59,

9    71.  Settling Defendants are also represented by prominent, experienced law firms.

10   ¶¶ 59, 73.

11        In addition, "[t]he assistance of an experienced mediator in the settlement

12   process confirms the settlement is non-collusive."  *OSI Sys., Inc.*, 2015 U.S. Dist.

13   LEXIS 164312, at *10 (quotation omitted); *see also* ECF No. 177 at 7 ("The fact that

14   the parties utilized an experienced mediator to reach the settlement agreement

15   supports the notion that it was the product of arms-length negotiation.").

16   Accordingly, the Court's preliminary finding that the Class "is represented by

17   experienced counsel who engaged in meaningful discovery and motion practice while

18   pursuing arms-length settlement negotiations" is correct.

19              **2.      The Settlement Is Substantively Fair**

20                   **a.      Strength of Class Plaintiffs' Case and the Risks and**

21                            **Costs of Continuing Litigation**

22        In evaluating a proposed class action settlement, courts consider the "strength

23   of plaintiffs' case" and risks of further litigation.  *In re Mego Fin Corp.*, 213 F.3d at

24   458.  "This factor is generally satisfied when plaintiffs must overcome barriers to

25   make their case."  *Salazar v. Midwest Servicing Grp., Inc.*, CV 17-0137 PSG (KSx),

26   2018 U.S. Dist. LEXIS 172934, at *6 (C.D. Cal. Oct. 2, 2018) (citation omitted).

27        Based on their extensive investigation, record, and substantial discovery, Class

28

1   Plaintiffs and Class Counsel believe all the asserted claims have merit.  However,
2   they recognize that continued litigation would expose the Class to the risk of no
3   recovery or a much lower recovery and would be expensive, complex, and protracted.
4   *See, e.g.*, *In re NetSol Techs.*, 2016 U.S. Dist. LEXIS 193924, at *25 (C.D. Cal. Jul.
5   1, 2016) ("Courts routinely recognize that securities class actions present hurdles to
6   proving liability that are difficult for plaintiffs to clear.") (citation omitted); *Schaffer*
7   *v. Litton Loan Servicing, LP*, No. CV 05-07673 MMM (JCx), 2012 U.S. Dist. LEXIS
8   189830, at *39 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair
9   settlement figure are tempered by factors such as the risk of losing at trial, the
10  expense of litigating the case, and the expected delay in recovery (often measured in
11  years).").

12      Although Defendants' motion to dismiss the Third Consolidated Amended
13  Class Action Complaint was denied, Class Plaintiffs would still be required to prove
14  that the alleged omissions were materially misleading.  Class Plaintiffs acknowledge
15  that "[t]he propriety and materiality of alleged accounting manipulations that form
16  the basis of this lawsuit could be subject to differing interpretations by relevant
17  experts and would present difficult issues for the finder of fact." *In re Wireless*
18  *Facilities, Inc. Secs. Litig. II*, 07-cv-482 NLS, 2008 U.S. Dist. LEXIS 128674, at *12
19  (S.D. Cal. Dec. 19, 2008).  Further, Class Plaintiffs acknowledge that a reasonable
20  jury may not find in their favor with respect to the liability of the Underwriter
21  Defendants.  ¶ 61.  Class Plaintiffs and Class Counsel would be required to expend
22  significant time and expense in preparing the case for trial in light of these issues,
23  including possible summary judgment motion briefing.  ¶¶ 60-62.

24      Likewise, damages would be disputed and Defendants would most likely argue
25  negative causation, a statutory defense to claims under Section 11 of the Securities
26  Act, possibly limiting recovery to the Class.  ¶ 62; *see Brown v. China Integrated*
27  *Energy Inc.*, CV 11-02559 BRO (PLAx), 2015 U.S. Dist. LEXIS 186792, at *17

28

---

MPA ISO PLANTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT
AND PLAN OF ALLOCATION   Case No. 16-cv-01947-MWF (JEMx)          14

1  (C.D. Cal. Aug. 19, 2015) (defendant "would argue, based on expert testimony, that
2  any losses suffered by Plaintiffs were caused by external factors unrelated to
3  [defendant's] alleged misrepresentations or omissions").  In such "battles of the
4  experts," it is "virtually impossible to predict with any certainty which testimony
5  would be credited, and ultimately, which damages would be found to have been
6  caused by actionable, rather than the myriad nonactionable factors such as general
7  market conditions." *In re Warner Comm. Sec. Litig.*, 187 F.R.D. 465, 477 (S.D.N.Y.
8  1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986); *see also In re Celera Corp. Sec. Litig.*, No.
9  5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408, at *17 (N.D. Cal. Nov. 20,
10  2015) (considering risk of "battle of the experts" in granting final settlement
11  approval).

12                 **b.**     **The Risks of Maintaining a Class Action Through Trial**

13        At the time Settlement was reached, Defendants' interlocutory appeal of this
14  Court's class certification order pursuant to Federal Rule of Civil Procedure 23(f) was
15  pending before the United States Court of Appeals for the Ninth Circuit.  ¶ 39.  While
16  Class Plaintiffs and Class Counsel believe they would prevail on this petition and/or
17  an appeal if allowed, they recognize the risk that an unsuccessful ruling from the
18  Ninth Circuit could result in decertification of all or part of the Class.

19        Further, an "order that grants or denies class certification may be altered or
20  amended before the final judgment" under Federal Rule of Civil Procedure
21  23(c)(1)(C).  Accordingly, the risks and uncertainty with respect to continuing class
22  action status supports approval of the Settlement.  *See Beaver v Tarsadia Hotels*, 11-
23  cv-01842-GPC-KSC, 2017 U.S. Dist. LEXIS 160214, at *14 (S.D. Cal. Sept. 28,
24  2017) ("The value of a class action 'depends largely on the certification of the class,'
25  and . . . class certification undeniably represents a serious risk for plaintiffs in any
26  class action lawsuit.") (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392
27  (C.D. Cal. 2007)); *Nextel Retail Stores*, 2010 U.S. Dist. LEXIS 43377 at *46.

28

### c.    The Amount Offered in the Settlement

"As the Ninth Circuit has noted, 'it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.  The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators.'  Rather, 'the very essence of a settlement is a compromise, a yielding of absolutes and an abandoning of highest hopes.'"  *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*, 295 F.RD. 438, 453 (C.D. Cal. 2014) (quoting *Officers for Justice*, 688 F.2d at 624-25) (alteration and emphasis in original).  Further, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice*, 688 F.2d at 628.

To assess the adequacy of a recovery, courts generally compare the settlement amount with "estimates of the maximum amount of damages recoverable in a successful litigation" while also considering the risks and uncertainties of the case.  *In re Mego Fin. Corp.*, 213 F.3d at 459; *In re Toys "R" Us*, 295 F.R.D. at 453 ("Estimates of a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)").

Here, in consultation with their experts, Class Plaintiffs estimate that if they prevailed on all of their claims based upon the class as currently constituted, the maximum recovery would be $114.6 million, assuming that the entirety of the stock price decline could be attributable to Defendants' misrepresentations and omissions (and could be considerably less if Defendants prevailed on their negative causation defense).  ¶¶ 7, 63.  Further, Class Plaintiffs estimate that if Defendants prevailed on their petition for interlocutory appeal under Rule 23(f), and the class was restricted to exclude purchasers after August 7, 2016, the maximum recovery would be $39.4

1    million.  *Id.*

2           As this Court preliminarily determined, this recovery of between 10.5% and

3    30.5% of the possible maximum damages "is a reasonable level of compensation."

4    ECF No. 177 at 8.  Even the lower recovery estimate of 10.5% exceeds the annual

5    median securities class action settlement for each year between 2007 and 2016 which

6    ranged between 1.8% and 2.8% of estimated damages[2], and the median settlement of

7    8.0% of statutory damages for Section 11 and/or 12(a)(2) only cases for 2018.[3]

8    Courts have routinely approved settlements with similar or lower percentage

9    recoveries.  *See, e.g.*, *In re Biolase, Inc. Sec, Litig.*, No. SACV 13-1300-JLS (FFMx),

10   2015 U.S. Dist. LEXIS 189232, at *22-23 (C.D. Cal. June 5, 2015) (finding recovery

11   of 8% of maximum recoverable damages a "substantial benefit to the class" noting it

12   "equals or surpasses the recovery in many other securities class actions" and

13   collecting cases); *In re Cendant Corp. Litig.*, 264 F.3d 201, 240 (3d Cir. 2001)

14   (typical recoveries for securities class actions range from 1.6% to 14% of total

15   losses).  And, as discussed below, no Class member has objected to the sufficiency of

16   the settlement amount.  Accordingly, the amount of the Settlement weighs in favor of

17   final approval.

                    **d.    The Extent of Discovery Completed and the Stage of the
                            Proceedings**

18
19          The stage of the proceedings and extent of discovery completed supports final

20   approval of the settlement.  The purpose of this consideration is to ensure that "the

21   parties [had] sufficient information to make an informed decision about settlement."

22   *Nissan*, 2015 U.S. Dist. LEXIS 88270, at *25 (quoting *Linney*, 151 F.3d at 1239).

23   "The more discovery that has been completed, the more likely it is that the parties

24

25
   ─────────────────────────

26   [2]  *See* http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf.

27   [3]  *See* Laarni T. Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2018 Review and Analysis*, at 7 (2019), available at available at

28   https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.
   ─────────────────────────

have 'a clear view of the strengths and weaknesses of their cases.'" *Midwest Servicing Grp.*, 2018 U.S. Dist. LEXIS 172934, at *11 (quoting *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2007 U.S. Dist. LEXIS 27269, at *12 (N.D. Cal. Mar. 28, 2007)); *In re Am. Apparel*, 2014 U.S. Dist. LEXIS 184548 at *41 (same); *DIRECTV*, 221 F.R.D. at 527 (similar).

Here, litigation had been ongoing for over two years prior to settlement during which Class Plaintiffs, *inter alia*: (1) conducted a detailed investigation of the claims, including a review of all relevant public filings and publicly-available information and a private investigation involving interviews with confidential witnesses; (2) extensive motion practice, successfully opposing Defendants' Motion to Dismiss the Third Consolidated Amended Class Action Complaint and partially succeeding in opposing Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint; (3) successfully briefing the Motion for Class Certification; (4) extensive discussions and conferences with defense counsel and third parties as to the scope of discovery requests; (5) review and analysis of over 140,000 pages of documents produced by Defendants and third parties; (6) preparing for and taking and/or defending seven depositions; (7) consulting with retained experts regarding damages and loss causation; (8) motion practice successfully obtaining class certification; (9) briefing opposition to Defendants' petition for interlocutory appeal of the class certification order; and (10) preparing Class Plaintiffs' mediation statement and analyzing Defendants' mediation statement and damages analyses. ¶¶ 5, 30-40. Accordingly, Class Plaintiffs' had a clear view of the strengths and weaknesses of their claims and the benefits of the proposed Settlement.

### e.   The Experience and Views of Counsel

The informed recommendations of experienced counsel "are given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In re First Capital Holdings Corp. Fin. Prods. Sec.*

*Litig.*, No. 901, 1992 U.S. Dist. LEXIS 14337, at *8 (C.D. Cal. June 10, 1992). "This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.'" *DIRECTV*, 221 F.R.D. at 528 (quoting *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). As set forth above, Class Counsel had a thorough understanding of the strengths and weaknesses of the case prior to settlement negotiations, and the arm's-length negotiations were supervised by an experienced mediator. *See* Section V.B.1.b.; ¶¶ 5-6, 30-45, 58-59. That experienced counsel specializing in securities class action litigations view the Settlement to be fair, reasonable, adequate, and in the best interests of the Settlement Class weighs in favor of approval.

### f.   The Reaction of Class Members

The overwhelming support of Class Members strongly evidences that the Settlement is fair, reasonable, and adequate. Pursuant to the Preliminary Approval Order, Court-appointed Settlement Administrator JND disseminated 25,375 Notice Packets to potential Class Members, brokers, and nominees through April 2, 2019. Segura Decl. at ¶ 11. JND also published the Summary Notice in on *PrNewswire*; established and continues to maintain a toll-free telephone number for Class Members; and established and currently maintains a website dedicated to the Settlement. *Id.* at ¶¶ 12-14. Although the opt-out/exclusion deadline has not yet passed, as of April 2, 2019, ***no Class Member has opted out of the Settlement or objected to any aspect of the Settlement***. *Id.* at ¶¶ 16, 18.[4] "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529; *see also Hanlon*, 150 F.3d at 1027

---

[4] The opt-out/exclusion deadline is April 15, 2019. If any Class Member opts out or seeks exclusion prior to that deadline, Class Plaintiffs will advise the Court.

("the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some positive commentary as to its fairness"); *In re Skilled Healthcare Group, Inc.*, No. 09-5416, 2011 U.S. Dist. LEXIS 10139, at *11 (C.D. Cal. Jan. 26, 2011)

### 3.   The Relief Provided for the Class is Adequate and Treats Class Members Equitably

Rule 23(e), as amended, lists four factors for courts to consider in determining whether the relief provided for the class is adequate: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  The proposed Settlement satisfies each of these factors and is therefore adequate.

The first two factors are thoroughly addressed elsewhere in this memorandum. Sections V.B.2.a. and V.B.2.b. address the potential costs, risks and delay of trial and appeal.  Section IV. describes the extensive plan of notice implemented in this case, which this Court preliminarily determined to be appropriate.  *See* ECF No. 177. Additionally, as discussed in Section VI. below, the Plan of Allocation treats all Class Members equitably.

The proposed fee award is discussed in the accompanying Motion for Attorneys' Fees, which demonstrates that Class Counsel's request for a benchmark 25% is fair and reasonable. Finally, with respect to the identification of agreements pursuant to Rule 23(e)(3), the Stipulation noted that the parties have entered into a Supplemental Agreement, as is the standard practice in securities fraud class action settlements.  *See* Stipulation at Section X.H.  The Supplemental Agreement provides Defendants with the option to terminate the Settlement if a certain percentage of damaged NantKwest securities request exclusion from the Settlement Class.  *Id.*  To protect the Class, the Supplemental Agreement is confidential.  *See In re Online*

1   *DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015); *Hefler v. Wells Fargo*

2   *& Co.*, No. 16-civ-05479 (JST), 2018 U.S. Dist. LEXIS 150292, at *23 (N.D. Cal.

3   Sept. 4, 2018) (approving confidentiality of opt-out termination agreement to "'avoid

4   the risk that one or more shareholders might use this knowledge to insist on a higher

5   payout for themselves by threatening to break up the Settlement'") (citation omitted);

6   *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-civ-01160, 2017 U.S. Dist.

7   LEXIS 174353, at *16 (N.D. Cal. Oct. 20, 2017) (same).

8   **VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

9       Class Plaintiffs also seek final approval of the Plan of Allocation described in

10  Class Notice.  *See* Segura Decl. at Ex. A, at 4-6.  A plan of allocation should be

11  approved where it is "fair, reasonable, and adequate."  *Class Plaintiffs v. City of*

12  *Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992)); *see also Omnivision.*, 559 F. Supp.

13  2d at 1045.  A plan of allocation "need only have a reasonable, rational basis,

14  particularly if recommended by experienced and competent counsel." *Heritage*, 2005

15  U.S. Dist. LEXIS 13555, at *38.  "A plan of allocation that reimburses class members

16  based on the extent of their injuries is generally reasonable . . . . It is also reasonable

17  to allocate more of the settlement to class members with stronger claims on the

18  merits." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1

19  (N.D. Cal. June 18, 1994); *Omnivision*, 559 F. Supp. 2d at 1045 ("It is reasonable to

20  allocate the settlement funds to class members based on the extent of their injuries or

21  the strength of their claims on the merits.").

22      The Plan of Allocation here meets this standard.  Class Counsel developed the

23  Plan of Allocation in consultation with an independent expert with the goal of

24  distributing the Net Settlement Fund to eligible Class Members in a fair and

25  reasonable manner.  ¶¶ 9, 66.  Specifically, the Plan of Allocation calculates a

26  "Recognized Loss" amount for each Class Member which depends on several factors,

27  including when the stock was sold and the purchase and sale prices.  ¶ 67.  The Net

28

---

1 | Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on
2 | the relative size of their Recognized Claims. *Id.*

3 |      Class Plaintiffs and Class Counsel believe that the proposed Plan of Allocation
4 | will result in a fair and equitable distribution of the Settlement proceeds among Class
5 | Members who suffered losses as a result of the conduct alleged in the Action similar
6 | to any result if Plaintiffs were successful at trial. ¶ 66. Moreover, as of April 2,
7 | 2019, after 25,375 copies of the Notice containing the Plan of Allocation and
8 | advising Class Members of their right to object to the Plan of Allocation if they wish
9 | to do so were mailed to potential Class Members, no objections have been received.
10 | Segura Decl. at ¶¶ 11, 16, 18. For all of these reasons, Class Plaintiffs respectfully
11 | request that the Court approve the proposed Plan of Allocation.

12 | **VII. CONCLUSION**

13 |      Based on the foregoing reasons, Class Plaintiffs respectfully request that the
14 | Court grant final approval of the Settlement and Plan of Allocation, and enter the
15 | [Proposed] Judgment and Order Granting Final Approval of Class Action
16 | Settlement filed herewith (the form of which is attached as Exhibit C to the
17 | Stipulation), and the proposed Order approving the Plan of Allocation, submitted
18 | herewith.

19 | Dated: April 8, 2019                          **GLANCY PRONGAY &**
20 |                                      **MURRAY LLP**

21 |                          By: */s/ Kara M. Wolke*
22 |                          Robert V. Prongay
                           Kara M. Wolke
23 |                          1925 Century Park East, Suite 2100
24 |                          Los Angeles, California 90067
                           Telephone: (310) 201-9150
25 |                          E-mail: rprongay@glancylaw.com
26 |                                kwolke@glancylaw.com

27 |                          *Liaison Counsel for Class Plaintiffs*
28 |

1

2       **POMERANTZ LLP**
        Jennifer Pafiti (SBN 282790)
3       468 North Camden Drive
        Beverly Hills, CA 90210
4       Telephone:  (818) 532-6449
        E-mail: jpafiti@pomlaw.com
5

6       Patrick V. Dahlstrom
        Joshua B. Silverman
7       Omar Jafri
        Ten South La Salle Street, Suite 3505
8       Chicago, Illinois 60603
        Telephone:  (312) 377-1181
9       E-mail: pdahlstrom@pomlaw.com
                jbsilverman@pomlaw.com
10              ojafri@pomlaw.com
11

12      **BRAGAR EAGEL &**
          **SQUIRE P.C.**
13      David J. Stone (SBN 208961)
        Marion Passmore (SBN 228474)
14      Melissa A. Fortunato (SBN 319767)
        885 Third Avenue, Suite 3040
15      New York, New York 10022
        Telephone: (212) 308-5858
16      Email:  stone@bespc.com
                passmore@bespc.com
17              fortunato@bespc.com
18
        *Co-Lead Counsel for Class Plaintiffs*
19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY ELECTRONIC POSTING

2        I, the undersigned say:

3        I am not a party to the above case, and am over eighteen years old.  On April

4    8, 2019, I served true and correct copies of the foregoing document, by posting the

5    document electronically to the ECF website of the United States District Court for

6    the Central District of California, for receipt electronically by the parties listed on

7    the Court's Service List.

8        I affirm under penalty of perjury under the laws of the United States of

9    America that the foregoing is true and correct.  Executed on this April 8, 2019, at

10   Los Angeles, California.

11

12                              */s/ Kara M. Wolke*

13                              Kara M. Wolke

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28