Robert V. Prongay (SBN 270796)
Kara M. Wolke (SBN 241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: kwolke@glancylaw.com

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

[Additional Counsel on Signature Page]
*Attorneys for Class Plaintiffs*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SUDUNAGUNTA, Individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>NANTKWEST, INC., PATRICK SOON-SHIONG, RICHARD GOMBERG, BARRY J. SIMON, STEVE GORLIN, MICHAEL D. BLASZYK, HENRY JI, RICHARD KUSSEROW, JOHN T. POTTS, JR., ROBERT ROSEN, JOHN C. THOMAS JR., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., JEFFERIES LLC, PIPER JAFFRAY & CO., and MLV & CO., LLC.,<br><br>            Defendants. | Case No. 16-cv-01947-MWF-JEM<br><br>Consolidated with 2:16-cv-3438-MWF-JFM<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION  FOR (i) AWARD OF ATTORNEYS' FEES, (ii) REIMBURSEMENT OF LITIGATION EXPENSES, AND (iii) PLAINTIFFS' AWARDS**<br><br>Date:      April 29, 2019<br>Time:     10:00 a.m.<br>Before:   Hon. Michael Fitzgerald<br>Courtroom:  5A |

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................. 1

II.     THE PERCENTAGE OF FUND APPROACH IS APPROPRIATE
        FOR AWARDING ATTORNEYS' FEES ......................................... 3

        A. The Guiding Principle For Fee Awards .......................................... 3

        B. The Percentage-of-the-Fund Approach .......................................... 3

        C. The Ninth Circuit Benchmark Award is 25% .................................. 4

III.    THE 25% BENCHMARK AWARD IS REASONABLE IN THIS
        CASE .................................................................................................. 5

        A. The Reasonableness Factors ......................................................... 5

        B. Class Counsel Achieved an Excellent Result for the Class ............ 6

        C. The Risks of Further Litigation ..................................................... 7

        D. The Skill Required and the Quality and Efficiency of Counsel's
           Work ............................................................................................. 8

        E. The Contingent Nature of the Case and Financial Burden
           Carried by Class Counsel .............................................................. 9

        F. The Customary Fee ...................................................................... 10

        G. A Lodestar Cross-Check Confirms the Reasonableness of the
           Fee Request ................................................................................. 11

        H. The Reaction of the Class Supports the Fee Award ..................... 11

IV.     CLASS COUNSEL'S EXPENSES WERE REASONABLE AND
        NECESSARY AND SHOULD BE REIMBURSED ....................... 12

V.      THE AWARD TO CLASS PLAINTIFFS SHOULD BE
        APPROVED ...................................................................................... 14

VI.     CONCLUSION .................................................................................. 15

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' AWARDS                                                    i

1

## <u>TABLE OF AUTHORITIES</u>

2

3

*Blum v. Stenson*, 465 U.S. 886 (1984)................................................................. 10

*Buccellato v. AT&T Operations, Inc.*,
No. 10-0463-LHK, 2011 U.S. Dist. LEXIS 85699
(N.D. Cal. Jun. 30, 2011)....................................................................... 15

*Destefano v. Zynga, Inc.*,
No. 12-4007, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016)....... 8, 13

*Fischel v. Equitable Life Assur.*,
307 F.3d 997 (9th Cir. 2002) ............................................................... 11

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)............................................................................ 6

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)................................................. 3, 4

*In re Amgen Sec. Litig.*,
CV 7-2536 PSG (PLAx),
2016 U.S. Dist. LEXIS 148577 (C.D. Cal. Oct. 25, 2016) ...................... 10

*In re Anthem, Inc. Data Breach Litig.*,
15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137
(N.D. Cal. Aug. 17, 2018) ..................................................................... 4

*In re Ashanti Goldfields Sec. Litig.*,
No. 00-717, 2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005) ............13

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ................................................................. 4

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ............................................................... 3

*In re CV Therapeutics, Inc. Sec. Litig.*,
No. C 03-3709 SI, 2007,
U.S. Dist. LEXIS 98244 (N.D. Cal. Apr. 4, 2007)........................................... 15

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' AWARDS

ii

*In re dj Orthopedics, Inc. Secs. Litig.*,
No. 01-2238, 2004 U.S. Dist. LEXIS 11457, (S.D. Cal. Jun. 22, 2004).......... 14

*In re Heritage Bond Litig.*,
No. 02-1475, 2005 U.S. Dist. LEXIS 13627 (C.D. Cal. Jun. 10, 2005) ...........12

*In re Hewlett-Packard Co. Sec. Litig.*,
CV 11-1404 AG (RNBx),
2014 U.S. Dist. LEXIS 190313 (C.D. Cal. Sep. 15, 2014) .............................. 10

*In re M.D.C. Holdings Sec. Litig.*,
No. CV 89-0090 E, 1990 U.S. Dist. LEXIS 15488 (S.D. Cal. 1990) ............... 10

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)...................................................... 8

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................. 5

*In re Quintus Sec. Litig.*,
No. C-00-4263 VRW, 2006 WL 3507936 (N.D. Cal. Dec. 5, 2006)............... 15

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................... 4

*In re Veritas Software Corp. Sec. Litig.*,
396 Fed. App'x 815 (3d Cir. 2010) .......................................................... .14-15

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .............................................................3, 7, 9

*In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................... 15

*Kerr v. Screen Actors Guild*,
526 F.2d 67 (9th Cir. 1975) ..................................................................5

*Morris v. Lifescan, Inc.*,
54 Fed. App. 663 (9th Cir. 2003) ........................................................... 5

*Norris v. Mazzola*,
No. 15-4962, 2017 U.S. Dist. LEXIS 208610
(N.D. Cal. Dec. 19, 2017) ................................................................... 8

*Nguyen v. Radient Pharms. Corp.*,
SACV 11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312
(C.D. Cal. May 6, 2014) ............................................................... 4, 10

*Patel v. Axesstel, Inc.*,
No. 14-1037, 2015 U.S. Dist. LEXIS 146949 (S.D. Cal. Oct. 23, 2015) ........... 4

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ............................................................ 3

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) .......................................................... 5

*Thornberry v. Delta Air Lines*,
676 F.2d 1240 (9th Cir. 1982) ........................................................ 14

*Todd v. STAAR Surgical Co.*,
CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183
(C.D. Cal. Oct. 24, 2017) ........................................................ 5, 10, 15

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370, 1376 (9th Cir. 1993) ................................................ 3, 4

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) .............................................. 5, 10, 11

**Other**

*Economic Analysis of Law*, §21.9 (3d ed.1986) ................................. 9

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' AWARDS                                          iv

Lead Plaintiffs and Class Representatives Donald Hu and Brayton Li ("Class Plaintiffs"), through their counsel, move for an order:

(1)     awarding attorneys' fees of 25% of the Gross Settlement Fund;

(2)     granting reimbursement of $177,408.07 in litigation expenses; and

(3)     awarding Class Plaintiffs $7,500 each.

# I.     INTRODUCTION

Class Counsel achieved a $12 million cash settlement against Defendants NantKwest, Inc. ("NantKwest"), Patrick Soon-Shiong ("Soon-Shiong"), Richard Gomberg, Barry J. Simon, Steve Gorlin, Michael D. Blaszyk, Henry Ji, Richard Kusserow, John T. Potts Jr., Robert Rosen, John C. Thomas Jr., Merrill Lynch Pierce Fenner & Smith, Inc., Citigroup Global Markets Inc., Jefferies LLC, Piper Jaffray & Co., and MLV & Co., LLC.  Class Counsel[1] request that the Court award them 25% of the gross settlement fund, consistent with the Ninth Circuit benchmark.

By any measure, the Settlement is a good result for the Class, avoiding the considerable risks of summary judgment, trial, and appeal.   The Settlement Amount represents between 10.5% and 30.5% of Class Plaintiffs' estimate of likely recoverable damages, well above average for securities fraud class actions.

The reaction of the Class strongly supports the requested fees and expenses. Pursuant to the Preliminary Approval Order [ECF No. 177], the Settlement Administrator has mailed 25,375 notice forms to Class Members.  *See* Segura Decl. ¶ 11 (attached as Ex. 1 to the Joint Decl.).  The Notice expressly informed Class Members that Class Counsel intended to apply for an award of attorneys'

---

[1]  Unless otherwise noted, all capitalized terms defined herein shall have the same meanings ascribed to them in the Stipulation of Settlement (ECF No. 173-1) or the Joint Declaration of Joshua B. Silverman and David J. Stone (the "Joint Declaration" or "Joint Decl."), filed herewith.

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                                    1

fees of up to 25% of the Settlement Amount, an award to Class Plaintiffs not to exceed $7,500 each, and that Class Counsel would seek reimbursement of their out-of-pocket expenses not to exceed $250,000. To date, in response to the Notice, neither Class Counsel nor the Settlement Administrator have received any objections to the proposed fees and expenses or to Class Plaintiffs' proposed reimbursement awards. Nor have Class Counsel or the Settlement Administrator received any objection to or request to opt-out of the Settlement. Joint Decl. at ¶¶ 54-56; *see also* Segura Decl. ¶¶ 16, 17. The deadline to file objections and to request exclusion to the Settlement is April 15, 2019—one week after the filing of this motion.

A lodestar cross-check further confirms the fairness and reasonableness of Class Counsel's fee request. Class Counsel spent a total of approximately 5,033.15 hours of professional time having a market value of approximately $3,123,720 in prosecuting the claims in this litigation. Joint Decl. at ¶¶ 80-81. The requested 25% award will result in a lodestar multiplier of approximately 0.96, which is on the low end of the range of reasonable multipliers that courts in the Ninth Circuit routinely award.

In addition, the litigation expenses for which Class Counsel requests reimbursement are reasonable and relate to expenses routinely incurred and reimbursed. Moreover, the requested compensatory awards to each of the two Class Plaintiffs are reasonable to reimburse them for the considerable time spent and service that each provided the Class.

For these reasons, and as further set forth below, Class Counsel and Class Plaintiffs respectfully submit that the Court award attorneys' fees of 25% of the Gross Settlement Fund, reimbursement of their litigation expenses in the amount of $177,408.07, and an award of $7,500 each to the two Class Plaintiffs.

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                    2

## II.   THE PERCENTAGE OF FUND APPROACH IS APPROPRIATE FOR AWARDING ATTORNEYS' FEES

### A.   The Guiding Principle For Fee Awards

A "lawyer who creates a common fund" is entitled to fees from "those upon whom he has conferred a benefit." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  The guiding principle for determining the amount of a fee award in a common-fund case is that the fee should be "reasonable under the circumstances." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir. 1994) ("WPPSS") (citation omitted).

### B.   The Percentage-of-the-Fund Approach

The Ninth Circuit approves of the use of the percentage-of-the-fund method for awarding fees in common fund cases.  *Paul, Johnson*, 886 F.2d 268; *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  And, district courts in this Circuit have almost uniformly shifted to the percentage-of-the-fund method in awarding fees in class actions for the following reasons:

First, the percentage-of-the-fund method is consistent with practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.  *In re Activision Sec. Litig.*, 723 F. Supp. 1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

Second, the percentage-of-the-fund method more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the

circumstances.  *See In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *84 (N.D. Cal. Aug. 17, 2018) ("By tying the award to the recovery of the Class, Class Counsel's interests are aligned with the Class, and Class Counsel are incentivized to achieve the best possible result.") (citing 5 Newberg on Class Actions § 15:65 (5th ed. 2018)).

Third, the percentage-of-the-fund method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement.  *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79; *see also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

Fourth, the percentage-of-the-fund approach is consistent with the plain text of the Private Securities Litigation Act of 1995 ("PSLRA"), which provides that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class.  15 U.S.C. § 78u-4(a)(6); s*ee also Nguyen v. Radient Pharms. Corp.*, SACV 11-00406 DOC(MLGx), 2014 U.S. Dist. LEXIS 63312, at *24 (C.D. Cal. May 6, 2014); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

## C.  The Ninth Circuit Benchmark Award is 25%

In the Ninth Circuit, "25% of the common fund [is] the 'benchmark' award for attorney fees."  *Torrisi*, 8 F.3d at 1376.  District courts in the Ninth Circuit award percentages even higher than the 25% benchmark.  *See, e.g.*, *Patel v. Axesstel, Inc.*, No. 14-1037, 2015 U.S. Dist. LEXIS 146949, *21 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities-fraud class action based on "the

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                              4

complexity of securities litigation, the lodestar crosscheck, and the lack of any objection from the class members."); *Morris v. Lifescan, Inc.*, 54 Fed. App. 663, 664 (9th Cir. 2003) (affirming 33% fee).

Here, Class Counsel requests no enhancement to the Ninth Circuit's benchmark. The fee request is squarely within the range of percentages courts in this Circuit award in similar securities fraud class action settlements, and highly reasonable given the favorable result achieved for the Class.

## III.   THE 25% BENCHMARK AWARD IS REASONABLE IN THIS CASE

### A.   The Reasonableness Factors

Courts consider some or all of the following non-exclusive list of factors in determining a "reasonable" percentage to award as a percentage of the fund:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal quotation marks omitted) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 1047-50 (9th Cir. 2002)). *Accord, Kerr v. Screen Actors Guild*, 526 F.2d 67, 70 (9th Cir. 1975). Applying these factors to the case at bar demonstrates that a fee award of 25% of the Gross Settlement Fund is reasonable.[2]

---

[2] The 25% rate should be applied to the Gross Settlement Fund rather than net of expenses. In upholding the application in this manner, the Ninth Circuit has noted that the reasonableness of a fee request is based upon the resulting figure, not the denominator. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). "If twenty-five percent of gross is reasonable, perhaps thirty-five percent of net would be reasonable." *Id.*; *see also Todd v. STAAR Surgical Co.*, CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *24-25 (C.D. Cal. Oct. 24, 2017) (awarding

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                              5

### B.   Class Counsel Achieved an Excellent Result for the Class

Courts consistently recognize that the result achieved is perhaps the major factor in making a fee award.   *E.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained").

The payment of $12 million in cash to the Class provides an excellent recovery under the circumstances.   Class Counsel and Class Plaintiffs, after consulting with experts, estimate that the $12 million Settlement Amount represents between 10.5% and 30.5% of the maximum potential damages if the Class achieved a highly favorable outcome at trial and on appeal.   Joint Decl. at ¶ 63.   This range is well above average, as explained below.   Therefore, the Settlement represents a highly favorable recovery for the Class which supports granting the fee request.

The Settlement achieved here is several times the median percentage recovered in securities class action settlements based on data compiled by various securities litigation watchdogs.   According to an analysis by Stanford University and Cornerstone Research, a defendant-oriented economic consultancy, the annual median securities class action settlement for each year between 2007 and 2016 ranged between 1.8% and 2.8% of estimated damages.[3]   The Settlement here achieves a much higher percentage recovery of 10.5% to 30.5% of estimated recoverable damages.   The Settlement, therefore, yields an excellent result compared to the Stanford and Cornerstone median results, which further supports the fee request of 25% of the Gross Settlement Fund.

---

attorneys' fees and expenses to be paid from the gross settlement fund) (J., Fitzgerald).   Additionally, the Notice indicated that the fees would be requested as a percentage of the full gross Settlement Amount.   ECF No. 173-1 at 49.

[3]   *See*   http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf.

### C.     The Risks of Further Litigation

Courts recognize that the risk of continued litigation is an important factor in determining a fee award.  *See, e.g.*, *WPPSS*, 19 F.3d at 1299-1300.  Class Plaintiffs believe their case is strong and that they would ultimately prevail. However, they recognize that there are considerable risks that could result in no recovery, or a lesser recovery, in lieu of a settlement.  First, if this case continued, Class Plaintiffs would have to prevail on the interlocutory appeal now pending before the United States Court of Appeals for the Ninth Circuit.  A favorable ruling for Defendants in that appeal would significantly reduce the size of the Class and eliminate a sizeable portion of the aggregate damages.

At trial, Class Plaintiffs would face significant risks as to both liability and damages.  A jury might easily find that Defendants did not commit fraud or bore no responsibility for the alleged wrongdoing.  Moreover, a jury could find that damages were far lower than Class Plaintiffs calculated.

Class Plaintiffs also recognize that evidence produced in discovery may be susceptible to different interpretations.  The jury might not agree with Class Plaintiffs that the evidence demonstrated that Defendants made materially false and misleading statements or caused Class Plaintiffs' losses.  Class Plaintiffs would also face trial challenges concerning proof of control and damages.  And, even if successful at trial, Class Plaintiffs would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal.

Given the various risks in this Action and the strengths and weaknesses of the claims asserted against Defendants, the $12 million Settlement is highly favorable and in the best interests of the Class.

### D.     The Skill Required and the Quality and Efficiency of Counsel's Work

The "prosecution and management of a complex national class action

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                                 7

requires unique legal skills and abilities." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2007).  "This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Destefano v. Zynga, Inc.*, No. 12-4007, 2016 U.S. Dist. LEXIS 17196, *59 (N.D. Cal. Feb. 11, 2016) (citing *Omnivision*).  The quality of Class Counsel's work on this case is reflected in the excellent result obtained.  *See Norris v. Mazzola*, No. 15-4962, 2017 U.S. Dist. LEXIS 208610, *39 (N.D. Cal. Dec. 19, 2017) ("that Class Counsel have significant experience in this field . . . further indicates that the fee request is reasonable").

Class Counsel have extensive, significant, and highly focused experience in the field of securities class action litigation.  Joint Decl. at ¶ 71-72.  "The quality of opposing counsel is also relevant to the quality and skill that class counsel provided . . . ." *Zynga, Inc.*, 2016 U.S. Dist. LEXIS 17196, *59.  Class Plaintiffs were opposed in this litigation by the nationally respected firm of Wilson Sonsini Goodrich & Rosati PC and Munger, Tolles & Olson LLP, both of which mounted a skillful and aggressive defense.  Joint Decl. at ¶ 73.

At every stage of the proceedings, Class Counsel had to perform with a high level of skill, efficiency, and professionalism.  In the face of strong opposition from highly respected securities defense firms, Class Counsel successfully investigated the claims against Defendants, drafted amended complaints that survived motions to dismiss, conducted effective discovery, obtained class certification, and settled the claims in this Action on an excellent basis for the Class.  Joint Decl. at ¶ 70.

In particular, Class Counsel conducted a detailed investigation of the claims and interviewed several confidential witnesses, drafted multiple complaints and briefs in opposition to Defendants' motions to dismiss, reviewed and analyzed

1 documents during discovery that amounted to over 140,000 pages produced by

2 Defendants and third parties, defended the depositions of Class Plaintiffs, deposed

3 NantKwest's General Counsel, the Chairman of NantKwest's Audit Committee,

4 two accountants associated with NantKwest's outside auditor, and the attorney

5 leading the Underwriter Defendants' due diligence efforts, consulted with and

6 retained experts regarding the accounting treatment of Defendant Soon-Shiong's

7 warrants and damages sustained by the Class, successfully obtained class

8 certification, briefed an opposition to Defendants' request for an interlocutory

9 appeal, and prepared for and successfully participated in an in-person mediation.

10 Joint Decl. at ¶ 70.

11 Class Counsel's zealous and effective advocacy on behalf of the Class

12 supports approval of the fee request.

13 **E.   The Contingent Nature of the Case and Financial Burden Carried**

14 **by Class Counsel**

15 Courts recognize that the determination of a fair fee must include

16 consideration of the contingent nature of the fee and the difficulties that were

17 overcome in obtaining the settlement:

18

19 It is an established practice in the private legal market to reward

20 attorneys for taking the risk of non-payment by paying them a

premium over their normal hourly rates for winning contingency

21 cases.

22 *See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986).

23 Contingent fees in risky cases that may exceed the market value of the services if

24 rendered on a non-contingent basis are accepted in the legal profession as a

25 legitimate way of assuring competent representation for plaintiffs who could not

26 afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*,

27 19 F.3d at 1299.

28 Here, Class Counsel received no compensation over the course of the

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' AWARDS                                              9

litigation, and advanced significant expenses for the benefit of the Class.  Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any such award.

### F.    The Customary Fee

If this was not a class action, the customary contingent fee arrangement would be in the range of 30% to 40% of the recovery.  *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 903 n."*" (1984) (concurrence) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers.  In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E, 1990 U.S. Dist. LEXIS 15488, *22 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery.").  That the 25% fee requested in this case is lower than the contingent fee arrangements between lawyers and clients customary in the private marketplace confirms that Class Counsel's request is reasonable.

The 25% fee requested is also within the range of fees awarded by courts in the Ninth Circuit in securities fraud class actions.  *See, e.g.*, *Vizcaino,* 290 F.3d at 1051-52 (affirming award of 28% of $97 million settlement); *STAAR Surgical Co.*, 2017 U.S. Dist. LEXIS 176183, at *13 (awarding 25% of $7 million settlement); *In re Amgen Sec. Litig.*, CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *24-25 (C.D. Cal. Oct. 25, 2016) (awarding 25% of $95 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, CV 11-1404 AG (RNBx), 2014 U.S. Dist. LEXIS 190313 (C.D. Cal. Sep. 15, 2014) (awarding 25% of $57 million settlement); *Radient Pharm.*, 2014 U.S. Dist. LEXIS 63312, at *24 (awarding 28% of $2.5 million settlement).  Accordingly, a fee award of 25% of the Gross Settlement Fund here is fair and reasonable.

### G.   A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request

Courts often compare an attorney's lodestar with a fee request made under the percentage-of-the-fund method as a "cross-check" on the reasonableness of the requested fee.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1050; *Fischel v. Equitable Life Assur.*, 307 F.3d 997, 1007 (9th Cir. 2002).  "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F. 3d at 1050.

Here, a 25% fee award would result in a reasonable multiplier of Class Counsel's lodestar, *i.e.*, the total lodestar for Class Counsel's work in this Action. Class Counsel's fee request of 25% of the Gross Settlement Fund would be $3,000,000, which is approximately 0.96 times the lodestar.

Courts in this Circuit have routinely found that significantly higher multipliers are acceptable.  For example, in *Vizcaino*, 290 F.3d at 1051-52, the Ninth Circuit affirmed a 28% fee award over objections that "the district court's lodestar cross-check . . . [] resulted in a multiplier of 3.65." *Id.*  The Ninth Circuit listed twenty-three shareholder settlements in which the average multiplier was 3.28.  *Id.* at 1050 n.4.  Here, the 0.96 lodestar multiplier is far lower than those found reasonable in *Vizcaino*.

### H.   The Reaction of the Class Supports the Fee Award

The Class's reaction to the proposed fee request further supports the award of those fees.  The Settlement Administrator mailed 25,375 copies of the Court-approved Notice to Class Members.  Segura Decl. at ¶ 11.  The Notice was also made available to the public on the Settlement Administrator's website, and a Summary Notice was twice published on a national news wire.  *Id.* at ¶¶ 12-14.  The Notice informed Class Members that Class Counsel would apply for attorneys' fees of up to 25% of the Settlement Amount, and advised Class

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                    11

Members of their right to object to Class Counsel's fee request.  *See* ECF No. 173-1 at 49-51.

To date, no Class Member has objected to Class Counsel's fee request (or any other aspect of the Settlement), and no Class Member has sought to be excluded from the Settlement.  Segura Decl. at ¶¶ 16-18.  The Class's reaction strongly favors approval of the fee request.  "The presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, No. 02-1475, 2005 U.S. Dist. LEXIS 13627, *48-50 (C.D. Cal. Jun. 10, 2005) ("conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,] particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice.").

## IV.   CLASS COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY AND SHOULD BE REIMBURSED

Class Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve the $12 million gross recovery for the Class.  Class Counsel has incurred litigation expenses of $177,408.07, for which they have not been reimbursed to date.  *See* Joint Decl. at ¶ 82.

The amount requested is less than that identified in the Notice, which apprised the Class Members that Class Counsel would seek expenses in an amount not to exceed $250,000.  To date, no Class Member has objected to that request. Segura Decl., ¶ 18.

These expenses should be reimbursed.  Consistent with other jurisdictions, "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                                12

securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Zynga*, 2016 U.S. Dist. LEXIS 17196, *73. Class Counsel has pursued this litigation knowing that its outstanding expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Class Counsel has had no incentive to incur—and did not incur—unnecessary expenses. Joint Decl. at ¶ 82.

The expenses for which Class Counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Class, and are of the type routinely charged to paying clients. *Id.* Therefore, these expenses should be reimbursed out of the Gross Settlement Fund.

The largest expense was for experts retained to address significant matters in this litigation. *Id.* Dr. Zachary Nye of Stanford Consulting Group provided a market efficiency analysis, a damages analysis, a loss causation analysis, and assisted with the plan of allocation, at a cost of $58,332. *Id.* These expenses are consistent with those reimbursed in other similarly complex securities fraud litigations that have progressed to discovery. *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, No. 00-717, 2005 U.S. Dist. LEXIS 28431, *15-16 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses. . . . This is not unusual in securities litigation actions").

Reimbursement is also proper with respect to the other requested expenses. Courts routinely reimburse expenses for air travel, lodging, and costs incidental to travel such as meals, taxis and parking, as well as ediscovery costs, deposition costs, and computerized research costs. *See, e.g.*, *Thornberry v. Delta Air Lines*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated on other grounds*, 461 U.S. 952 (1983); *In re dj Orthopedics, Inc. Secs. Litig.*, No. 01-2238, 2004 U.S. Dist. LEXIS 11457, *21 (S.D. Cal. Jun. 22, 2004).

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                                   13

## V.     THE AWARD TO CLASS PLAINTIFFS SHOULD BE APPROVED

Class Plaintiffs also request that the Court award them $7,500 each to compensate for the significant time each expended in representing the Class in the prosecution of claims against Defendants. *See* 15 U.S.C. § 78u-4(a)(4).  Class Plaintiffs acknowledge that this amount is modestly higher than the "typical" $5,000 per representative award identified by this Court in its preliminary approval order.  *See* ECF No. 177 at 10.  The modest upward departure is justified here because (a) the economic value of the time that each devoted to the service of the Class exceeded $7,500, see Exhibits 11 and 12 to the Joint Decl. and (b) each conferred a substantial benefit upon the Class.  As an initial matter, Class Plaintiffs negotiated with Class Counsel to limit the fee request to no more than the 25% benchmark of the Gross Settlement Fund, eliminating any possibility that a higher fee award would reduce the total amount distributed to the Class.  Moreover, each met with counsel to prepare for a deposition and sat for a deposition, produced documents in response to Defendants' discovery requests, responded to interrogatories, communicated with counsel about the Action and helped evaluate settlement proposals.  Moreover, to assist the Class, each withdrew claims under Section 10(b) of the Securities Exchange Act of 1934, upon learning that such claims could not be litigated on a class wide basis due to lack of evidence supporting market efficiency.

Although $5,000 may be a standard award, courts often reward more where, as here, the representative plaintiffs confer a higher than usual benefit upon the Class.  *See, e.g.*, *In re Veritas Software Corp. Sec. Litig.*, 396 Fed. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT&T Operations, Inc.*, No. 10-0463-LHK, 2011 U.S. Dist. LEXIS 85699, at *7 (N.D. Cal. Jun. 30, 2011) ($20,000 to lead plaintiff, $5,000 to class representatives); *In re Xcel Energy, Inc. Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1000 (D. Minn.

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                                    14

2005) (awarding $100,000 to lead plaintiffs because of "the important policy role [lead plaintiffs] play in the enforcement of the federal securities laws on behalf of persons other than themselves"). *See also STAAR*, 2017 U.S. Dist. LEXIS 176183, at *15 (awarding $10,000 to a lead plaintiff); *In re CV Therapeutics, Inc. Sec. Litig.*, No. C 03-3709 SI, 2007 U.S. Dist. LEXIS 98244, at *5 (N.D. Cal. Apr. 4, 2007) (granting $26,000 to individual lead plaintiff for "reimbursement of time and expenses."); *In re Quintus Sec. Litig.*, No. C-00-4263 VRW, 2006 WL 3507936, at *4 (N.D. Cal. Dec. 5, 2006) (awarding $12,000 to individual lead plaintiff).

In short, an award of $7,500 to each Class Plaintiff is appropriate under these circumstances.

## VI.   CONCLUSION

Securities class actions are complex and laden with risk. Many times class counsel, after expending thousands of hours of time and hundreds of thousands of dollars of expenses, receive no compensation whatsoever. Here, there was no guarantee that Class Plaintiffs' claims against Defendants would bear any fruit.

This complex litigation has been extremely hard-fought, with Defendants represented by experienced and equally determined counsel. Without any assurance of success, Class Plaintiffs and their counsel pursued their claims to an exceptional conclusion. This Settlement represents an excellent recovery for the Class and reflects the skill, dedication, and tenacity of Class Counsel.

Class Counsel respectfully request that the Court approve the fee and expense application and enter the Order submitted herewith awarding Class Counsel 25% of the Gross Settlement Fund plus reimbursement of $177,408.07 in expenses, and an award of $7,500 each to Class Plaintiffs Hu and Li.

///

///

///

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND PLAINTIFFS' AWARDS                                         15

Dated:  April 8, 2019

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/Kara M. Wolke*
Robert V. Prongay
Kara M. Wolke
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: rprongay@glancylaw.com
          kwolke@glancylaw.com

*Liaison Counsel for Class Plaintiffs*

**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
468 North Camden Drive
Beverly Hills, CA 90210
Telephone: (818) 532-6449
E-mail: jpafiti@pomlaw.com

Patrick V. Dahlstrom
Joshua B. Silverman
Omar Jafri
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
E-mail: pdahlstrom@pomlaw.com
          jbsilverman@pomlaw.com
          ojafri@pomlaw.com

MPA  ISO  MOTION  FOR  ATTORNEYS'  FEES,  REIMBURSEMENT  OF
EXPENSES AND PLAINTIFFS' AWARDS                                    16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRAGAR EAGEL & SQUIRE P.C.**
David J. Stone (SBN 208961)
Marion C. Passmore (SBN 228474)
Melissa A. Fortunato (SBN 319767)
885 Third Avenue, Suite 3040
New York, New York 10022
Telephone: (212) 308-5858
Email: stone@bespc.com
            passmore@bespc.com
            fortunato@bespc.com

*Co-Lead Counsel for Class Plaintiffs*
*and the Class*

MPA ISO MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF
EXPENSES AND PLAINTIFFS' AWARDS                                    17

1   **PROOF OF SERVICE BY ELECTRONIC POSTING**

2   I, the undersigned say:

3   I am not a party to the above case, and am over eighteen years old.  On

4   April 8, 2019, I served true and correct copies of the foregoing document, by

5   posting the document electronically to the ECF website of the United States

6   District Court for the Central District of California, for receipt electronically by

7   the parties listed on the Court's Service List.

8   I affirm under penalty of perjury under the laws of the United States of

9   America that the foregoing is true and correct.  Executed on this April 8, 2019, at

10   Los Angeles, California.

11

12

13   _s/Kara M. Wolke_____
     Kara M. Wolke

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA  ISO  MOTION  FOR  ATTORNEYS'  FEES,  REIMBURSEMENT  OF
EXPENSES AND PLAINTIFFS' AWARDS                                         18