Robert V. Prongay (SBN 270796)
Kara M. Wolke (SBN 241521)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
E-mail: kwolke@glancylaw.com

Jennifer Pafiti (SBN 282790)
**POMERANTZ LLP**
468 North Camden Drive
Beverly Hills, CA 90210
Telephone:  (818) 532-6449
E-mail: jpafiti@pomlaw.com

[Additional Counsel on Signature Page]

*Attorneys for Class Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SUDUNAGUNTA, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NANTKWEST, INC., PATRICK SOON-SHIONG, RICHARD GOMBERG, BARRY J. SIMON, STEVE GORLIN, MICHAEL D. BLASZYK, HENRY JI, RICHARD KUSSEROW, JOHN T. POTTS, JR., ROBERT ROSEN, JOHN C. THOMAS JR., MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., CITIGROUP GLOBAL MARKETS INC., JEFFERIES LLC, PIPER JAFFRAY & CO., and MLV & CO., LLC.,<br><br>Defendants. | Case No. 16-cv-01947-MWF (JEMx)<br>Consolidated with 2:16-cv-3438-MWF-JFM<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF JOSHUA B. SILVERMAN AND DAVID J. STONE IN SUPPORT OF MOTION FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFFS' AWARDS**<br><br>Date:  April 29, 2019<br>Time:  10:00 a.m.<br>Before:  Hon. Michael Fitzgerald<br>Courtroom:  5A |

1
2

# TABLE OF CONTENTS

I.  OVERVIEW.................................................................... 1

II. SUMMARY LIST OF EXHIBITS................................... 4

III. PROSECUTION OF THE ACTION.................................... 5

    A.  Summary of the Claims and Allegations ............................5

    B.  Commencement of the Action and Appointment of Lead
        Plaintiffs ............................................7

    C.  Class Plaintiffs' Filing of Amended Complaints and Briefing on
        Defendants' Motions to Dismiss........................... 8

    D.  Fact and Expert Discovery.................................. 9

    E.  Class Certification ..........................................9

    F.  Settlement Negotiations and Mediation........................... 10

IV.  THE SETTLEMENT........................................... 11

    A.  The Court Has Preliminarily Approved Settlement........................ 12

    B.  Dissemination of Notice to the Class Was Adequate........................ 12

    C.  The Settlement is Fair, Reasonable, and Adequate and in the Best
        Interests of the Class.................................... 14

    D.  The Plan of Allocation is Fair, Reasonable, and Adequate............... 16

V.  THE FEE AND LITIGATION EXPENSE APPLICATION..................... 17

    A.  The Fee Application........................................ 17

    B.  The Fee Application........................................ 18

C. Standing and Caliber of Opposing Counsel..................................... 19

D. The Risks of Contingent Litigation.................................................. 20

E. The Reaction of the Class to the Requested Fee............................. 20

F. The Fee Request Is Also Justified Under the Lodestar/Multiplier Approach......................................................................................... 21

G. Request For Reimbursement of Expenses........................................ 22

VI.    REIMBURSEMENT OF COSTS AND EXPENSES OF CLASS PLAINTIFFS......................................................................................... 22

VII.   CONCLUSION ...................................................................................23

We, Joshua B. Silverman and David J. Stone, hereby declare as follows:

1.     We are partners, respectively, at the law firms of Pomerantz LLP and Bragar Eagel & Squire, P.C., Co-Lead Counsel in the above-captioned litigation (the "Action").

2.     We submit this Joint Declaration in support of Class Plaintiffs' (1) Motion for Final Approval of Class Action Settlement and Plan of Allocation and (2) Motion for an Award of Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Plaintiffs' Awards.  We have personal knowledge of the facts asserted herein and could testify to those facts if called to do so.

## I.     OVERVIEW

3.     The proposed Settlement[1] provides for a cash payment of $12 million for resolution of all claims in the Action against Defendants NantKwest, Inc. ("NantKwest" or the "Company"), Patrick Soon-Shiong ("Soon-Shiong"), Richard Gomberg, Barry J. Simon, Steve Gorlin, Michael D. Blaszyck, Henry Ji ("Ji"), Richard Kusserow, John T. Potts, Jr., Robert Rosen, and John C. Thomas Jr., Merrill Lynch, Pierce, Fenner & Smith Inc., Citigroup Global Markets Inc., Jefferies LLC, Piper Jaffray & Co., and MLV & Co., LLC (collectively, "Defendants").

4.     After assessing the merits of the case, as well as Defendants' potential defenses, the risks and expenses in continuing litigation through trial, and the significant recovery achieved by the Settlement, Class Plaintiffs and Class Counsel believe that the Settlement provides an extraordinarily favorable recovery and is in the best interests of the Class.

---

[1]  Unless otherwise noted, all capitalized terms not defined herein shall have the same meaning ascribed to them in the Stipulation of Settlement dated October 31, 2018 (the "Stipulation" or "Stip") (ECF No. 173-1).

5.    More specifically, this Settlement is the result of over two years of hard-fought litigation, including, *inter alia*: (i) extensive investigation into the claims alleged, both factual and legal; (ii) the drafting and filing of the Consolidated Amended Class Action Complaint, two additional complaints with subsequently discovered facts, and a fourth complaint in accordance with a Court order striking certain claims; (iii) successfully opposing in part and in full two motions to dismiss; (iv) extensive discovery, including written discovery, review and analysis of documents produced by Defendants and third parties, and the taking or defending of seven depositions; (v) consulting with retained experts regarding NantKwest's accounting, damages, market efficiency, and the Company's representations concerning Soon-Shiong's compensation; (vi) successfully obtaining class certification; (vii) opposing Defendants' interlocutory appeal of the Court's order granting class certification; (ix) preparing Class Plaintiffs' mediation statement and analyzing Defendants' mediation statement; (x) attending a formal in-person mediation session with JAMS mediator, Robert A. Meyer, Esq. (the "Mediator"); and, (xii) negotiating and preparing the Settlement Stipulation and related Settlement documents.

6.    The arm's-length negotiations, facilitated by the Mediator, took place over several months between experienced counsel.  As a result of the above-described broad, comprehensive, and lengthy litigation practices, Class Plaintiffs and Class Counsel were well-versed in the Action's facts and allegations, as well as the strengths and weaknesses of the Action prior to mediation.

7.    The Settlement Amount of $12 million provides an immediate benefit to the Class and is an excellent result relative to other securities class action settlements.  The Settlement Amount constitutes between approximately 10.5% and 30.5% of the most likely recoverable damages, if Class Plaintiffs prevail on all

claims, depending on whether the Class is maintained as certified.  After consulting with their experts, Class Plaintiffs estimate that if they prevailed on all of their claims based upon the Class as currently constituted, the maximum recovery would be $114.6 million.  Class Plaintiffs estimate that if Defendants prevailed on their petition for interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure, and the Class was restricted to exclude purchasers after August 7, 2016, the maximum recovery would be $39.4 million.  This recovery of estimated damages exceeds the annual median securities class action settlement for each year between 2007 and 2016 ranged between 1.8% and 2.8% of estimated damages[2] and 2018 median of 8% for actions involving Section 11 and/or Section 12(a)(2) claims under the Securities Act of 1933 (the "Securities Act"). [3]

8.     As of April 2, 2019, the Court-appointed settlement administrator, JND Legal Administration ("JND" or the "Settlement Administrator") has not received a single request for exclusion.  Nor has any Class Member objected to any aspect of the Settlement, Plan of Allocation, Class Counsel's anticipated fee request or request for expense reimbursement, or the anticipated compensatory awards to Class Plaintiffs.

9.     Class Counsel, in consultation with an independent damages expert, developed the Plan of Allocation for the Net Settlement Fund, similar to allocation plans approved and successfully used in other securities class actions.   Class Plaintiffs and Class Counsel believe the Plan of Allocation is fair, reasonable, and adequate and in the best interests of the Class.

---

[2]  *See* http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf.
[3]  *See* Laarni T. Bulan, et al., Cornerstone Research, *Securities Class Action Settlements: 2018 Review and Analysis*, at 7 (2019), available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2018-Review-and-Analysis.

10.     Class Counsel further request the Court to approve attorneys' fees in the amount of 25% of the Gross Settlement Fund, consistent with the Ninth Circuit benchmark.   Class Counsel's request is consistent with the retainer agreements entered into with Class Plaintiffs and is supported by Class Plaintiffs.  Not a single member of the Class has objected to notice that Class Counsel would request attorneys' fees in the amount provided in its motion.  Moreover, a lodestar cross-check confirms the fairness and reasonableness of Class Counsel's request.  Class Counsel spent 5,033.15 hours of professional time that has a market value of approximately $3,123,720.   The requested 25% award will result in a lodestar multiplier of 0.96, which is on the low end of the range of multipliers approved by courts in the Ninth Circuit.  In addition, Class Counsel's request for reimbursement of litigation expenses totaling $177,408.07 is reasonable and arises from expenses that are routinely incurred in this type of Action and reimbursed by the courts.

11.     As indicated in the Notice, Class Plaintiffs also request the Court to award them $7,500 each for the considerable time and effort that each provided to the Class.

## II.     SUMMARY LIST OF EXHIBITS

12.     Annexed hereto as Exhibit 1 is a true and correct copy of the Declaration of Luiggy Segura Regarding: (A) Mailing of Notice of Pendency And Settlement of Class Action, and Proof of Claim And Release; (B) Publication Summary Notice of Class Action; and (C) Requests For Exclusions and Objections.

13.     Annexed hereto as Exhibit 2 is a lodestar summary report of Co-Lead Counsel Pomerantz LLP.

14.     Annexed hereto as Exhibit 3 is a lodestar summary report of Co-Lead Counsel Bragar Eagel & Squire, P.C.

15.     Annexed hereto as Exhibit 4 is a lodestar summary report of Liaison Counsel Glancy Prongay & Murray, LLP.

16.     Annexed hereto as Exhibit 5 is a litigation expense report of Co-Lead Counsel Pomerantz LLP.

17.     Annexed hereto as Exhibit 6 is a litigation expense report of Co-Lead Counsel Bragar Eagel & Squire, P.C.

18.     Annexed hereto as Exhibit 7 is a litigation expense report of Liaison Counsel Glancy Prongay & Murray, LLP.

19.     Annexed hereto as Exhibit 8 is the firm resume of Co-Lead Counsel Pomerantz LLP.

20.     Annexed hereto as Exhibit 9 is the firm resume of Co-Lead Counsel Bragar Eagel & Squire, P.C.

21.     Annexed hereto as Exhibit 10 is the firm resume of Liaison Counsel Glancy Prongay & Murray, LLP.

22.     Annexed hereto as Exhibit 11 is the declaration of Lead Plaintiff Donald Hu in support of final approval of class action settlement, class certification and the plan of allocation, and motion for an award of attorneys' fees and reimbursement of litigation and plaintiffs' award.

23.     Annexed hereto as Exhibit 12 is the declaration of Lead Plaintiff Brayton Li in support of final approval of class action settlement, class certification and the plan of allocation, and motion for an award of attorneys' fees and reimbursement of litigation and plaintiffs' award.

## III.     PROSECUTION OF THE ACTION

### A.     Summary of the Claims and Allegations

24.     This is a federal securities class action for violations of Sections 11 and 15 of the Securities Act against Defendants.  NantKwest is a development-stage

immunotherapy company.  ¶ 2.[4]   At the end of 2014 and beginning of 2015, Defendant Soon-Shiong engineered a take-over of the Company, using an investment vehicle to buy a majority stake and another company controlled by him to purchase additional shares.  ¶¶ 44-48.  With this influence, by March 2015, Soon-Shiong caused NantKwest to appoint him as its Chief Executive Officer ("CEO") and Chairman of the Board of Directors (the "Board") and his business partner, Defendant Ji, a Director.  ¶¶ 45, 47.  At the time of his appointment as CEO, the Board issued Soon-Shiong warrants to purchase 17,589,250 shares of NantKwest common stock for $2 per share (split-adjusted).  ¶ 49.  NantKwest and Soon-Shiong modified the warrant on May 8, 2015 to provide that 8,331,750 shares would vest upon an investment of at least $20 million by a large pharmaceutical or biotech company in NantKwest at a minimum valuation of $1.5 billion.  ¶¶ 49-51.

25.    At the time the warrant agreement was modified, Soon-Shiong and the other NantKwest Defendants knew that Celgene, a large biotech company, was likely if not certain to make such an investment.  *Id.*   Thus, under Generally Accepted Accounting Principles, NantKwest incurred and was required to record $114,561,562 in executive compensation expense in the second quarter of 2015. ¶¶ 50-51.  Soon-Shiong further enmeshed himself in NantKwest, lining his own pockets, by causing NantKwest to enter into numerous contracts with his other companies.  ¶ 4.

26.    The Company filed a registration statement for its initial public offering of stock ("IPO") on June 19, 2015 and the final Registration Statement on July 16, 2015.  ¶¶ 6-7.  The FCAC alleges that the Registration Statement used to

---

[4]  All paragraph references are to the Fourth Consolidated Amended Class Action Complaint (the "FCAC") filed on August 24, 2018.  ECF No. 162.

1 sell shares in the Company's IPO was materially false and misleading in failing to

2 disclose:  (1) that on May 8, 2015, NantKwest had funneled more than $100 million

3 in additional compensation to Soon-Shiong by modifying the warrant terms to

4 include a massive so-called "performance milestone" that was already virtually

5 certain to be achieved, and, therefore, NantKwest incurred a similar amount of

6 compensation expense at that time; (2) that effective May 2015, NantKwest had

7 engaged in a related-party facilities lease arrangement with NantWorks LLC, a

8 company owned by Soon-Shiong, pursuant to which NantKwest had incurred

9 millions of dollars of liability prior to the time of the IPO; and (3) the material

10 weaknesses in the Company's internal controls.  ¶ 8.  By omitting this material

11 information, on July 28, 2015, Defendants were able to successfully raise over $225

12 million in net proceeds in the IPO.  ¶ 7.

13 **B.    Commencement of the Action and Appointment of Lead Plaintiffs**

14 27.    This litigation commenced on March 22, 2016 when a securities class

15 action complaint styled as *Sundunagunta v. NantKwest, Inc.*, No. 16-cv-01947-

16 MWF-JEM was filed on behalf of all persons or entities who purchased or

17 otherwise acquired publicly traded securities of NantKwest, alleging violations of

18 Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

19 Act").  ECF No. 1.  On June 3, 2016, the Court consolidated the *Sundunagunta*

20 action with *Forsythe v. NantKwest, Inc.*, No. 16-cv-03448-MWF-JEM, filed on

21 May 18, 2016.  ECF No. 33.

22 28.    On June 14, 2016, the Court appointed Plaintiffs Donald Hu and

23 Brayton Li as Lead Plaintiffs, Pomerantz LLP and Bragar Eagel & Squire, P.C. as

24 Co-Lead Counsel, and Glancy, Prongay & Murray LLP as Liaison Counsel.  ECF

25 No. 34.

26

27

28

29.    On October 11, 2016, the Court consolidated into this Action four additional actions that had been filed in California state court and subsequently removed to the United States Court for the Central District of California (the "Removed Actions"):   (1) *Wagner v. NantKwest, Inc.*, No. 16-cv-06703-MWF-JEM; (2) *Hare v. NantKwest, Inc.*, No. 16-cv-06697-MWF-JEM; (3) *Wiencek v. NantKwest, Inc.*, No. 16-cv-06705-MWF-JEM; and, (4) *Frye v. NantKwest, Inc.*, 16-cv -06700-MWF-JEM.   ECF No. 76.   On October 7, 2016, plaintiffs in the Removed Actions requested relief from this Court's Order appointing lead plaintiff, which the Court denied on February 6, 2017.   ECF No. 93.

**C.    Class Plaintiffs' Filing of Amended Complaints and Briefing on Defendants' Motions to Dismiss**

30.    Class Plaintiffs filed a Consolidated Amended Class Action Complaint For Violations of the Federal Securities Laws (the "CAC") on August 4, 2016.   ECF No. 49.   The CAC alleged violations of Sections 11 and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act.   The CAC was based on extensive investigation and analysis of Class Counsel which included, *inter alia*, a review of Defendants' public documents, filings with the U.S. Securities and Exchange Commission ("SEC"), wire and press releases published by, and regarding, NantKwest, and analysts' reports and advisories about the Company.

31.    Defendants moved to dismiss the CAC on October 6, 2016 (ECF No. 70), which Class Plaintiffs opposed (ECF No. 86).   On May 16, 2017, the Court issued an Order granting in part and denying in part Defendants' October 6, 2016 motion to dismiss the CAC.   ECF No. 108.

32.    Class Plaintiffs filed the Second Consolidated Amended Class Action Complaint (the "SCAC") on June 5, 2017.   ECF No. 109.   Pursuant to discussions and possible provision of additional information concerning certain of the

allegations in the SCAC, the parties stipulated to and the Court ordered the filing of the Third Consolidated Amended Class Action Complaint (the "TCAC").   ECF Nos. 110, 111.

33.    The TCAC was filed on July 10, 2017.  ECF No. 112.  On July 31, 2017, Defendants moved to dismiss the TCAC (ECF No. 113), which Class Plaintiffs opposed (ECF No. 116).  The Court denied Defendants' motion to dismiss in its entirety on September 20, 2017.  ECF No. 121.

### D.    Fact and Expert Discovery

34.    After the Court's order denying Defendants' motion to dismiss the TCAC, the parties engaged in extensive fact discovery, which included: issuance of interrogatories and requests for production to Defendants and third-parties; responses to interrogatories and requests of production from Defendants; production of documents; and depositions.

35.    Defendants and third-parties produced over 140,000 pages of documents in response to Class Plaintiffs' requests for production.    These documents were reviewed by Class Counsel prior to the Settlement.

36.    Class Counsel deposed:  (i) NantKwest General Counsel Charles Kim, who played a major role in the Celgene negotiations; (ii) John Thomas, Jr., a NantKwest Board member and Audit Committee chairman; (iii) Sean Clayton of Cooley LLP, who led much of the due diligence that the Underwriter Defendants conducted for the NantKwest IPO; and (iv) two senior members of the audit team from NantKwest's auditor, Mayer Hoffman McCann, P.C., Jacqueline Dale and Steve Fanuchi.  Defendants deposed both Class Plaintiffs.

### E.    Class Certification

37.    On April 2, 2018, Class Plaintiffs moved to strike from the TCAC the claims brought under the Exchange Act and moved for class certification with

1  respect to the remaining claims brought under the Securities Act.  ECF Nos. 140-

2  144.  Defendants opposed Class Plaintiffs' motion to strike on April 9, 2018 (ECF

3  No. 146) and motion for class certification on May 30, 2018 (ECF Nos. 152-153).

4      38.   On August 13, 2018, the Court entered an Order permitting Class

5  Plaintiffs to withdraw claims brought under the Exchange Act but directing them to

6  do so by filing a fourth amended complaint, granting certification of the Class, and

7  appointing Lead Plaintiffs to serve as Class Plaintiffs and their counsel of record to

8  serve as Class Counsel.  ECF No. 160.

9      39.   Class Plaintiffs filed the FCAC on August 24, 2018.  In response, on

10  August 27, 2018, Defendants filed a petition for permission to appeal the Court's

11  August 13, 2018 Order granting class certification, and the Underwriter Defendants

12  (*see* ¶ 29-35) joined in that petition.   Class Plaintiffs filed an Opposition to

13  Defendants' petition on September 6, 2018.

14      **F.   Settlement Negotiations and Mediation**

15      40.   The parties reached the proposed Settlement through a protracted, good

16  faith, arm's-length negotiation facilitated by the Mediator, an experienced mediator

17  specializing in complex litigation.   Prior to the mediation session, the parties

18  exchanged mediation statements detailing the strengths and weaknesses of their

19  case and damages analyses.

20      41.   Counsel for all parties and the insurer participated in an in-person

21  mediation session on March 14, 2018, but did not reach a resolution.  The parties

22  continued negotiations for several months with the assistance of the Mediator,

23  through additional telephonic and written discussions.

24      42.   On September 7, 2018, the Mediator made a mediator's proposal to all

25  parties recommending the settlement of this Action for the Settlement Amount of

26  $12 million.  The parties accepted the mediator's proposal on September 14, 2018

27

28

1   and executed a binding Memorandum of Understanding on September 25, 2018.

2   Finalization of the Settlement terms embodied in the Stipulation followed, with the

3   Stipulation being executed on October 31, 2018.

4   **IV.    THE SETTLEMENT**

5        43.    Under the terms of the Settlement, NantKwest's insurers paid $12

6   million into an escrow account maintained by Class Counsel within 20 business

7   days of preliminary settlement approval (the "Settlement Fund") on behalf of all

8   Defendants. Stip. at ¶ II.A.

9        44.    The Settlement Fund, including any interest earned thereon, shall be

10  used first to pay the following:   (1) taxes and tax expenses; (2) notice and

11  Administration Expenses; (3) attorneys' fees and expenses as approved by the

12  Court; and (4) compensatory awards to the Class Plaintiffs as approved by the

13  Court.  Stip. at ¶ III.A.  The remaining balance, the Net Settlement Fund, shall be

14  paid to Authorized Claimants on a *pro rata* basis as set forth in the Notice and

15  proposed Plan of Allocation.

16       45.    In exchange for the consideration above, upon the Effective Date,

17  Class Plaintiffs and Class Members who do not timely and validly exclude

18  themselves shall be deemed to have, and by operation of the Judgment shall have,

19  fully, finally, and forever, released, relinquished, settled, and discharged the

20  Released Parties from the Released Claims and shall be permanently barred and

21  enjoined from instituting, commencing, or prosecuting any of the Released Claims

22  against any of the Released Parties directly, indirectly, or otherwise, whether or not

23  such Class Plaintiffs or Class Members execute and deliver a Proof of Claim and

24  Release to the Settlement Administrator.  Stip. at ¶ VIII-B.  Upon the Effective

25  Date, Defendants shall also release and shall be permanently barred and enjoined

26  from instituting, commencing, or prosecuting any claim against Class Plaintiffs,

27

28

Class Members, or Class Counsel related to this Action or the prosecution thereof. *Id.*

## A.   The Court Has Preliminarily Approved Settlement

46.   On September 24, 2018, the parties notified the Court that they had reached a settlement in principle.  ECF No. 169.  On November 9, 2018, Class Plaintiffs filed their Motion for Preliminary Approval of Class Action Settlement and Notice to the Settlement Class, along with the Stipulation and related documents.  ECF Nos. 171-173.

47.   On January 9, 2019, the Court issued an Order granting preliminary approval of the proposed Settlement and directing dissemination of notice to Class Members (the "Preliminary Approval Order").  ECF No. 177.

## B.   Dissemination of Notice to the Class Was Adequate

48.   Pursuant to the Preliminary Approval Order, on January 29, 2019, JND mailed 4,332 copies of the Notice and Proof of Claim and Release Form (the "Notice Packet") to potential Class Members and their brokers and nominees.  *See* Declaration of Luiggy Segura (the "Segura Decl.") ¶ 7 (Exhibit 1 hereto).

49.   The names and addresses of Class Members were obtained from listings provided to JND by American Stock Transfer, the transfer agent for NantKwest; research of SEC filings on Form 13-F; and, JND's proprietary database of names of the most common banks, brokerage firms, nominees, and known third-party filers.  *Id.* at ¶¶ 4-6.

50.   Additional Notice Packets were mailed after JND received notice of potential Class Members from nominees, brokers, and telephone and/or email requests.  *Id.* at ¶¶ 8-11.  In total, through April 2, 2019, JND has mailed a total of 25,375 Notice Packets to potential Class Members, brokers, and nominee holders.  *Id.* at ¶ 11.

51.     The Notice provided, *inter alia*, the following information to Class Members:  (1) the reasons for and material terms of the Settlement; (2) that Class Members may appear through their own counsel if desired, including at the Settlement Hearing; (3) the deadlines and procedures for requesting an exclusion or objecting to the Settlement; (4) a statement of recovery; (5) the date, time, and place of the Settlement Hearing; (6) information about the proposed attorneys' fees and costs, and proposed compensatory awards to Class Plaintiffs; and (7) the identity and contact information of the representatives of Class Counsel and procedures for making inquiries.  Segura Decl., Ex. A.  The Notice also included the proposed Plan of Allocation and information on how to submit a Proof of Claim.  *Id.*

52.     JND also arranged for Summary Notice to be published in *PrNewswire* on February 8, 2019 and February 15, 2019.  *Id.* at ¶ 12.

53.     In addition, beginning on or about January 29, 2019, JND established and continues to maintain a toll-free telephone number with a live operator during regular business hours dedicated to fielding calls and questions from NantKwest shareholders.  *Id.* at ¶ 13.   JND, in coordination with Class Counsel, has also designed, implemented, and currently maintains a website, www.NantKwestSecuritiesLitigation.com, operational as of January 28, 2019, providing, among other things, pertinent deadlines of the settlement proceeding (*i.e.*, deadlines to request exclusion, object, and submit claims, and the Settlement Hearing date) as well as all pertinent settlement documents (*i.e.*, the Preliminary Approval Order, Notice Packet, and Summary Notice).  *Id.* at ¶ 14.

54.     As of April 2, 2019, JND has not received a single request for exclusion.  The deadline to submit a request for exclusion is April 15, 2019.  *Id.* at ¶ 16.

55.    The Notice informs potential Class Members that objections from Class Members are to be addressed to each counsel of record. *Id.* at ¶ 17.

56.    Through April 2, 2019, neither Class Counsel nor JND has received a single objection to the Settlement, any part thereof, Class Counsel's proposed attorneys' fees and expenses, or the proposed compensatory awards to Class Plaintiffs. *Id.* at ¶ 18.  The deadline to file objections is also April 15, 2019. *Id.*

57.    JND will submit a supplemental declaration addressing any exclusion requests or objections received once the April 15, 2019 deadline has passed.  *Id.* at ¶ 19.

**C.    The Settlement is Fair, Reasonable, and Adequate and in the Best Interests of the Class**

58.    In light of the considerations discussed in Class Plaintiffs' Motion for Final Approval of Settlement and accompanying Memorandum of Points and Authorities, Class Plaintiffs and Class Counsel, experienced nationally-recognized securities class action law firms, submit that the Settlement is fair, reasonable, and adequate, satisfies the standards of Rule 23, and provides a significant recovery for the Class. *See* Exs. 8-10.

59.    The arm's-length Settlement negotiations, between experienced counsel, took place with the help of an experienced mediator after extensive vigorous litigation and substantial discovery.   Settling Defendants are also represented by prominent, experienced law firms.   The are no other indicia of collusion here such as "disproportionate distribution of the settlement," a clear-sailing fee agreement, or an agreement permitting unpaid fees to revert to Defendants.

60.    The immediate benefits of the proposed Settlement outweigh the substantial risks, delay, and expense of continued litigation.  Although, based on the

extensive investigation, record, and substantial discovery, Class Plaintiffs and Class Counsel believe all the asserted claims have merit, there are also uncertainties and risks in continuing the litigation.  If litigation proceeded, Class Plaintiffs would have to prevail on the interlocutory appeal pursuant to Federal Rule of Civil Procedure 23(f) now pending before the United States Court of Appeals for the Ninth Circuit, or face a considerably smaller class with much lower aggregate damages.

61.     Defendants would be expected to mount a vigorous defense at trial and further litigation would be expensive, complex, and protracted.  Class Plaintiffs would have to prove that the alleged false and misleading statements and omissions were material, and that Defendants failed to make a reasonable investigation or possess a reasonable basis for the belief that the statements contained in the Registration Statement were true and would have to prove that they violated their duties to make such a reasonable investigation.

62.     Damages would also be disputed, with Defendants most likely arguing negative causation, a statutory defense to claims asserted under Section 11 of the Securities Act, possibly limiting recovery to the Class, creating a costly and time-consuming "battle of the experts."  Class Plaintiffs and Class Counsel would be required to expend significant time and expense in preparing the case for trial in light of these issues, including possible summary judgment motion practice.  And, even if the Class survived summary judgment and prevailed at trial, Defendants could appeal, further delaying and potentially undermining any recovery.  While Class Plaintiffs and Class Counsel believe they would ultimately prevail, they acknowledge the possibility that they might not, resulting in no recovery at all for the Class.

1  63.  The Settlement amount of $12 million constitutes between

2  approximately 10.5% and 30.5% of the most likely recoverable damages, if Class

3  Plaintiffs prevail on all claims, depending on whether the Class is maintained as

4  certified, or shortened. After consulting with their experts, Class Plaintiffs estimate

5  that if they prevailed on all of their claims based upon the class as currently

6  constituted, the maximum recovery would be $114.6 million. Class Plaintiffs

7  estimate that if Defendants prevailed on their petition for interlocutory appeal under

8  Rule 23(f), and the class was restricted to exclude purchasers after August 7, 2016,

9  the maximum recovery would be $39.4 million. The Class's recovery would be

10  materially less if Defendants prevailed on their negative causation defenses. Even

11  the lower recovery estimate of 10.5% exceeds the median settlement of 8.0% of

12  statutory damages for Section 11 and/or 12(a)(2) only cases for 2018. *See, e.g.*,

13  Laarni T. Bulan, et al., Cornerstone Research, *Securities Class Action Settlements:*

14  *2018 Review and Analysis*, at 7 (2019),

15  https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-

16  Settlements-2018-Review-and-Analysis.

17  64.  Lastly the Settlement treats Class Members equitably. All Class

18  Members, including Class Plaintiffs, will receive *pro rata* recoveries based on the

19  same recognized loss calculation formula.

20  **D.  The Plan of Allocation is Fair, Reasonable, and Adequate**

21  65.  As stated in the Notice provided to potential Class Members, Class

22  Members who wish to participate in the Settlement must submit a Proof of Claim

23  and Release Form by April 26, 2019. Segura Decl., Ex. A. The Notice explains

24  that the Net Settlement Fund, including any interest earned thereon, after deduction

25  of: (1) taxes and tax expenses; (2) notice and Administration Expenses;

26  (3) attorneys' fees and expenses as approved by the Court; and (4) compensatory

27

28

awards to the Class Plaintiffs as approved by the Court, shall be paid to Authorized Claimants on a *pro rata* basis according to the Court-approved plan of allocation (the "Plan of Allocation").

66.     Class Plaintiffs and Class Counsel believe that the proposed Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Class Members who suffered losses as a result of the conduct alleged in the Action similar to any result if Class Plaintiffs were successful at trial.   Class Counsel developed the Plan of Allocation in consultation with an independent expert with the goal of distributing net settlement funds to eligible Class Members in a fair and reasonable manner.

67.     Specifically, the Plan of Allocation calculates a "Recognized Loss" amount for each Class Member which depends on several factors, including when the stock was sold and the purchase and sale prices.  The Net Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on the relative size of their Recognized Claims.

## V.     THE FEE AND LITIGATION EXPENSE APPLICATION

### A.     The Fee Application

68.     As compensation for their efforts, Class Counsel are applying for an award of attorneys' fees in the amount of 25% of the Settlement Fund, or $3,000,000, and reimbursement of $177,408.07 in expenses reasonably incurred in the prosecution and settlement of the Action.  *See* Motion and Memorandum of Law in Support of Attorneys' Fees, Reimbursement of Expenses and Class Plaintiffs' Awards (the "Fee Brief") filed herewith.  Class Plaintiffs and Class Counsel have prosecuted this case for over two years without any compensation whatsoever, and incurred close to two hundred thousands of dollars in expenses without any guarantee of success.

69.     The 25% fee request is the benchmark awarded by courts in the Ninth
Circuit, as further detailed and discussed in the Fee Brief.

**B.      The Fee Application**

70.     Class Plaintiffs, through the vigorous efforts of Class Counsel, engaged
in extensive factual investigation and litigation of the claims alleged in the FCAC.
By the time the Settlement was reached, Class Counsel had:

- Drafted an initial complaint and four Amended Complaints;
- Briefed  and successfully prevailed on two motions to dismiss;
- Briefed and successfully prevailed on a motion for class certification;
- Defended the depositions of Class Plaintiffs;
- Deposed NantKwest's General Counsel and the Chairman of its Audit
Committee;
- Deposed two accountants associated with NantKwest's outside auditor;
- Met and consulted with experts in preparation for drafting the amended
complaints;
- Briefed an opposition to Defendants' request for an interlocutory appeal to the
Ninth Circuit regarding the Court's decision to certify the Class;
- Prepared and served comprehensive document requests upon Defendants;
- Served subpoenas on additional third-parties;
- Obtained and reviewed over 140,000 pages of documents from Defendants and
third parties in the Action;
- Engaged in meet-and-confer discussions and correspondence with Defendants
regarding the Parties' responses to discovery requests, and the scope of their
document productions;
- Responded to Defendants' discovery requests directed to Class Plaintiffs;
- Consulted with economic experts in the areas of accounting, loss causation,
market efficiency, and damages;
- Prepared for and participated in a full-day mediation with a nationally regarded
third-party neutral, including drafting a mediation statement;
- Participated in continued negotiation efforts over the months following the

mediation to achieve and finalize the Settlement and document it in the Stipulation;

- Obtained a $12 million settlement following arm's-length negotiations with Defendants;

- Consulted with experts regarding the Plan of Allocation and support for preliminary approval of the Settlement; and

- Prepared the documents required for preliminary and final approval of the Settlement.

71. The expertise and experience of Class Counsel is also an important factor to be weighed in assessing a fair fee. As demonstrated in the firm biographies (Exs. 8-10), Class Counsel are comprised of experienced and skilled practitioners in the securities litigation field. Class Counsel achieved significant securities class action settlements, as well as being counsel of record in cases establishing important precedents that enable litigation such as this to be successfully prosecuted.

72. Class Counsel prosecuted the Action vigorously, expending substantial time and resources without any assurance of obtaining any compensation for their efforts. Class Counsel have already devoted a significant amount of time to this case, and fully expect to devote more time in connection with the future administration and distribution of the Settlement.

**C. Standing and Caliber of Opposing Counsel**

73. The quality of the work performed by Class Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Defendants were represented by prominent attorneys from the law firm of Wilson, Sonsini, Goodrich & Rosati PC and Munger Tolles & Olson LLP. In the face of this knowledgeable and formidable opposition, Class Counsel was nevertheless able

1   to develop a case that was sufficiently strong to persuade Defendants to settle it on

2   terms that are favorable to the Class.

3         **D.      The Risks of Contingent Litigation**

4         74.     Class Counsel undertook representation of Class Plaintiffs and the

5   Class on a wholly contingent basis.  Class Counsel knew from the outset that they

6   would expend a substantial amount of time prosecuting this Action yet receive no

7   compensation if the Action proved ultimately unsuccessful.  Thus, the contingent

8   nature of payment of fees and expenses and the risks and complexity of the Action

9   should be given substantial weight by the Court in considering the instant

10  application for fees and expenses.

11        75.     As described above, this Action involved serious legal and practical

12  hurdles that could have resulted in no recovery at all.  Continued litigation would

13  have entailed significant risks to the Class, as the Action could be derailed in any

14  number of ways before a final judgment in Class Plaintiffs' favor was entered (and

15  withstood possible appeal).

16        76.     As a result of consistent and persistent efforts in the face of substantial

17  risks and uncertainties, Class Counsel achieved a significant recovery for the benefit

18  of the Class.

19        **E.      The Reaction of the Class to the Requested Fee**

20        77.     25,375 copies of the Notice have been mailed to potential Class

21  Members.  Segura Decl. at ¶ 11.  The Notice advised Class Members that Class

22  Counsel would apply for an award of attorneys' fees from the Settlement Fund,

23  cumulatively not to exceed 25% of the Fund.

24        78.     As of the time of this filing, there have been no objections to the

25  proposed fee application.  Additionally, as of the time of this filing, no requests for

26  exclusion have been received in relation to the Notice of Pendency and Notice of

27

28

1   Settlement mailing, and no requests for exclusion have been received from the

2   Settlement. *Id.* at ¶¶16-18.

3         **F.**    **The Fee Request is Also Justified Under the Lodestar/Multiplier**

4             **Approach**

5      79.   The Ninth Circuit has found that a court may also consider a

6   lodestar/multiplier approach in assessing the reasonableness of a fee request.  The

7   lodestar is determined by multiplying the number of reasonable hours worked on a

8   client's case by a reasonable hourly billing rate for such services given the

9   geographical location, the nature of the services provided, and the experience of the

10  lawyer.  It can then be increased (or in some cases decreased) based upon the

11  contingent nature or risk in the particular case involved, and the quality of the

12  attorney's work.  A percentage increase or decrease of the lodestar amount is

13  referred to as a "multiplier."

14      80.   Altogether, Class Counsel dedicated 5,033.15 hours to prosecuting this

15  Action.  These hours were compiled from contemporaneous time records

16  maintained by each attorney and paralegal.  Applying Class Counsel's normal

17  hourly rates, which are consistent with those charged by similarly skilled firms in

18  their respective geographic areas, to the hours expended in this Action yields a

19  lodestar amount of $3,123,720.  Their total expenses were $177,408.07.  These

20  substantial hours and expenses reflect Class Counsel's commitment to the

21  aggressive prosecution of this Action.

22      81.   The fee requested represents a multiplier of approximately 0.96.  As set

23  forth in the Fee Brief, in contingent litigation, lodestar multipliers between 1.0 and

24  4.0 have been routinely awarded by courts in the Ninth Circuit and in other federal

25  jurisdictions, and suggest that the requested fee award is a reasonable and fair

26  valuation of the services rendered to the Class by Class Counsel especially in light

27

28

1  of the fact that the multiplier here is significantly below what the courts have

2  previously awarded in this Circuit  As reflected in the Notice, Lead Counsel have

3  agreed to apply for fees cumulatively not to exceed 25% of the $12 million

4  Settlement Fund.

5         **G.**     **Request For Reimbursement of Expenses**

6         82.     Class Counsel also request reimbursement of $177,408.07 in expenses,

7  which is less than the estimate of expenses contained in the Notice.  The expenses

8  requested are reflected in the records of Class Counsel, prepared in the normal

9  course of business and are an accurate record of the expenses incurred.  The

10 expenses noted are reasonable and were incurred for items necessary to the

11 prosecution of the Action.  The expenses were incurred largely in conjunction with

12 experts, mediation, necessary travel, private investigation, computer-based legal

13 research, and depositions.  These expenses were all incurred for the benefit of the

14 Class, and, as explained in the Fee Brief submitted herewith, are of the type

15 generally billed to, and reimbursed by, individual clients in standard billing

16 arrangements.

17 **VI.**   **REIMBURSEMENT OF COSTS AND EXPENSES OF CLASS**

18       **PLAINTIFFS**

19        83.     Each of the two Class Plaintiffs seek reimbursement, pursuant to the

20 PSLRA, 15 U.S.C. § 78u-4(a)(4), of reasonable expenses incurred in connection

21 with the Action in the amount of $7,500.  The amount of time and effort devoted to

22 this Action by Class Plaintiffs, who reviewed the amended complaints and

23 numerous other pleadings in this Action, regularly communicated with Class

24 Counsel to stay apprised of developments in the case, sat for depositions in support

25 of the successful motion for class certification, produced documents in response to

26 Defendants' discovery requests, responded to interrogatories, and participated in

27

28

1  settlement discussions with Class Counsel, is detailed in the accompanying Class

2  Plaintiffs' declarations. *See* Exs. 9 and 10.

3      84.  A moderate upward departure from the "typical" $5,000 per

4  representative award is justified because the financial value of the time that each

5  Class Plaintiff devoted to this case exceeds the requested amount of $7,500, and the

6  Class Plaintiffs conferred substantial benefit upon the Class due to their significant

7  efforts as identified in ¶ 82. *See also* Exs. 9 and 10.

8  **VII.  CONCLUSION**

9      85.  In view of the significant recovery to the Settlement Class, the

10  substantial risks of this Litigation, the substantial efforts of Class Counsel, the

11  quality of the work performed, the contingent nature of the fee, and the standing and

12  experience of Class Counsel, Class Counsel respectfully submits that: the

13  Settlement should be approved as fair, reasonable, and adequate; the Plan of

14  Allocation should be approved as fair and reasonable; a fee in the amount of 25% of

15  the $12 million Settlement Fund, plus any accrued interest, should be awarded to

16  Class Counsel; litigation expenses in the amount of $177,408.07 plus any accrued

17  interest, should be reimbursed in full; and Class Plaintiffs should be awarded $7,500

18  each.

19      I declare under penalty of perjury that the foregoing is true and correct.

20  Executed:    April 8, 2019
              Chicago, Illinois

21

22  _____

23      Joshua B. Silverman

24  Executed:    April 8, 2019
              New York, New York

25

26  _____

27      David J. Stone

28

DECLARATION OF JOSHUA B. SILVERMAN AND DAVID J. STONE IN SUPORT OF MOTION FOR:
(1) FINAL APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION AND (2) AWARD OF
ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND PLAINTIFFS' AWARDS
Case No. 16-cv-01947-MWF (JEMx)

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On April 8, 2019, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this April 8, 2019, at Los Angeles, California.


*s/Kara M. Wolke*
Kara M. Wolke